**JOSEPH W. MURRAY, ESQ.**
185 Great Neck Road, Suite 461
Great Neck, New York 11021
T:   (646) 838-1702
F:   (646) 514-4771
C:   (718) 514-3855
E:   Joe@Jmurray-law.com



**ADMITTED TO PRACTICE**
New York State
Eastern District of New York
Southern District of New York

June 5, 2023

<u>VIA: ECF</u>

The Honorable Anne Y. Shields
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza, Courtroom 840
Central Islip, New York 11722

      Re:   *U.S. v. George Anthony Devolder Santos*, 23-CR-197(JS)(AYS)
            <u>Defendant's response to media requests to unseal suretors</u>

Dear Judge Shields,

     I respectfully write on behalf of Congressman George Santos, the defendant in the above referenced matter, in response to the letter motions filed on behalf of The New York Times Company ("The Times") at Dkt. No. 13, and ABC News, et al., ("News Organizations") at Dkt. No. 14, seeking to unseal the identities of our sureties, the related papers, and proceedings. For the following reasons, these letter motions filed by The Times and News Organizations should be denied in all respects.

**I.**    **Background**

     The Honorable George Santos ("Rep. Santos") is a duly elected member of the 118th Congress, United States House of Representatives, representing New York's Third Congressional District, in Queens and Nassau Counties, within the Eastern District of New York. As early as December 28, 2022, ABC News reported that "[f]ederal prosecutors have started looking into public filings by congressman-elect George Santos, amid questions about the source of his wealth, sources familiar with the matter told ABC News."[1] Thereafter, on May 9, 2023, a thirteen-count indictment, consisting of various financial crimes, that occurred before Rep. Santos assumed office, and the arrest warrant, were filed under seal. *See* Dkt. Nos. 1 and 2. *Id*.

---

[1] Aaron Katersky, Luke Barr, and Soo Rin Kim, *Prosecutors looking at George Santos amid lies, questions about his wealth*, December 28, 2022, 9:28 PM https://abcnews.go.com/Politics/prosecutors-george-santos-amid-lies-questions-wealth/story?id=95902176

1

On May 9, 2023, the government notified defense counsel of the indictment and arrest warrant and allowed Rep. Santos to voluntarily return home from Washington D.C., so that Rep. Santos could self-surrender to the Federal Bureau of Investigations ("FBI") on the following morning and then head back to the Capital to be present for Thursday's session. The government and defense counsel had also been negotiating suitable terms and conditions of release to present to the Court, including, among other things, a $500,000.00 unsecured appearance bond with three financially responsible co-signors, as suretors.

Unfortunately, on May 9, 2023, shortly after the defense was notified of the indictment and arrest warrant, this information was apparently leaked to the Cable News Network ("CNN"), resulting in an immediate media frenzy. Also, at this time, defense counsel had been in the process of engaging our suretors and presenting their documentation and contact information to the government, in preparation for the arraignment on May 10, 2023. As the media frenzy progressively got worse our suretors tors grew very fearful and concerned. As of the morning of May 10, 2023, we only had two confirmed suretors, while our third suretor had a change of heart and backed out. Ultimately,

Ultimately, Rep. Santos was arraigned before this Court on Wednesday, May 10, 2023, and the Court approved of our joint proposed conditions, including the $500,000.00 unsecured appearance bond, which my client signed before being released. Thereafter, when our suretors appeared in court, defense counsel moved to redact the names of the suertors and seal the proceedings. The government took no position, and the application was granted by this Court.

**II.     Surety Records Should be Public Unless Doing So Would Endanger the Suretors**

A.     Rep. Santos acknowledges and supports the common law right of access that both the press and the general public enjoy and "is embodied in the First Amendment…" *Globe Newspaper Co. v Superior Ct. for Norfolk County*, 457 US 596, 603 (1982), *citing*, *Richmond Newspapers, Inc. v Virginia*, 448 US 555, 558–581 (plurality opinion); *id.*, at 584–598, (Brennan, J., concurring in judgment); *id.*, at 598–601, (Stewart, J., concurring in judgment); *id.*, at 601–604, (Blackmun, J., concurring in judgment).  The right of access in criminal trials is afforded by the First Amendment because "criminal trials both here and in England had long been presumptively open." *Globe Newspaper Co. v Superior Ct. for Norfolk County*, 457 US 596, 605(1982), *quoting*, *Richmond Newspapers, Inc. v Virginia*, 448 US 555, 556(1980); *Lugosch v Pyramid Co. of Onondaga*, 435 F3d 110, 119 (2d Cir 2006); *United States v Amodeo*, 44 F3d 141, 145 (2d Cir 1995). Aside from historic tradition of open criminal trials is that public scrutiny "enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Globe Newspaper Co. v Superior Ct. for Norfolk County*, 457 US 596, 606 (1982).

B.     While the general public's and the press' right of access to criminal trials "is of constitutional stature, it is not absolute." *Globe Newspaper Co. v Superior Ct. for Norfolk County*, 457 US 596, 606 (1982), *citing*, *Richmond Newspapers, Inc. v. Virginia, supra*, at 581, n. 18 (plurality opinion); *Nebraska Press Ass'n v Stuart*, 427 US 539, 570 (1976). In fact, the records sought by The Times and News Organizations should technically not even be classified as judicial documents, in that they were never filed in the criminal Docket of the case. The Third

Circuit has taken up a bright line test "focused on the technical question of whether a document is physically on file with the court." *United States v Amodeo*, 44 F3d 141, 145 (2d Cir 1995), *quoting*, *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 782 (3rd Cir.1994) (holding that a Settlement Agreement never filed with, interpreted by, or enforced in the district court is not a judicial record accessible under the right of access doctrine). Again, if it's not on file, its not a judicial record. *Id*.

        C.       Here in the instant case, the suretors are likely to suffer great distress, may lose their jobs, and God forbid, may suffer physical injury. "Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper Co. v Superior Ct. for Norfolk County*, 457 US 596, 606-07 (1982); See, *e.g., Brown v. Hartlage*, 456 U.S. 45, 53–54 (1982); *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 101–103 (1979).

        D.       There is little doubt that the suretors will suffer some unnecessary form of retaliation if their identities and employment are revealed. You need only to look at the Declaration of Joseph W. Murray attached hereto as Exhibit-A and the other exhibits containing various theats made to Rep. Santos, members of his staff and even your undersigned. The fact, that someone emailed me my own letter back to me soon after I filed it with the Court, tells us that they are just ready and waiting to pounce. A few hours later on Friday, June 2, 2023, I received a call wherein a male voice just shouted what sounded like, "who paid Santo's bond?" Again, they are just waiting to pounce on the sureties.

        **III.**     **Conclusion**

        E.       In conclusion, Rep. Santos' case has become what the Second Circuit has referred to as a "heater case" that involves a similar media frenzy. *See Friedman v Rehal, 618 F3d 142, 157-58 (2d Cir 2010).* If this Court is so inclined to unseal the sureties, we truly fear for their health, safety and well being. In fact, if the suretors are required to be identified, we respectfully request that the Court allow the suretors notice before the court releases their information so that they can withdraw as cosignors on the bond and Rep. Santos and I will appear before Your Honor forthwith. My client would rather surrender to pretrial detainment than subject these suretors to what will inevitably come.

        For the aforementioned reasons, we respectfully submit that the motions to unseal should be denied in all respects. Please feel free to contact me with any questions you may have.

                                                                           Respectfully,

                                                                           Joseph W. Murray, Esq.

Cc:     - All parties via ECF