**FILED**
**CLERK**

6/6/2023 11:42 am

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES OF AMERICA,

                              Plaintiff,          **ORDER**

          -against-                      CR 23-197 (JS)(AYS)

GEORGE ANTHONY DEVOLDER
SANTOS,
also known as "George Santos,"

                              Defendant.
------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

      Defendant was arraigned before this Court on May 10, 2023. On that day, this Court

signed an order (the "Bond") setting conditions for Defendant's release. (Docket Entry ("DE")

[12].) The Bond provides for Defendant's release upon his execution of a $500,000 unsecured

bond that was also to be co-signed by financially responsible Suretors (the "Suretors"). (Id.)

Defendant signed the Bond on the day of his arraignment. The identity of the suretors was not

disclosed at the bail hearing, but the Court was assured that they would shortly appear to sign the

Bond.

      On May 15, 2023, two Suretors appeared in person to sign the Bond.[1] The Court

interviewed the Suretors to ensure that they understood the gravity of the proceedings, and the

consequences of signing a bond for a criminal defendant. They were made aware of the

conditions of the Bond, including limitations on Defendant's travel. Although neither Suretor

secured the Bond with cash or property, each agreed to be personally responsible for Defendant's

---

[1]      While a third suretor was referred to at the bail hearing, no third person ever came
forward to sign the Bond and the Court is unaware of their identity. However, the Court finds
that the two suretors who have signed the Bond are sufficient to ensure Defendant's compliance
with the terms thereof. If the Government seeks to have a third suretor, they may make an
application seeking that relief to this Court or to the District Court.

compliance. Both Suretors were close family members; one is Defendant's father and the other is Defendant's aunt. They reside in this District and are employed. These family members were deemed able to provide the necessary moral suasion to ensure Defendant's compliance with the terms of the Bond. Upon request of Defendant, the identity of the Suretors and the recording of the signing proceeding were both sealed. Defendant sought to have this information sealed to protect his family from publicity and possible harassment. To accommodate their privacy concerns, this Court sealed information regarding the Suretor's identities.

Presently before the Court are motions filed by several news agencies to unseal information regarding the identity of the Suretors. (DE [13], [14].) The Government takes no position with respect to these motions. (DE [16].) Defendant was given until 5:00 PM on June 2, 2023 to respond to the motions. (Scheduling Order of Shields, M.J., dated June 2, 2023.) While his response was not filed until after 5:00 P.M., (DE [17]), and was therefore untimely, this Court has nonetheless reviewed and considered that response. For the reasons set forth below, the motions are granted.

## DISCUSSION

I.     Legal Standard

There exists a qualified common law right to inspect and copy judicial records and documents. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-98 (1978); Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019); United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"). The press has standing to enforce this right. See e.g., Hartford Courant Co., v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004). The presumed right of access is "firmly rooted in our nation's history" and attaches to "judicial documents." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (citaiton omitted). As the legal standard presumes,

the first step in determining whether a document falls within the presumed right of access is deciding whether the document at issue is "judicial" in nature. Lugosch, 435 F.3d at 119. That question is resolved by deciding whether such document is "relevant to the performance of the judicial function," United States v. Bankman-Fried, No. 22-cr-0673, 2023 WL 1108471, at *2 (S.D.N.Y. Jan. 30, 2023) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"), such that it "would reasonably have the tendency to influence" either a court's "ruling on a motion" or "the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." Bankman-Fried, 2023 WL 1108471, at *2 (quoting Brown, 929 F.3d at 49) (emphasis omitted); see also Bernstein v. Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 142 (2d Cir. 2016).

Once it is determined that the document sought is judicial, the presumption of access attaches and the Court turns to determine its weight. The role of the document in the judicial process determines that weight; where the document plays an important role, the weight of the presumption is substantial. Documents playing a direct role in the exercise of the Court's power are entitled to a strong presumption of access. Bankman-Fried, 2023 WL 1108471, at *2; see also Amodeo II, 71 F.3d at 1049. After the weight of the presumption is established, the Court considers that weight against the weight of any countervailing factors. Among the factors that may be weighed against the right of access are "privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120.

