FILED
CLERK
6/23/2023 9:14 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
------------------------------X  Docket#
UNITED STATES OF AMERICA,     : 23-cr-00197(JS)(AYS)
                              :
                              :
    - versus -                : U.S. Courthouse
                              : Central Islip, New York
GEORGE DEVOLDER SANTOS,       :
                              : May 15, 2023
            Defendant         : 10:44 a.m.
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR BOND HEARING
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

**\* SEALED PROCEEDINGS \***

**A P P E A R A N C E S:**

**For the Government**:      **Breon S. Peace, Esq.**
                             United States Attorney

                        BY:  **Anthony Bagnuola, Esq.**
                             Assistant U.S. Attorney
                             610 Federal Plaza
                             Central Islip, NY 11722

**For the Defendant**:       **Joseph W. Murray, Esq.**
                             185 Great Neck Road, Suite 461
                             Great Neck, NY 11021

**Transcription Service**:   Transcriptions Plus II, Inc.
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1    (Audio began with proceedings in progress)
2    (No appearances given so no voice recognition as to who
3 was speaking except for the judge)
4             THE COURT:  Okay.  So the reason you're here to
5 sign this bond on behalf of your son and your aunt is
6 because we want to make sure that he abides by all of the
7 terms and in signing it I want to make sure that you two
8 understand that this makes you responsible for him
9 complying with all of the terms.
10            So I want to hear a little bit about you and
11 your relationship with Mr. Santos, so we'll start with
12 you.  If you could just say your name, tell me your
13 relationship with him, where you live, how often you see
14 him.
15            MR. SANTOS:  I'm Arsenio Santos.  I'm George
16 Anthony father.  And he does not live with me.  I see him
17 I'd say every 45, 50 days.  We don't see enough.
18            THE COURT:  How would you describe your
19 relationship with him?
20            MR. SANTOS:  It's cordial.  It's not
21 problematic at all.  I mean we're just not together all
22 the time but when we do get together, it's like between
23 father and son, a normal relationship.
24            THE COURT:  Do you speak with him often?
25            MR. SANTOS:  Not -- lately, yes, but in the

1 past not as much.

2 　　　　THE COURT: Okay. So are you comfortable
3 checking in with him, knowing about his court appearances
4 to make sure that he's doing everything that we say he
5 needs to do?

6 　　　　MR. SANTOS: That I do, yes.

7 　　　　THE COURT: Okay. And I also want you to
8 understand that this is a bond that allows him to be out.
9 Right? So sometimes people don't get bond for one reason
10 or another and they have to be incarcerated before a
11 trial. This is a bond letting Mr. Santos out until the
12 trial. Okay?

13 　　　　There's a danger if he doesn't comply with any
14 of the conditions of bond. First of all, it's a danger
15 to him. He will and can be incarcerated. But more
16 importantly for you two, you're signing a bond that makes
17 you two financially responsible. So it's not just about
18 feeling badly about it. This is a bond in the amount of
19 $500,000.

20 　　　　MR. SANTOS: We understand that, yes.

21 　　　　THE COURT: All right? So you don't own a
22 home. Neither of you owns a home or any property that
23 you could put up against this. Am I right? That's what
24 my understanding is.

25 　　　　MR. SANTOS: Yeah.

1    THE COURT: All right.

2    MR. SANTOS: Yes.

3    THE COURT: So that doesn't mean that this
4 isn't important. It doesn't mean that oh, I won't have
5 the money, no big deal.

6    MR. SANTOS: No.

7    THE COURT: This could go against your credit
8 rating, your ability to get a mortgage. You'd owe that
9 money to the government. So I want to make sure that you
10 both understand that. And I'll ask --

11    MR. SANTOS: I do. We do understand that, yes.

12    THE COURT: Okay. All right. So I want to go
13 over, before we get to you, I want to go over the terms
14 of the bond so you know what's required of him.

15    UNIDENTIFIED SPEAKER: They have a copy so they
16 can follow along, Judge.

17    THE COURT: Okay. So if you take a look at it,
18 you'll see he's out on a bond. You'll see the amount
19 which is $500,000. If you go down to number seven you'll
20 see a check mark. He has to submit to Pretrial. So
21 those are the people who are supervising him while he's
22 out. They may call him in for an interview. They don't
23 have to give him notice. Whatever they tell him to do,
24 where they tell him to go, he's got to comply with that.
25 All right?

