RCH:AXB/LZ
F. #2022R01030

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   OCT 05 2023   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

NANCY MARKS,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 23-CR-197 (JS) (AYS)
(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and
3351 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c))

THE UNITED STATES CHARGES:

## INTRODUCTION

    At all times relevant to this Information, unless otherwise indicated:

I.    <u>Relevant Individuals and Entities</u>

    1.    Co-Conspirator #1, an individual whose identity is known to the United States, was a resident of Queens and Suffolk Counties.   During the 2020 and 2022 election cycles, Co-Conspirator #1 campaigned as a candidate for the United States House of Representatives (the "House").   On or about November 8, 2022, Co-Conspirator #1 was elected the United States Representative for New York's Third Congressional District, which covered parts of Queens and Nassau Counties in the Eastern District of New York.   Co-Conspirator #1 was sworn into office on or about January 7, 2023.

    2.    The Campaign Committee, an entity the identity of which is known to the United States, was Co-Conspirator #1's principal congressional campaign committee.

    3.    The defendant NANCY MARKS was the treasurer of the Campaign Committee.   MARKS provided additional services to the Campaign Committee through a

political consulting company that she operated and which was located in Suffolk County, New York.

   4.  National Party Committee #1, an entity the identity of which is known to the United States, was a national party committee headquartered in Washington, D.C.  National Party Committee #1 managed a program (the "Program") pursuant to which National Party Committee #1 provided financial and logistical support for congressional candidates who qualified for the Program.   The Program had three phases, each with its own qualifying criteria. To qualify for the second phase of the Program, congressional candidates were required, among other things, to demonstrate that their campaign committee had raised at least $250,000 from third-party contributors in a single quarter.

II.  The Fraudulent Scheme

   5.  During the 2022 election cycle, Co-Conspirator #1 and the defendant NANCY MARKS devised and executed a fraudulent scheme to obtain money for the Campaign Committee by making various material misrepresentations and omissions to, among others, the Federal Election Commission (the "FEC"), National Party Committee #1 and the public.

   6.  That is, in or about and between December 2021 and November 2022, Co-Conspirator #1 and the defendant NANCY MARKS devised and executed a scheme to submit materially false reports to the FEC on behalf of the Campaign Committee in which they fraudulently inflated the Campaign Committee's fundraising numbers for the purpose of misleading the FEC, National Party Committee #1 and the public.   The purpose of the scheme was to qualify Co-Conspirator #1 for different phases of the Program and thereby receive financial and logistical support from National Party Committee #1 (the "Party Program Scheme").  As part of the Party Program Scheme, Co-Conspirator #1 and MARKS agreed to

falsely report to the FEC that family members of Co-Conspirator #1 and MARKS had made significant financial contributions to the Campaign Committee, when Co-Conspirator #1 and MARKS both knew that these individuals had not made the reported contributions.   Further, as part of the Party Program Scheme, Co-Conspirator #1 and MARKS agreed to falsely report to the FEC that Co-Conspirator #1 had loaned the Campaign Committee significant sums of money, when Co-Conspirator #1 had not made the reported loans and, in fact, did not have the funds necessary to make such loans at the time.

A.    Applicable Campaign Finance Laws

7.    The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code § 30101, et seq. (the "Election Act"), limited financial influence in the election of candidates for federal office and provided for public disclosure of the financing of federal election campaigns.   The FEC was an agency of the United States entrusted with the responsibility of administering and enforcing the Election Act.   To deter abuses and instill public confidence in the election process, the FEC was responsible for receiving and making available to the public specific, accurate information about, among other things, the amounts and sources of political contributions to federal candidates and political committees.

8.    The Election Act prohibited a federal candidate or an agent of a federal candidate from soliciting, receiving, directing or transferring funds in connection with a federal election unless the funds were subject to the limitations, prohibitions and reporting requirements of the Election Act.

9.    The Election Act limited the amount and sources of money that could be contributed to a federal candidate or a federal candidate's authorized campaign committee and political committees established and maintained by a national political party.   In particular,

while candidates for federal office were permitted to give or loan their own campaigns unlimited sums of money, for the 2022 election cycle, other individuals were limited to contributing $2,900 per primary election per candidate committee and $2,900 per general election per candidate committee.