II.    The Motions are Granted

Upon consideration of the standards above, the Court grants the motions to unseal. First, the Court holds that the documents sought are judicial in nature. There is no question but that this

Court considered the identity of the Suretors and their relationship to the Defendant when determining whether they could reliably ensure Defendant's compliance with the terms of the Bond. The Court considered the familial nature of the relationships among the Defendant and the Suretors and spoke with them to ensure that they understood the nature of the obligations they wished to assume, and to determine whether they could carry out their responsibilities as suretors of Defendant's conduct. As is common in cases where there is neither property nor cash offered to secure a bond, the Court considered whether the Suretors were truly willing to stand up and make themselves responsible for Defendant's compliance with the terms of his release. The Court also inquired about their ties to this District and employment. Having made such inquiry, the Court was satisfied that the Suretors had discussed this matter with the Defendant, and that they maintained sufficient personal contact with him to make themselves aware of his conduct. Because this Court considered the identity of the Suretors and the nature of their relationships with the Defendant when determining their suitability to serve as suretors, it is clear that any document revealing the names of the Suretors is judicial in nature. See Bankman-Fried, 2023 WL 1108471, at *4

Having determined that documents revealing the identity of the Suretors are judicial in nature, such documents fall within the bounds of the common law presumption of access. The Court turns now to determine the weight of the presumption. That weight is substantial, not only because the identity of the Suretors was considered by the Court, but also because of concerns raised by the members of the press, and also a particular concern set forth in Defendant's response to the motions. First, as members of the press have pointed out, there is speculation that the Bond was signed by lobbyists, donors or others seeking to exert influence. (DE [14].) As noted by Defendant, similar concerns are shared by members of the United States House of

Representatives Committee on Ethics. (DE [17-6].) That Committee seeks to be advised of the identity of the Suretors to determine whether the posting of bond constitutes an improper gift to Defendant. There is no way to quell such speculation and foster confidence in the judicial process but to reveal the identities of the Suretors. Thus, upon review of the foregoing considerations, the Court holds that the Bond and the record of any associated proceedings that reveal the Suretors' identities, are judicial documents entitled to a weighty presumption of access. See Bankman-Fried, 2023 WL 1108471, at *4; accord Assoc. Press v. U.S. Dist. Court for Cent. Dist. of California, 705 F.2d 1143, 1145 (9th Cir. 1983); United States v. Chagra, 701 F.2d 354, 363 (5th Cir. 1983).

Weighed against this strong presumption of access are the privacy rights of the Defendant's family members. Neither of the Suretors are public figures. Each wishes to avoid the public spotlight occupied by the Defendant. The Court understood their concerns in sealing the Bond and the signing proceeding. However, upon consideration of the present motions in the context of the standards set forth herein, and the specific concerns of the public and Congress, the Court holds that the Suretors' privacy rights are undoubtedly outweighed by the weight of the right of access. For the foregoing reasons the Court holds that documents revealing the identity of the Suretors must be unsealed.[2]

Finally, the Court addresses Defendant's statement that he would rather surrender to pretrial detainment than subject the Suretors' identity to the public. (DE [17] at 3.) This offer does not address the issue before the Court. Defendant asked the Suretors to sign on to the Bond.

---

[2]      While the public and press also have a qualified First Amendment right to access as well, see United States v. Suarez, 880 F.2d 626, 630 (2d Cir. 1989); see also Toolasprashad v. Toolasprashad, No. 21-CV-4672, 2021 WL 4949121, *2 (E.D.N.Y. Oct. 25, 2021)(citing Lugosch, 435 F.3d at 120), the Court, having held that the common law right of access applies, need not consider any alternative grounds for disclosure.

If the Suretors no longer wish to serve as suretors, Defendant can communicate this fact by way of a motion to modify the conditions of his release. Any such motion does not, however, address the public's right to know the identity of the Suretors at this stage of the proceedings.

<u>CONCLUSION</u>

For the foregoing reasons, the motions to unseal the identities of the Suretors who signed the Bond for Defendant's pretrial release, filed herein at Docket Entries [13] and [14], are granted. To allow Defendant to appeal this ruling to the District Court, the Clerk of the Court is directed to maintain this decision and all previously sealed documents, including the Bond, under seal. Any appeal of this Order must be filed by noon on Friday, June 9, 2023.

**SO ORDERED.**

Dated:  Central Islip, New York
             June 6, 2023                                                /s/      Anne. Y. Shields
                                                                            ANNE Y. SHIELDS
                                                                            United States Magistrate Judge