1  He does not have his passport. He may not
2 apply for a passport. Here's a really important part and
3 it talks about travel restrictions. We understand he
4 works in Washington, he lives in New York.
5  MR. SANTOS: New York.
6  THE COURT: He's allowed to travel between New
7 York and Washington. That he's allowed to do. He is not
8 allowed to travel anywhere else without prior permission.
9 So you might want to call him from time to time and say
10 hey, are you going to be in town? Tell me where you're
11 going to be. So I would advise both of you to give him a
12 call and say, this is on your behalf, let me know if
13 you're going to be traveling.
14  MR. SANTOS: Yeah, yeah.
15  THE COURT: He knows I told him that he has to
16 have permission from the Court to travel or permission of
17 Pretrial Services. So I know his counsel said he might
18 be traveling or of a need to travel. If he does, he has
19 to get permission. If he gets permission, I want him,
20 and I'm going to tell the lawyer too, to let you two
21 know.
22  MR. SANTOS: Yeah.
23  THE COURT: He needs to keep you in the loop as
24 to where he is, where he will be at all times.
25  His next appearance date right now is June

Proceedings

1  30th.  That's in this courthouse.
2            MR. SANTOS:  Yeah, we're aware of that.
3            THE COURT:  Right?  So it's not before me, it's
4  before another judge right now.  That is an in person
5  appearance I believe.
6            UNIDENTIFIED SPEAKER:  Yes.
7            UNIDENTIFIED SPEAKER:  Yes.
8            THE COURT:  So he'll be traveling here.  So you
9  know, check in with him.  Make sure you know where he is
10 because by signing this, this is a serious matter.
11 You're responsible for knowing where he is.
12           There are individuals he's not supposed to have
13 contact with.  Is that a matter -- I don't have them on
14 the bond but that's a matter --
15           UNIDENTIFIED SPEAKER:  It was provided to me.
16 I have the four names.
17           THE COURT:  Okay.
18           UNIDENTIFIED SPEAKER:  And if there are more
19 that are added, let me know.  He's already been advised,
20 Judge, just for the record, one of them contacted him
21 when he left the court.
22           THE COURT:  Okay.
23           UNIDENTIFIED SPEAKER:  He did not answer the
24 phone.
25           THE COURT:  Okay.

Proceedings

1  UNIDENTIFIED SPEAKER: A screen shot, I sent it
2 to the government, and just to ask them could you reach
3 out to him and tell him not to call George?
4  THE COURT: Okay.
5  UNIDENTIFIED SPEAKER: So he's 100 percent
6 compliant.
7  THE COURT: Okay. Good. All right. So let me
8 get, you're his aunt, let me get your name and your
9 address on the record.
10  MS. BREVIN: My name is (indiscernible)
11 Dossantos Brevin (phonetic). (Redacted).
12  THE COURT: Okay. And how would you describe
13 your relationship with Mr. Santos?
14  MS. BREVIN: His aunt. It's a good
15 relationship even though I don't speak with him on a
16 regular basis.
17  THE COURT: Okay.
18  MS. BREVIN: Only when he come to New York he
19 stop by to check me out, see how I'm doing very briefly.
20  THE COURT: Okay. Good. All right. But you
21 check in with him? He doesn't call you?
22  MS. BREVIN: Yeah, I check how you doing?
23  THE COURT: Okay. And what about employment?
24 Are you employed?
25  UNIDENTIFIED SPEAKER: (Redacted).

1  THE COURT: (Redacted).

2  MS. BREVIN: Yes.

3  THE COURT: (Redacted).

4  MS. BREVIN: (Redacted).

5  THE COURT: Okay. So that's fine. You don't

6  want to put any of that at risk.

7  MS. BREVIN: No, ma'am.

8  THE COURT: And I don't believe I got your

9  address. If you could just put that on there?

10  MR. SANTOS: (Redacted).

11  THE COURT: (Redacted).

12  UNIDENTIFIED SPEAKER: This is all going to

13  bring us closer together which I was telling them about

14  when I showed them the bond, you know, the different

15  conditions, so --

16  MR. SANTOS: What would happen to him if he get

17  caught traveling at areas that he's not allowed to?

18  THE COURT: He would be -- there would be a

19  warrant for his arrest.

20  MR. SANTOS: (Indiscernible).

21  UNIDENTIFIED SPEAKER: Just so you know, as we

22  told the Court, he's announced his reelection. He's not

23  going out vacationing. If he's leaving the jurisdiction,

24  it would be for that legitimate purpose of --

25  MR. SANTOS: But he's got to get an

1 authorization for that.
2     THE COURT: Yes, yes.
3     MR. SANTOS: Pretrial Services.
4     THE COURT: He certainly is not authorized to
5 leave this country.
6     MR. SANTOS: (Indiscernible) make sure he
7 understands that.
8     UNIDENTIFIED SPEAKER: Yeah. No --
9     THE COURT: Yes. No, good question.
10     UNIDENTIFIED SPEAKER: -- he's taking this very
11 seriously.
12     THE COURT: Good question.
13     UNIDENTIFIED SPEAKER: Good question.
14     MS. BREVIN: Make sure we stay on the line.
15     THE COURT: Exactly. No one's arresting you
16 but you're responsible on that dollar amount. This is
17 why we ask people to come in. You know, it's not always
18 about money. It's about how well you know someone,
19 whether you can exercise a certain amount of control or
20 moral control over the person so that they understand
21 what you are doing for them. And I'd advise you to give
22 him a call today. Tell him you came in. You signed it.
23 You're watching.
24     MR. SANTOS: So when he's driving from
25 Washington to New York, he's allowed to go to --