10.    The Election Act prohibited a person from making a political contribution in the name of another person, including by giving funds to a "straw" or "conduit" contributor for the purpose of having the straw donor or conduit pass the funds on to a federal candidate as his or her own contribution.   The Election Act expressly provided that contributions made through an intermediary were treated as contributions from the original source.   The Election Act also prohibited a person from knowingly permitting his name to be used to effect such a conduit contribution.

11.    Pursuant to the Election Act, the FEC required authorized campaign committees, such as the Campaign Committee, to file periodic reports of receipts and disbursements identifying, among other things, each person or organization that made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the election cycle, together with the date and the amount of any such contribution.   These periodic reports, which were filed with the FEC for the FEC to make publicly available, were intended to provide the public with a record of all contributions to candidates for federal office in an effort to combat quid pro quo corruption or the appearance of quid pro quo corruption.   As such, they constituted the public's primary window into the sources of funding for federal election campaigns.

B.    The Party Program Scheme

12.    Throughout 2021, Co-Conspirator #1 and the defendant NANCY MARKS

sought for the Campaign Committee to report fundraising totals sufficient to meet the $250,000 threshold necessary to qualify for the second phase of the Program.   For example, on or about April 1, 2021, MARKS emailed Co-Conspirator #1 and other agents of the Campaign Committee, stating, "Our goal is to go higher each quarter so as everyone is aware, it is to make [the Program]."

13.     For the third quarter of 2021, the Campaign Committee failed to qualify for the Program due, in part, to its failure to report $250,000 in contributions from third-party contributors in the quarter.

14.     On or about October 12, 2021, Co-Conspirator #1 sent a text message to agents of the Campaign Committee, including the defendant NANCY MARKS, asking an agent to "check in with" an employee of National Party Committee #1 to determine why the Campaign Committee failed to qualify for the Program.   An agent of the Campaign Committee responded to Co-Conspirator #1 that "the only driver that matters is raising $250K (not loans or candidate contributions) in a single quarter," and "[i]t's really that simple though… $250K raised from donors within a quarter.   We haven't done that yet and that should be our focus." Co-Conspirator #1 replied, "We are going to do this a little different.   I got it."

i.   Fraudulent Year-End 2021 Report

15.     In or about and between December 2021 and January 2022, Co-Conspirator #1 and the defendant NANCY MARKS conspired and agreed to falsely inflate the Campaign Committee's fundraising totals, including, but not limited to, in public filings with the FEC, in order to mislead the FEC, National Party Committee #1 and the public so that Co-Conspirator #1 would qualify for the Program and receive financial and logistical support from National Party Committee #1.

16.    In furtherance of that scheme to defraud, on or about December 18, 2021, Co-Conspirator #1 texted the defendant NANCY MARKS a list containing the names of family members of Co-Conspirator #1 and MARKS, along with purported contribution amounts for each corresponding family member, for MARKS to enter into the Year-End 2021 Report to the FEC for the purpose of ensuring that the Campaign Committee appeared to reach the $250,000 threshold necessary to qualify for the second phase of the Program.   Contrary to the representations made by Co-Conspirator #1, none of the family members of Co-Conspirator #1 and MARKS had made, or ever did make, the listed contributions.

17.    Specifically, Co-Conspirator #1's text message to the defendant NANCY MARKS on or about December 18, 2021 falsely stated the following non-existent contributions to the Campaign Committee: (a) a $5,800 contribution from Contributor #1, an individual whose identity is known to the United States; (b) a $5,800 contribution from Contributor #2, an individual whose identity is known to the United States; (c) a $5,800 contribution from Contributor #3, an individual whose identity is known to the United States; (d) a $5,800 contribution from Contributor #4, an individual whose identity is known to the United States; (e) a $5,800 contribution from Contributor #5, an individual whose identity is known to the United States; (f) a $5,800 contribution from Contributor #6, an individual whose identity is known to the United States; (g) a $5,800 contribution from Contributor #7, an individual whose identity is known to the United States; (h) a $5,800 contribution from Contributor #8, an individual whose identity is known to the United States; (i) a $5,800 contribution from Contributor #9, an individual whose identity is known to the United States; and (j) a $2,900 contribution from Contributor #10, an individual whose identity is known to the United States. Co-Conspirator #1 also texted MARKS: "These are the donations we spoke about last night

before we went to sleep.   Total of $55,100.   Let's talk Monday in person."