1    THE COURT:  Yes.
2    MR. SANTOS:  -- path of states that --
3    THE COURT:  Yes.
4    MR. SANTOS:  And nothing else.
5    THE COURT:  Correct.
6    UNIDENTIFIED SPEAKER:  Correct.  But as his
7 lawyer said in court the other day, we understand he's
8 running for reelection.  We understand that his business
9 may take him in other places.  And there's an entire
10 department of people at Pretrial Services whose job it is
11 to communicate with people in George's position about
12 where they're going to be and where they're going to be
13 staying, things like that.
14    As long as George keeps in touch with those
15 people and with his lawyer, I don't see any reason why he
16 wouldn't be given the green light to go about his
17 business which would never make these circumstances about
18 an arrest come up.
19    THE COURT:  Right.  Right.
20    UNIDENTIFIED SPEAKER:  One thing I just wanted
21 to add --
22    THE COURT:  But let him -- you know, if he
23 calls you and says I'm going out of town --
24    MR. SANTOS:  Where you're going to be at?
25    THE COURT:  -- you might want to say did you

1  get permission?
2        MR. SANTOS:  Exactly.
3        UNIDENTIFIED SPEAKER:  Yeah.
4        THE COURT:  Right?
5        MR. SANTOS:  Absolutely.
6        UNIDENTIFIED SPEAKER:  One thing I wanted to
7  add to both of you because of my not being familiar so
8  much with DC, I understand it's a very, very small
9  district.  I mean it's like a couple of square miles that
10 he would be restricted to and it's not uncommon,
11 especially when you're running for election --
12       MR. SANTOS:  (Indiscernible).
13       UNIDENTIFIED SPEAKER:  -- where someone will
14 say oh, we have an event right here or there.  So I told
15 him, I said look, this is all new to all of us.  Operate
16 under the way you're operating now.  If it's so egregious
17 that we need to expand that or something, I'm sure I can
18 go to the government.  Everyone has been so reasonable
19 and they don't want to --
20       THE COURT:  I think what I said to him is
21 always ask first.
22       UNIDENTIFIED SPEAKER:  Yes.
23       THE COURT:  It doesn't hurt to ask.
24       UNIDENTIFIED SPEAKER:  Nobody here has any
25 intent to impede on his ability to run for office.

12
                        Proceedings

 1            UNIDENTIFIED SPEAKER:  Or to get him in any

 2   more trouble than he's in.  My goal is not to trick him

 3   into crossing state lines so that I can arrest him.  Our

 4   goal is -- you know, and these conditions can always be

 5   modified if necessary.  His lawyer can make an

 6   application to the judge and we can change them if it

 7   turns out that they're onerous or he's having a hard

 8   time.

 9            For your purposes, since you're putting your

10   own financial situation and your own reputation at stake,

11   it's important for you to hear from me our goal is not to

12   trick him or to trap him, or to lure him somewhere so

13   that we can get him into trouble.  We're all agreeing

14   that he should be allowed to go about his business with

15   some minor supervision.

16            THE COURT:  That's exactly correct.  This is

17   about making sure he comes here when he has to for this

18   case.  That's what this is about.  And I'm glad you said

19   that.  It's not a game of gotcha.  You're here so you

20   understand the importance of that.  And it's serious when

21   you sign something.  It's very serious.  That's why we

22   asked you to come in.

23            Do you have anything else you want me to put on

24   the record?

25            UNIDENTIFIED SPEAKER:  I don't.  Thank you.

1       THE COURT:  Anything else, counsel?
2       UNIDENTIFIED SPEAKER:  No, your Honor.  Thank
3  you.
4       THE COURT:  All right.  So I'm going to leave
5  you the bond.  You'll notice George signed it over there.
6  Here's a place for suretors.  So you two sign there.
7  You'll put your addresses in there.  We'll date it.  This
8  will not go on the record.  If anything is on the record,
9  we will Wite-Out your personal information, so we
10 specifically have never said your names on the record.
11 All right?
12      MR. SANTOS:  Thank you.
13      THE COURT:  And that's the order.  So if I need
14 to put that on the record now, I'm going to order the
15 record of these proceedings to be sealed upon application
16 of defense counsel.  No opposition for the government.
17 And I find that it's necessary --
18      MR. SANTOS:  Thank you.
19      THE COURT:  -- to protect these individuals.
20      UNIDENTIFIED SPEAKER:  I'll give you copies.
21      THE COURT:  All right?  I think we can go off
22 the record now.  Yes.
23      UNIDENTIFIED SPEAKER:  Thank you, Judge.
24      UNIDENTIFIED SPEAKER:  Thank you, Judge.
25      THE COURT:  All right.  Thank you.  Thank you

```
                                                          14
                          Proceedings
 1   for being here.
 2             MR. SANTOS:  Thank you.
 3             THE COURT:  Have a good day.
 4             UNIDENTIFIED SPEAKER:  Thank you, Judge.  You
 5   as well.
 6             UNIDENTIFIED SPEAKER:  Thank you.
 7                     (Matter concluded)
 8                          -oOo-
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **9th** day of **June**, 2023.

*Mary Greco*

Transcriptions Plus II, Inc.