18.     On or about December 21, 2021, after the defendant NANCY MARKS texted Co-Conspirator #1 seeking the "list of donors – your family," Co-Conspirator #1 again texted MARKS the names and purported contribution amounts of Contributor #1, Contributor #2, Contributor #3, Contributor #4, Contributor #5, Contributor #6, Contributor #7, Contributor #8, Contributor #9 and Contributor #10.   This time, Co-Conspirator #1 also included addresses and occupations for his relatives – information that Co-Conspirator #1 knew would be required for the Year-End 2021 Report to the FEC.   That same day, MARKS emailed herself the content of this text message.

19.     In or about January 2022, Co-Conspirator #1 repeatedly texted the defendant NANCY MARKS about ensuring that the Campaign Committee reached the $250,000 threshold necessary to qualify for the second phase of the Program.   Co-Conspirator #1 advised MARKS that he "really would like to know the final numbers for the quarter."   On or about January 31, 2022, Co-Conspirator #1 asked MARKS "what did we figure out about the report," and expressed that he was "lost and desperate."

20.     On or about January 31, 2022, the Campaign Committee submitted the Year-End 2021 Report to the FEC, with the defendant NANCY MARKS certifying that she had "examined this Report and to the best of my knowledge and belief it is true, correct and complete."   The Year-End 2021 Report falsely reported the following contributions to the FEC:

| Contributor # | Amount Reported | Date |
|:---:|:---:|:---:|
| 1 | $5,800 | 12/31/21 |
| 2 | $2,900 | 12/31/21 |
| 3 | $5,800 | 12/31/21 |
| 4 | $2,900 | 12/31/21 |
| 5 | $5,800 | 12/16/21 |
| 6 | $5,800 | 11/15/21 |
| 7 | $5,800 | 12/31/21 |

| 8 | $5,800 | 12/31/21 |
| 9 | $5,800 | 11/3/21 |
| 10 | $3,900 | 10/9/21 |

21.     The Year-End 2021 Report further falsely reported a contribution of

$2,900 from another family member of the defendant NANCY MARKS, Contributor #11, an

individual whose identity is known to the United States.   These falsely reported contributions

contained in the Year-End 2021 Report to the FEC totaled $53,200, causing the Campaign

Committee to falsely claim total quarterly receipts of $251,549.68 and thereby surpass the

$250,000 threshold necessary to qualify for the second phase of the Program.   Co-Conspirator

#1 and the defendant NANCY MARKS knew that none of these reported contributions were

true.

ii.   Co-Conspirator #1 Qualifies for the Second Phase of the Program

22.     Following the submission of the fraudulent Year-End 2021 Report to the

FEC, on or about February 10, 2022, Co-Conspirator #1 signed an application for the Program and

caused it to be submitted to National Party Committee #1.   The application noted that candidates

accepted into the Program would be eligible for "additional campaign financial support," such as

"hybrid ads, coordinated expenditures, focus groups, splitting the cost of polling, etc."   Co-

Conspirator #1 also submitted a biography falsely asserting that he had worked for several

prominent Wall Street financial institutions.

23.     On or about February 23, 2022, Co-Conspirator #1 texted the defendant

NANCY MARKS, "I GOT [THE PROGRAM]!"

24.     Based, in part, on its belief that the Campaign Committee had exceeded the

$250,000 quarterly fundraising benchmark as reported in the Year-End 2021 Report to the FEC,

National Party Committee #1 announced Co-Conspirator #1 as a candidate in the second phase of the Program on or about February 25, 2022.

iii. Fraudulent April 2022 Quarterly Report

25.     In or about and between March and April 2022, Co-Conspirator #1 and the defendant NANCY MARKS continued to make efforts to falsely inflate the Campaign Committee's fundraising totals, including, but not limited to, in public filings with the FEC, in order to mislead the FEC, National Party Committee #1 and the public so that Co-Conspirator #1 would qualify for all phases of the Program and receive financial and logistical support from National Party Committee #1.  Co-Conspirator #1 and MARKS agreed to falsely represent in presentations and communications with National Party Committee #1 and in a quarterly submission to the FEC that Co-Conspirator #1 had loaned the Campaign Committee $500,000, when, in fact, he had not.

26.     In approximately March 2022, Co-Conspirator #1 continued to express concern with ensuring that the Campaign Committee reported favorable fundraising totals in the first quarter of 2022.  For example, on or about March 7, 2022, Co-Conspirator #1 texted an associate, "I have my back against the wall this quarter lol."

27.     Similarly, on or about March 15, 2022, Co-Conspirator #1 texted another associate about the importance of the Campaign Committee reporting substantial fundraising totals for the purpose of ensuring he qualified for the Program and would receive the expected financial support from National Party Committee #1, stating: "I have a very important meeting at the end of this week with [National Party Committee #1].  This meeting will decide if they will invest in my race & so we need to come in with very strong fundraising numbers.  There are

several million dollars on the line with this, and having your name as a contributor to my campaign would be a very great help."

28.    On or about March 21, 2022, Co-Conspirator #1 caused agents of the Campaign Committee to present a "Path to Victory" presentation to National Party Committee #1, which falsely represented to National Party Committee #1 staff members that Co-Conspirator #1 had loaned the Campaign Committee $500,000 during the first quarter of 2022.   Further, the presentation listed as a "Key Factor" Co-Conspirator #1's "[p]ersonal and political capital that will allow for a fully-funded operation."

29.    When agents of the Campaign Committee inquired, Co-Conspirator #1 falsely represented that he was, in fact, making the purported $500,000 loan to the Campaign Committee.   For example, on or about March 30, 2022, an agent of the Campaign Committee texted Co-Conspirator #1: "Random: Did you get the wire done for the Q1 loan?"   Co-Conspirator #1 responded: "That's getting done tomorrow and it's not a wire, banker check."   However, Co-Conspirator #1 did not provide the Campaign Committee with a check for the purported $500,000 loan, nor did he wire transfer such funds at that time.   Moreover, at that time, Co-Conspirator #1 did not have the personal funds to cover such a loan.

30.    On or about April 13, 2022, the Campaign Committee further publicized inaccurate fundraising totals for the Campaign Committee for the first quarter of 2022, relying on the false representation by Co-Conspirator #1 that he had loaned the Campaign Committee $500,000.   Specifically, the Campaign Committee issued a press release in which it stated that the Campaign Committee would "report roughly $800,000 raised in Q1, a significant sum in what is likely to be one of the most expensive races in the country."   This statement of the fundraising totals of the Campaign Committee included the non-existent $500,000 loan

purportedly made by Co-Conspirator #1.  The press release further reported that Co-Conspirator #1 had qualified for the second phase of the Program by National Party Committee #1, "a sign of national [political party] growing interest and belief in the competitiveness of this seat."

31.    On or about April 15, 2022, the Campaign Committee submitted the April 2022 Quarterly Report to the FEC, with the defendant NANCY MARKS certifying that she had "examined this Report and to the best of my knowledge and belief it is true, correct and complete."  The April 2022 Quarterly Report to the FEC falsely reported that Co-Conspirator #1 had loaned the Campaign Committee $500,000 on March 31, 2022.  Co-Conspirator #1 and MARKS did so for the purpose of making the Campaign Committee appear more financially sound than it was, knowing that the FEC, National Party Committee #1 and the public would rely on the truth and accuracy of these reports.

iv.  National Party Committee #1 Provides Financial Support to the Campaign Committee

32.    Based, in part, on the misrepresentations made by Co-Conspirator #1 and the defendant NANCY MARKS about the financial position of the Campaign Committee in its reports to the FEC, presentations to National Party Committee #1 and public statements, National Party Committee #1 announced that Co-Conspirator #1 had qualified for the third and final phase of the Program on or about June 14, 2022.

33.    As a result of Co-Conspirator #1's qualification for the third and final phase of the Program, National Party Committee #1 provided financial and logistical support to the Campaign Committee.

34.    For example, on or about September 27, 2022, National Party Committee #1 and the Campaign Committee agreed to split the cost of a political poll, financial assistance

that Co-Conspirator #1 knew to be a benefit derived from his qualification for the third and final phase the Program.

35.     Similarly, qualification for the third and final phase of the Program entitled Co-Conspirator #1 to participate in joint fundraising committees with other qualified members of the Program.   On or about September 28, 2022, the Campaign Committee and another political committee affiliated with Co-Conspirator #1 received wire transfers from a joint fundraising committee for qualified members of the Program.   On or about October 18, 2022, the Campaign Committee and another political committee affiliated with Co-Conspirator #1 received a second round of wire transfers from a joint fundraising committee for qualified members of the Program.

<u>COUNT ONE</u>
(Conspiracy to Commit Offenses Against the United States – the Party Program Scheme)

36.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

37.     In or about and between December 2021 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NANCY MARKS, together with others, did knowingly and intentionally conspire:

(a)     to knowingly and intentionally devise a scheme and artifice to defraud and to obtain money and property by means of one or more materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343;

(b)     to knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the

FEC, a department and agency of the United States Government, in violation of Title 18, United

States Code, Section 1001(a)(2);

        (c)    to knowingly conceal, cover up, falsify and make one or more false

entries in a record and document, and cause others to do so, with the intent to impede, obstruct

and influence the investigation and proper administration of a matter within the jurisdiction of

the FEC, a department and agency of the United States Government, and in relation to and

contemplation of such matter, in violation of Title 18, United States Code, Section 1519; and

        (d)    to knowingly and intentionally transfer, possess and use, without

lawful authority, one or more means of identification of another person, during and in relation to

felony violations, to wit: wire fraud and false statements, knowing the means of identification

would belong to another person, in violation of Title 18, United States Code, Sections

1028A(a)(1), 1028A(b) and 1028A(c).

        38.    In furtherance of the conspiracy and to effect its objects, within the Eastern

District of New York and elsewhere, the defendant NANCY MARKS, together with others, did

commit and cause the commission of, among others, the following overt acts:

| Approximate Date | Overt Act |
| --- | --- |
| December 18, 2021 | Text messages between Co-Conspirator #1 and MARKS referenced in paragraphs 16 and 17. |
| December 21, 2021 | Text messages between Co-Conspirator #1 and MARKS referenced in paragraph 18. |
| December 21, 2021 | Email from MARKS to herself referenced in paragraph 18. |
| January 31, 2022 | Submission by the Campaign Committee of Year-End 2021 Report to the FEC referenced in paragraph 20. |

| March 21, 2022 | Presentation by agents of the Campaign Committee of "Path to Victory" presentation to National Party Committee #1 referenced in paragraph 28. |
|---|---|
| March 30, 2022 | Text messages between Co-Conspirator #1 and an agent of the Campaign Committee referenced in paragraph 29. |
| April 13, 2022 | Press release issued by the Campaign Committee referenced in paragraph 30. |
| April 15, 2022 | Submission by the Campaign Committee of April 2022 Quarterly Report to the FEC referenced in paragraph 31. |

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION

39.     The United States hereby gives notice to the defendant that, upon her conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

40.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

15

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))


BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
U.S. DEPARTMENT OF JUSTICE

F.#: 2022R01030
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

### NANCY MARKS,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and 3351 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____*day.*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

**Ryan C. Harris / Laura Zuckerwise, Assistant U.S. Attorneys (718) 254-6489 / 6204**
**Anthony Bagnuola Assistant U.S. Attorney (631) 715-7849**
**Jacob R. Steiner / John P. Taddei, Trial Attorneys (202) 514-1412**