**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  OCT 10 2023  ★

LONG ISLAND OFFICE

RCH:AXB/LZ
F. #2022R01030

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

GEORGE ANTHONY DEVOLDER
SANTOS,
        also known as "George Santos,"

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>23-197 (S-1) (JS) (AYS)</u>
(T. 18, U.S.C., §§ 371, 641, 981(a)(1)(C),
982(a)(1), 982(a)(2)(B), 982(b)(1),
1001(a)(2), 1001(c)(1), 1028A(a)(1),
1028A(b), 1028A(c)(4), 1028A(c)(5),
1029(a)(5), 1029(c)(1)(A)(ii), 1343,
1519, 1957(a), 1957(b), 2 and 3551 <u>et
seq.</u>; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

      At all times relevant to this Superseding Indictment, unless otherwise indicated:

I.    <u>Relevant Individuals and Entities</u>

      1.    The defendant GEORGE ANTHONY DEVOLDER SANTOS, also

known as "George Santos," was a resident of Queens and Suffolk Counties.   During the 2020

and 2022 election cycles, DEVOLDER SANTOS campaigned as a candidate for the United

States House of Representatives (the "House").   On or about November 8, 2022, DEVOLDER

SANTOS was elected the United States Representative for New York's Third Congressional

District, which covered parts of Queens and Nassau Counties in the Eastern District of New

York.   DEVOLDER SANTOS was sworn into office on or about January 7, 2023.

      2.    Devolder-Santos for Congress (the "Committee") was the defendant

GEORGE ANTHONY DEVOLDER SANTOS's principal congressional campaign committee.

3.      Nancy Marks was the treasurer of the Committee.   Marks provided additional services to the Committee through a political consulting company that she operated and which was located in Suffolk County, New York.

4.      National Party Committee #1, an entity the identity of which is known to the Grand Jury, was a national party committee headquartered in Washington, D.C.   National Party Committee #1 managed a program (the "Program") pursuant to which National Party Committee #1 provided financial and logistical support for congressional candidates who qualified for the Program.   The Program had three phases, each with its own qualifying criteria. To qualify for the second phase of the Program, congressional candidates were required, among other things, to demonstrate that their campaign committee had raised at least $250,000 from third-party contributors in a single quarter.

5.      The Devolder Organization LLC was a Florida Limited Liability Company ("LLC") formed on or about May 11, 2021, with its principal place of business in Melbourne, Florida.   The defendant GEORGE ANTHONY DEVOLDER SANTOS was the sole beneficial owner of the Devolder Organization LLC.

6.      Company #1, an entity the identity of which is known to the Grand Jury, was a Florida LLC formed on or about November 1, 2021, with its principal place of business in Merritt Island, Florida.   At the time of its organization, Company #1 had two authorized managers, one of which was the Devolder Organization LLC.

7.      Person #1, an individual whose identity is known to the Grand Jury, was a political consultant operating in Queens County and surrounding areas, including areas within the Eastern District of New York.   In or about and between September 2022 and October 2022,

at the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS, Person #1 acted on behalf of Company #1.

8.    Investment Firm #1, an entity the identity of which is known to the Grand Jury, was a Nevada corporation with its principal place of business in Melbourne, Florida. Investment Firm #1 was purportedly engaged in retail sales of securities products.   In or about and between January 2020 and March 31, 2021, the defendant GEORGE ANTHONY DEVOLDER SANTOS was employed by Investment Firm #1 as a Regional Director.   In that capacity, DEVOLDER SANTOS received an annual salary of approximately $120,000, which was deposited into a personal bank account maintained by DEVOLDER SANTOS ("Devolder Santos Bank Account #1") in regular intervals beginning on or about February 3, 2020 and continuing through on or about April 15, 2021.

II.    Applicable Campaign Finance Laws

9.    The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code § 30101, et seq. (the "Election Act"), limited financial influence in the election of candidates for federal office and provided for public disclosure of the financing of federal election campaigns.   The Federal Election Commission ("FEC") was an agency of the United States entrusted with the responsibility of administering and enforcing the Election Act.   To deter abuses and instill public confidence in the election process, the FEC was responsible for receiving and making available to the public specific, accurate information about, among other things, the amounts and sources of political contributions to federal candidates and political committees.

10.    The Election Act prohibited a federal candidate or an agent of a federal candidate from soliciting, receiving, directing or transferring funds in connection with a federal

election unless the funds were subject to the limitations, prohibitions and reporting requirements of the Election Act.

11.     The Election Act limited the amount and sources of money that could be contributed to a federal candidate or a federal candidate's authorized campaign committee and political committees established and maintained by a national political party.   In particular, while candidates for federal office were permitted to give or loan their own campaigns unlimited sums of money, for the 2022 election cycle, other individuals were limited to contributing $2,900 per primary election per candidate committee and $2,900 per general election per candidate committee.

12.     The Election Act prohibited a person from making a political contribution in the name of another person, including by giving funds to a "straw" or "conduit" contributor for the purpose of having the straw donor or conduit pass the funds on to a federal candidate as his or her own contribution.   The Election Act expressly provided that contributions made through an intermediary were treated as contributions from the original source.   The Election Act also prohibited a person from knowingly permitting his name to be used to effect such a conduit contribution.

13.     Pursuant to the Election Act, the FEC required authorized campaign committees, such as the Committee, to file periodic reports of receipts and disbursements identifying, among other things, each person or organization that made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the election cycle, together with the date and the amount of any such contribution.   The Election Act and the FEC also required every person or organization that was not a political committee and that made independent expenditures in

excess of $250 with respect to a given election in a calendar year to report those expenditures, to identify each person or organization who made a contribution in excess of $200 to further the reported independent expenditures, and to certify under penalty of perjury that the expenditure was not made in cooperation, consultation or in concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee or their agents. These periodic reports, which were filed with the FEC for the FEC to make publicly available, were intended to provide the public with a record of all contributions to candidates for federal office in an effort to combat quid pro quo corruption or the appearance of quid pro quo corruption. As such, they constituted the public's primary window into the sources of funding for federal election campaigns.

14.     An independent expenditure-only committee, or "Super PAC," was a type of political committee that could accept unlimited contributions and make unlimited expenditures independent of a candidate or campaign. Super PACs were prohibited from making contributions to candidates in the form of coordinated expenditures. Super PACs were required to register with the FEC within 10 days of receiving contributions or making expenditures aggregating more than $1,000 during a calendar year.

III.    The Defendant's Campaign-Related Fraudulent Schemes

15.     During the 2022 election cycle, the defendant GEORGE ANTHONY DEVOLDER SANTOS devised and executed at least three fraudulent schemes to obtain money for himself and for the Committee by making various material misrepresentations and omissions to, among others, the FEC, National Party Committee #1, potential contributors to the Committee and the public.

16.     First, in or about and between December 2021 and November 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS and Nancy Marks devised and

executed a scheme to submit materially false reports to the FEC on behalf of the Committee in which they fraudulently inflated the Committee's fundraising numbers for the purpose of misleading the FEC, National Party Committee #1 and the public.   The purpose of the scheme was to qualify DEVOLDER SANTOS for different phases of the Program and thereby receive financial and logistical support from National Party Committee #1 (the "Party Program Scheme").   As part of the Party Program Scheme, DEVOLDER SANTOS and Marks agreed to falsely report to the FEC that family members of DEVOLDER SANTOS and Marks had made significant financial contributions to the Committee, when DEVOLDER SANTOS and Marks both knew that these individuals had not made the reported contributions.   Further, as part of the Party Program Scheme, DEVOLDER SANTOS and Marks agreed to falsely report to the FEC that DEVOLDER SANTOS had loaned the Committee significant sums of money, when DEVOLDER SANTOS had not made the reported loans and, in fact, did not have the funds necessary to make such loans at the time.

17.   Second, in or about and between December 2021 and August 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS devised and executed a fraudulent scheme whereby he stole personal identity and financial information of individuals who had contributed to the Committee and used it to cause these individuals' credit cards to be charged repeatedly without authorization (the "Credit Card Fraud Scheme").   Through these unauthorized transactions, DEVOLDER SANTOS transferred funds to the Committee, to the campaigns of other candidates for elected office and to his personal bank account.   Further, for the purpose of concealing the true source of funds and circumventing campaign contribution limits, DEVOLDER SANTOS falsely represented that the political contributions were made by other individuals, such as DEVOLDER SANTOS's relatives and associates.

18.     Third, in or about and between September and October 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS devised and executed a scheme to defraud and to obtain money from supporters of his candidacy for the House by fraudulently inducing them to contribute funds to Company #1 under the false pretense that the money would be used to support DEVOLDER SANTOS's candidacy.   In truth, DEVOLDER SANTOS spent thousands of dollars of the solicited funds on personal expenses, including luxury designer clothing and credit card payments (the "Company #1 Fraud Scheme").   DEVOLDER SANTOS personally and through Person #1 communicated false information about Company #1 to those supporters, including that Company #1 was a Section 501(c)(4) social welfare organization or an independent expenditure-only committee and that contributions made to Company #1 would be used on independent expenditures in support of DEVOLDER SANTOS's candidacy during the 2022 election cycle.   In actuality, Company #1 was neither a Section 501(c)(4) social welfare organization nor an independent expenditure-only committee, and upon receipt of contributions by those supporters to Company #1, DEVOLDER SANTOS converted much of those funds to his own personal benefit.

A.     The Party Program Scheme

19.     Throughout 2021, the defendant GEORGE ANTHONY DEVOLDER SANTOS and Nancy Marks sought for the Committee to report fundraising totals sufficient to meet the $250,000 threshold necessary to qualify for the second phase of the Program.   For example, on or about April 1, 2021, Marks emailed the defendant GEORGE ANTHONY DEVOLDER SANTOS and other agents of the Committee, stating, "Our goal is to go higher each quarter so as everyone is aware, it is to make [the Program]."

20.     For the third quarter of 2021, the Committee failed to qualify for the Program due, in part, to its failure to report $250,000 in contributions from third-party contributors in the quarter.

21.     On or about October 12, 2021, the defendant GEORGE ANTHONY DEVOLDER SANTOS sent a text message to agents of the Committee, including Nancy Marks, asking an agent to "check in with" an employee of National Party Committee #1 to determine why the Committee failed to qualify for the Program.   An agent of the Committee responded to DEVOLDER SANTOS that "the only driver that matters is raising $250K (not loans or candidate contributions) in a single quarter," and "[i]t's really that simple though… $250K raised from donors within a quarter.   We haven't done that yet and that should be our focus." DEVOLDER SANTOS replied, "We are going to do this a little different.   I got it."

     i.     Fraudulent Year-End 2021 Report

22.     In or about and between December 2021 and January 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS and Nancy Marks conspired and agreed to falsely inflate the Committee's fundraising totals, including, but not limited to, in public filings with the FEC, in order to mislead the FEC, National Party Committee #1 and the public so that DEVOLDER SANTOS would qualify for the Program and receive financial and logistical support from National Party Committee #1.

23.     In furtherance of that scheme to defraud, on or about December 18, 2021, the defendant GEORGE ANTHONY DEVOLDER SANTOS texted Nancy Marks a list of the names of family members of DEVOLDER SANTOS and Marks, along with purported contribution amounts for each corresponding family member, for Marks to enter into the Year-End 2021 Report to the FEC for the purpose of ensuring that the Committee appeared to reach

the $250,000 threshold necessary to qualify for the second phase of the Program.   Contrary to the representations made by DEVOLDER SANTOS, none of the family members of DEVOLDER SANTOS and Marks had made, or ever did make, the listed contributions.

24.     Specifically, the defendant GEORGE ANTHONY DEVOLDER SANTOS's text message to Nancy Marks on or about December 18, 2021 falsely stated the following non-existent contributions to the Committee: (a) a $5,800 contribution from Contributor #1, an individual whose identity is known to the Grand Jury; (b) a $5,800 contribution from Contributor #2, an individual whose identity is known to the Grand Jury; (c) a $5,800 contribution from Contributor #3, an individual whose identity is known to the Grand Jury; (d) a $5,800 contribution from Contributor #4, an individual whose identity is known to the Grand Jury; (e) a $5,800 contribution from Contributor #5, an individual whose identity is known to the Grand Jury; (f) a $5,800 contribution from Contributor #6, an individual whose identity is known to the Grand Jury; (g) a $5,800 contribution from Contributor #7, an individual whose identity is known to the Grand Jury; (h) a $5,800 contribution from Contributor #8, an individual whose identity is known to the Grand Jury; (i) a $5,800 contribution from Contributor #9, an individual whose identity is known to the Grand Jury; and (j) a $2,900 contribution from Contributor #10, an individual whose identity is known to the Grand Jury.   DEVOLDER SANTOS also texted Marks: "These are the donations we spoke about last night before we went to sleep.   Total of $55,100.   Let's talk Monday in person."

25.     On or about December 21, 2021, after Nancy Marks texted the defendant GEORGE ANTHONY DEVOLDER SANTOS seeking the "list of donors – your family," DEVOLDER SANTOS again texted Marks the names and purported contribution amounts of Contributor #1, Contributor #2, Contributor #3, Contributor #4, Contributor #5, Contributor #6,

Contributor #7, Contributor #8, Contributor #9 and Contributor #10.   This time, DEVOLDER

SANTOS also included addresses and occupations for his relatives – information that

DEVOLDER SANTOS knew would be required for the Year-End 2021 Report to the FEC.

That same day, Marks emailed herself the content of this text message.

26.     In or about January 2022, the defendant GEORGE ANTHONY

DEVOLDER SANTOS repeatedly texted Nancy Marks about ensuring that the Committee

reached the $250,000 threshold necessary to qualify for the second phase of the Program.

DEVOLDER SANTOS advised Marks that he "really would like to know the final numbers for

the quarter."   On or about January 31, 2022, DEVOLDER SANTOS asked Marks "what did we

figure out about the report," and expressed that he was "lost and desperate."

27.     On or about January 31, 2022, the Committee submitted the Year-End

2021 Report to the FEC, with Nancy Marks certifying that she had "examined this Report and to

the best of my knowledge and belief it is true, correct and complete."   The Year-End 2021

Report to the FEC falsely reported the following contributions to the FEC:

| Contributor # | Amount Reported | Date |
|---|---|---|
| 1 | $5,800 | 12/31/21 |
| 2 | $2,900 | 12/31/21 |
| 3 | $5,800 | 12/31/21 |
| 4 | $2,900 | 12/31/21 |
| 5 | $5,800 | 12/16/21 |
| 6 | $5,800 | 11/15/21 |
| 7 | $5,800 | 12/31/21 |
| 8 | $5,800 | 12/31/21 |
| 9 | $5,800 | 11/3/21 |
| 10 | $3,900 | 10/9/21 |

28.     The Year-End 2021 Report further falsely reported a contribution of

$2,900 from another family member of Nancy Marks, Contributor #11, an individual whose

identity is known to the Grand Jury.   These falsely reported contributions contained in the Year-

End 2021 Report to the FEC totaled $53,200, causing the Committee to falsely claim total

quarterly receipts of $251,549.68 and thereby surpass the $250,000 threshold necessary to

qualify for the second phase of the Program.   The defendant GEORGE ANTHONY

DEVOLDER SANTOS and Marks knew that none of these reported contributions were true.

ii.     The Defendant Qualifies for the Second Phase of the Program

29.     Following the submission of the fraudulent Year-End 2021 Report to the

FEC, on or about February 10, 2022, the defendant GEORGE ANTHONY DEVOLDER

SANTOS signed an application for the Program and caused it to be submitted to National Party

Committee #1.   The application noted that candidates accepted into the Program would be

eligible for "additional campaign financial support," such as "hybrid ads, coordinated

expenditures, focus groups, splitting the cost of polling, etc."   DEVOLDER SANTOS also

submitted a biography falsely asserting, among other things, that he had worked for several

prominent Wall Street financial institutions.

30.     On or about February 23, 2022, the defendant GEORGE ANTHONY

DEVOLDER SANTOS texted Nancy Marks, "I GOT [THE PROGRAM]!"

31.     Based, in part, on its belief that the Committee had exceeded the $250,000

quarterly fundraising benchmark as reported in the Year-End 2021 Report to the FEC, National

Party Committee #1 announced the defendant GEORGE ANTHONY DEVOLDER SANTOS as

a candidate in the second phase of the Program on or about February 25, 2022.

iii.    Fraudulent April 2022 Quarterly Report

32.     In or about and between March and April 2022, the defendant GEORGE

ANTHONY DEVOLDER SANTOS and Nancy Marks continued their efforts to falsely inflate

the Committee's fundraising totals, including, but not limited to, in public filings with the FEC,

in order to mislead the FEC, National Party Committee #1, and the public so that DEVOLDER SANTOS would qualify for all phases of the Program and receive financial and logistical support from National Party Committee #1.   DEVOLDER SANTOS and Marks agreed to falsely represent in presentations and communications with National Party Committee #1 and in a quarterly submission to the FEC that DEVOLDER SANTOS had loaned the Committee $500,000, when, in fact, he had not.

33.     In approximately March 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS continued to express concern with ensuring that the Committee reported favorable fundraising totals in the first quarter of 2022.   For example, on or about March 7, 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS texted an associate, "I have my back against the wall this quarter lol."

34.     Similarly, on or about March 15, 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS texted another associate about the importance of the Committee reporting substantial fundraising totals for the purpose of ensuring he qualified for the Program and would receive the expected financial support from National Party Committee #1, stating: "I have a very important meeting at the end of this week with [National Party Committee #1].   This meeting will decide if they will invest in my race & so we need to come in with very strong fundraising numbers.   There are several million dollars on the line with this, and having your name as a contributor to my campaign would be a very great help."

35.     On or about March 21, 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS caused agents of the Committee to deliver a "Path to Victory" presentation to National Party Committee #1, which falsely represented to National Party Committee #1 staff members that DEVOLDER SANTOS was loaning the Committee $500,000

during the first quarter of 2022.   Further, the presentation listed as a "Key Factor" DEVOLDER

SANTOS's "[p]ersonal and political capital that will allow for a fully-funded operation."

36.   When agents of the Committee inquired, the defendant GEORGE

ANTHONY DEVOLDER SANTOS falsely represented that he was, in fact, making the

purported $500,000 loan to the Committee.   For example, on or about March 30, 2022, an agent

of the Committee texted DEVOLDER SANTOS: "Random: Did you get the wire done for the

Q1 loan?"   DEVOLDER SANTOS responded: "That's getting done tomorrow and it's not a

wire, banker check."   However, DEVOLDER SANTOS did not provide the Committee with a

check for the purported $500,000 loan, nor did he wire transfer such funds at that time.

Moreover, at that time, DEVOLDER SANTOS did not have the funds to cover such a loan.   In

truth, DEVOLDER SANTOS had less than $8,000 in his personal and business bank accounts.

37.   On or about April 13, 2022, the Committee further publicized inaccurate

fundraising totals for the Committee for the first quarter of 2022, relying on the false

representation by the defendant GEORGE ANTHONY DEVOLDER SANTOS that he had

loaned the Committee $500,000.   Specifically, the Committee issued a press release in which it

stated that the Committee would "report roughly $800,000 raised in Q1, a significant sum in

what is likely to be one of the most expensive races in the country."   This statement of the

fundraising totals of the Committee included the non-existent $500,000 loan purportedly made

by DEVOLDER SANTOS.   The press release further reported that DEVOLDER SANTOS had

qualified for the second phase of the Program by National Party Committee #1, "a sign of

national [political party's] growing interest and belief in the competitiveness of this seat."

38.   On or about April 15, 2022, the Committee submitted the April 2022

Quarterly Report to the FEC, with Nancy Marks certifying that she had "examined this Report

and to the best of my knowledge and belief it is true, correct and complete."   The April 2022 Quarterly Report to the FEC falsely reported that DEVOLDER SANTOS had loaned the Committee $500,000 on March 31, 2022.   DEVOLDER SANTOS and Nancy Marks did so for the purpose of making the Committee appear more financially sound than it was, knowing that the FEC, National Party Committee #1 and the public would rely on the truth and accuracy of these reports.

                iv.    <u>National Party Committee #1 Provides Financial Support to the Committee</u>

        39.    Based, in part, on the misrepresentations made by the defendant GEORGE ANTHONY DEVOLDER SANTOS and Nancy Marks about the financial position of the Committee in its reports to the FEC, presentations to National Party Committee #1 and public statements, National Party Committee #1 announced that DEVOLDER SANTOS had qualified for the third and final phase of the Program on or about June 14, 2022.

        40.    As a result of the defendant GEORGE ANTHONY DEVOLDER SANTOS's qualification for the third and final phase of the Program, National Party Committee #1 provided financial and logistical support to the Committee.

        41.    For example, on or about September 27, 2022, National Party Committee #1 and the Committee agreed to split the cost of a political poll, financial assistance that the defendant GEORGE ANTHONY DEVOLDER SANTOS knew to be a benefit derived from his qualification for the third and final phase the Program.

        42.    Similarly, qualification for the third and final phase of the Program entitled the defendant GEORGE ANTHONY DEVOLDER SANTOS to participate in joint fundraising committees with other qualified members of the Program.   On or about September 28, 2022, the Committee and another political committee affiliated with DEVOLDER SANTOS

received wire transfers from a joint fundraising committee for qualified members of the Program. On or about October 18, 2022, the Committee and another political committee affiliated with DEVOLDER SANTOS received a second round of wire transfers from a joint fundraising committee for qualified members of the Program.

B.    The Credit Card Fraud Scheme

43.    As part of the Credit Card Fraud Scheme, the defendant GEORGE ANTHONY DEVOLDER SANTOS obtained the personal identity and financial information of individuals who had contributed to the Committee and then caused their access devices to be charged repeatedly without authorization for DEVOLDER SANTOS's direct and indirect benefit, oftentimes concealing the true source of the funds by misappropriating the personal identity information of relatives and associates of DEVOLDER SANTOS without their authorization.

44.    For example, on or about December 14, 2021, Contributor #12, an individual whose identity is known to the Grand Jury, texted the defendant GEORGE ANTHONY DEVOLDER SANTOS and another agent of the Committee, providing billing information for two credit cards belonging to Contributor #12 for the purpose of authorizing a contribution to the Committee.   Thereafter, on or about December 17, 2021, DEVOLDER SANTOS caused a $5,800 contribution to be made to the Committee using the credit card billing information provided by Contributor #12.   That same day, DEVOLDER SANTOS caused two other contributions to be made to the Committee or affiliated political committees using the credit card billing information provided by Contributor #12.

45.    As a result, DEVOLDER SANTOS caused approximately $15,800 in campaign contributions to the Committee or affiliated political committees to be charged to the

credit cards of Contributor #12 on or about December 17, 2021.   This total exceeded the limits

set by the Election Act for the 2022 election cycle for individual contributions to candidate

committees.   Contributor #12 did not know of or authorize charges exceeding such limits.   For

the purpose of masking the true source of some of these funds and thereby circumventing the

Election Act's limits on the amount and sources of money that could be contributed to a federal

candidate for elected office, DEVOLDER SANTOS falsely identified the source of the funds for

one of these unauthorized charges to be a relative of DEVOLDER SANTOS, Person #2, an

individual whose identity is known to the Grand Jury.   As a result of DEVOLDER SANTOS's

fraudulent deception, the Committee submitted the Year-End 2021 Report to the FEC on or

about January 31, 2022, which falsely identified Person #2 as the source of the funds for a

$2,400 contribution and a $2,600 contribution, both made on December 17, 2021.

46.     In the following months, without the knowledge or authorization of

Contributor #12, the defendant GEORGE ANTHONY DEVOLDER SANTOS repeatedly used

the credit card billing information of Contributor #12 in attempts to make at least $44,800 in

unauthorized charges.   DEVOLDER SANTOS attempted to use the credit card billing

information of Contributor #12 to make contributions to the Committee and to the campaign

committees of other candidates for elected office in the names of, among others:

(a) DEVOLDER SANTOS himself; (b) Person #2; (c) Person #3, an individual whose identity is

known to the Grand Jury; and (d) Person #4, an individual whose identity is known to the Grand

Jury.

47.     On at least one occasion, the defendant GEORGE ANTHONY

DEVOLDER SANTOS used the credit card billing information for Contributor #12 to transfer

more than $11,000 to DEVOLDER SANTOS's personal bank account, again without the

knowledge or authorization of Contributor #12.   On or about August 1, 2022, DEVOLDER SANTOS used the credit card billing information for Contributor #12 to cause a charge of $12,000, using the credit card processing account of Company #1.   Of that sum, approximately $11,651.70 was transferred to the bank account of Company #1.   That same day, approximately $11,580 was then transferred from the bank account of Company #1 to the personal bank account of DEVOLDER SANTOS.

48.     In addition to Contributor #12, DEVOLDER SANTOS used the credit card billing information of other individuals to contribute to the Committee and to the campaigns of other candidates for elected office, all without the knowledge or authorization of the individual cardholders.   Again, in an effort to mask the true source of the funds and to circumvent the Election Act's limits on individual contributions, DEVOLDER SANTOS repeatedly masked those fraudulent transactions by using the names of other unwitting individuals, including individuals who had previously contributed to his campaign and his own relatives, among others.

C.     The Company #1 Fraud Scheme

49.     As part of the Company #1 Fraud Scheme, the defendant GEORGE ANTHONY DEVOLDER SANTOS directed Person #1 to solicit contributions to Company #1 from prospective contributors via emails, text messages and telephone calls.   In furtherance of those efforts, DEVOLDER SANTOS arranged for the creation of an email address associated with Company #1 for Person #1, provided Person #1 with the names and contact information of prospective contributors and conveyed false information to Person #1 about the nature of Company #1 and the purpose of the contributions, knowing that Person #1 would then communicate the false information to prospective contributors.

50.     At the direction of the defendant GEORGE ANTHONY DEVOLDER
SANTOS, Person #1 falsely advised prospective contributors, inter alia, that Company #1 was a
Section 501(c)(4) social welfare organization or an independent expenditure-only committee and
therefore not subject to contribution limits, and that contributions to Company #1 would be spent
on television advertisements and other independent expenditures benefitting DEVOLDER
SANTOS's candidacy for the House.   At the direction of DEVOLDER SANTOS, Person #1
also provided prospective contributors with instructions for wiring funds to a bank account
maintained by Company #1, as to which DEVOLDER SANTOS was an authorized signatory
("Company #1 Bank Account").

51.     It was further a part of the scheme to defraud that the defendant GEORGE
ANTHONY DEVOLDER SANTOS sent to prospective contributors one or more text messages
in which he requested that those prospective contributors speak with representatives of Company
#1, indicated that he needed contributions to Company #1 and falsely represented that such
contributions would be spent on television advertisements independently purchased by Company
#1 in support of DEVOLDER SANTOS's candidacy for the House.

52.     After receiving emails and text messages from the defendant GEORGE
ANTHONY DEVOLDER SANTOS and Person #1, and in reliance upon the materially false
statements therein, one or more individuals made contributions to Company #1 in sums
exceeding the limits pertaining to candidate committees.

53.     On or about September 12, 2022, the defendant GEORGE ANTHONY
DEVOLDER SANTOS falsely advised Person #1 via text message that Company #1 was "a
small C4" that existed "just to help this race" and that there were "no limits" with respect to
contributions.   Section 501(c)(4) of the Internal Revenue Code related to tax-exempt social

welfare organizations.   DEVOLDER SANTOS knew that Company #1 was not, in fact, registered with the Internal Revenue Service as a Section 501(c)(4) social welfare organization.

54.    On or about October 4, 2022, Person #1, acting at the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS and on behalf of Company #1, sent an email to Contributor #13, an individual whose identity is known to the Grand Jury.   That email falsely stated, inter alia, that Company #1 was attempting to "raise another $700,000 dollars to reach our goal of $1.5 million to invest in [DEVOLDER SANTOS's] race" to compete with the money "independently" raised for DEVOLDER SANTOS's opponent.   Thereafter, on or about October 20, 2022, Person #1, again acting at the direction of DEVOLDER SANTOS and on behalf of Company #1, sent to Contributor #13 another email, which falsely stated that a contribution from Contributor #13 would be spent, at least in part, "to get our advertising up on TV."   On or about October 25, 2022, Person #1, again acting at the direction of DEVOLDER SANTOS and on behalf of Company #1, sent to Contributor #13 a text message, which again falsely stated that a contribution from Contributor #13 would be spent, at least in part, "to purchase ads supporting George Santos."   On or about October 26, 2022, in reliance upon these emails and text message, Contributor #13 caused the sum of $25,000 to be wired to Company #1.

55.    In addition, on or about October 12, 2022, Person #1, acting at the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS and on behalf of Company #1, sent an email to Contributor #14, an individual whose identity is known to the Grand Jury.   That email falsely stated, inter alia, that Company #1 was formed "exclusively" to aid in electing DEVOLDER SANTOS and that "[t]here are no limits for contributors as we are a 501c4 Independent Expenditure committee under federal campaign finance law and do not coordinate directly with the Santos campaign."   The email to Contributor #14 further stated that

all funds raised by Company #1 would be spent "directly on supporting George and his election."

Further, the email to Contributor #14 contained an attachment, which DEVOLDER SANTOS

had previously approved.   That attachment described Company #1 as having been "created for

this singular purpose, to support that candidate, George Santos" and represented that Company

#1 was "fully committed to dedicating all its resources to making sure that George Santos is the

next member of Congress representing NY-03."   On or about October 21, 2022, DEVOLDER

SANTOS sent to Contributor #14 one or more text messages in which DEVOLDER SANTOS

reiterated the need for contributions to Company #1, which he falsely stated would be spent "on

TV" advertisements.   That same day, in reliance upon the email and accompanying text

messages, Contributor #14 caused the sum of $25,000 to be wired to Company #1.

DEVOLDER SANTOS knew that Company #1 was not, in fact, registered with the FEC as an

independent expenditure-only committee or Super PAC.

      56.     Shortly after the contributions from Contributor #13 and Contributor #14

were received by Company #1 in the Company #1 Bank Account, they were transferred into

bank accounts controlled by the defendant GEORGE ANTHONY DEVOLDER SANTOS,

including the Devolder Santos Bank Account #1 and a second personal bank account maintained

by DEVOLDER SANTOS ("Devolder Santos Bank Account #2").   From there, the funds

received from Contributor #13 and Contributor #14 were spent by DEVOLDER SANTOS for

his personal benefit, including to make cash withdrawals, personal purchases of luxury designer

clothing, credit card payments, a car payment, payments on personal debts and one or more bank

transfers to DEVOLDER SANTOS's personal associates.   Thus, contrary to representations

made by DEVOLDER SANTOS and Person #1, who was acting at the direction of DEVOLDER

SANTOS, these contributions to Company #1 were not spent on television advertisements or other independent expenditures in support of DEVOLDER SANTOS's candidacy for the House.

IV.    The Defendant's Employment-Related Fraudulent Schemes

A.    Fraudulent Application for and Receipt of Unemployment Benefits

57.    On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted.   In light of the ongoing health crisis related to the novel coronavirus, COVID-19, the CARES Act allocated additional unemployment benefits for eligible individuals.   Specifically, the CARES Act established additional unemployment insurance programs, including the Pandemic Unemployment Assistance program and the Federal Pandemic Unemployment Compensation program.   Both programs were federally funded and were administered by states, including New York State.   Funds from both programs, as well as from the Federal Emergency Management Agency's Lost Wages Assistance Program, comprised the benefits fraudulently obtained by the defendant GEORGE ANTHONY DEVOLDER SANTOS in connection with the scheme outlined below.

58.    On or about June 17, 2020, the defendant GEORGE ANTHONY DEVOLDER SANTOS applied to receive unemployment insurance benefits through the New York State Department of Labor ("NYS DOL").   In that application, DEVOLDER SANTOS falsely claimed to have been unemployed since the week of March 22, 2020.   Beginning on or about June 19, 2020, and continuing through on or about April 15, 2021, DEVOLDER SANTOS certified his continuing eligibility for unemployment benefits on a weekly basis, in each case falsely attesting, inter alia, that he was unemployed, available to take on new work and eligible for benefits.   In truth and in fact, however, beginning on or about February 3, 2020, and continuing through on or about April 15, 2021, DEVOLDER SANTOS was a Regional Director

at Investment Firm #1.   During that period, with the exception of approximately July 5, 2020

through August 30, 2020, DEVOLDER SANTOS received regular deposits into his personal

bank accounts as part of his Regional Director salary of approximately $120,000 per year.

59.     For the period of approximately March 22, 2020 through April 15, 2021,

based on a false application and false weekly certifications to the NYS DOL, the defendant

GEORGE ANTHONY DEVOLDER SANTOS received approximately $24,744 in

unemployment insurance benefits, which were deposited into Devolder Santos Bank Account #2.

The benefits received by DEVOLDER SANTOS were fully funded by the United States and a

department and agency thereof, to wit: the United States Department of the Treasury.

B.     False Statements in House Disclosure Reports

60.     Pursuant to the Ethics in Government Act of 1978, as a candidate for the

House in 2020 and 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS had a

legal duty to file a Financial Disclosure Statement ("House Disclosures") at designated times

prior to each of the general elections held on November 3, 2020 and November 8, 2022,

respectively.   In each of those House Disclosures, DEVOLDER SANTOS was required to make

a "full and complete statement" disclosing, inter alia: (a) his assets and income, transactions,

liabilities, positions held and arrangements and agreements; (b) "the source, type, and amount or

value of income . . . from any source (other than from current employment by the United States

Government)"; and (c) "the source, date, and amount of honoraria from any source, received" for

"the year of filing and the preceding calendar year."   As a candidate, DEVOLDER SANTOS

was personally required to certify the House Disclosures were "true, complete, and correct to the

best of my knowledge and belief."   The Instruction Guide for Financial Disclosure Statements

published by the U.S. House of Representatives Committee on Ethics provided that there were

civil and criminal penalties for knowingly and willfully falsifying a financial disclosure

statement and cited to Title 18, United States Code, Section 1001.

61.    The defendant GEORGE ANTHONY DEVOLDER SANTOS was

required to make these House Disclosures via an online filing system maintained by the House

Committee on Ethics or pre-printed form, and to certify that the statements made therein were

true, complete and correct.   DEVOLDER SANTOS was required to file the House Disclosures

with the Clerk of the House, for transmission to the House Committee on Ethics.

62.    On or about May 11, 2020, in connection with the 2020 election for the

House, the defendant GEORGE ANTHONY DEVOLDER SANTOS filed two House

Disclosures (the "2020 House Disclosures") in which he falsely certified that, during the

reporting period: (a) his only earned income consisted of salary, commission and bonuses

totaling $55,000 from Company #2, an entity the identity of which is known to the Grand Jury;

and (b) the only compensation exceeding $5,000 he received from a single source in which he

had an ownership interest was an unspecified commission bonus from Company #2.

63.    Contrary to these attestations, however, as the defendant GEORGE

ANTHONY DEVOLDER SANTOS then and there well knew and believed, from approximately

February 1, 2020 through the date upon which he filed the 2020 House Disclosures,

DEVOLDER SANTOS received approximately $25,403 in income from Investment Firm #1,

which he failed to truthfully report as required.   Further, DEVOLDER SANTOS knew that he

had received only $27,555 in compensation from Company #2 in 2019.

64.    Thereafter, on or about September 6, 2022, in connection with the 2022

election for the House, the defendant GEORGE ANTHONY DEVOLDER SANTOS filed a

House Disclosure (the "2022 House Disclosure"), in which he falsely certified that, during the

reporting period: (a) his earned income consisted of $750,000 in salary from the Devolder

Organization LLC; (b) his unearned income included dividends from the Devolder Organization

LLC valued at between $1,000,001 and $5,000,000; (c) he had no compensation exceeding

$5,000 from a single source in which he had an ownership interest; (d) he owned a checking

account with deposits totaling between $100,001 and $250,000; and (e) he owned a savings

account with deposits totaling between $1,000,001 and $5,000,000.

65.     Contrary to these attestations, as the defendant GEORGE ANTHONY

DEVOLDER SANTOS then and there well knew and believed, during the applicable reporting

period, he had not received from the Devolder Organization LLC the reported amounts of salary

or dividends and, during the reporting period, he did not maintain checking or savings accounts

with deposits in the reported amounts.   In addition, from approximately January 2021 through

September 2021, DEVOLDER SANTOS received approximately $28,107 in income from

Investment Firm #1 and approximately $20,304 in unemployment insurance benefits from the

NYS DOL, both of which he failed to truthfully report as required.

COUNT ONE
(Conspiracy to Commit Offenses Against the United States – the Party Program Scheme)

66.     The allegations contained in paragraphs one through 65 are realleged and

incorporated as if fully set forth in this paragraph.

67.     In or about and between December 2021 and November 2022, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant GEORGE ANTHONY DEVOLDER SANTOS, together with others, did knowingly

and intentionally conspire:

(a)     to knowingly and intentionally devise a scheme and artifice to

defraud and to obtain money and property by means of one or more materially false and

fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343;

        (b)    to knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the FEC, a department and agency of the United States Government, in violation of Title 18, United States Code, Section 1001(a)(2);

        (c)    to knowingly conceal, cover up, falsify and make one or more false entries in a record and document, and cause others to do so, with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the FEC, a department and agency of the United States Government, and in relation to and contemplation of such matter, in violation of Title 18, United States Code, Section 1519; and

        (d)    to knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of another person, during and in relation to felony violations, to wit: wire fraud as charged in Count Two and false statements as charged in Count Four, knowing the means of identification would belong to another person, in violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(b) and 1028A(c).

        68.    In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did commit and cause the commission of, among others, the following overt acts:

| Approximate Date | Overt Act |
|---|---|
| December 18, 2021 | Text messages between DEVOLDER SANTOS and Nancy Marks referenced in paragraphs 23 and 24. |

| December 21, 2021 | Text messages between DEVOLDER SANTOS and Marks referenced in paragraph 25. |
| December 21, 2021 | Email from Marks to herself referenced in paragraph 25. |
| January 31, 2022 | Submission by the Committee of Year-End 2021 Report to the FEC referenced in paragraph 27. |
| March 21, 2022 | Delivery by agents of the Committee of "Path to Victory" presentation to National Party Committee #1 referenced in paragraph 35. |
| March 30, 2022 | Text messages between DEVOLDER SANTOS and an agent of the Committee referenced in paragraph 36. |
| April 13, 2022 | Press release issued by the Committee referenced in paragraph 37. |
| April 15, 2022 | Submission by the Committee of April 2022 Quarterly Report to the FEC referenced in paragraph 38. |

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNTS TWO AND THREE
(Wire Fraud – the Party Program Scheme)

69.    The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

70.    In or about and between December 2021 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money by means of one or more materially false and fraudulent pretenses, representations and promises.

27

71.     On or about the dates set forth below, for the purpose of executing such scheme and artifice, and attempting to do so, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| TWO | January 31, 2022 | Submission by the Committee of Year-End 2021 Report to the FEC referenced in paragraph 27. |
| THREE | April 15, 2022 | Submission by the Committee of April 2022 Quarterly Report to the FEC referenced in paragraph 38. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT FOUR
(False Statements – Year-End 2021 Report Submitted to the FEC)

72.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

73.     On or about January 31, 2022, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, in a matter within the jurisdiction of a department and agency of the United States Government, to wit: the FEC, did knowingly and willfully make and cause to be made one or more materially false, fictitious and fraudulent statements and representations, to wit: DEVOLDER SANTOS, together with others, caused the Committee to submit a Report of Receipts and Disbursements to the FEC falsely stating that: (a) Contributor #1 made two contributions of $2,900 each to the Committee on December 31, 2021; (b) Contributor #2 made one contribution of $2,900 to the Committee on December 31, 2021; (c)

Contributor #3 made two contributions of $2,900 each to the Committee on December 31, 2021;

(d) Contributor #4 made one contribution of $2,900 to the Committee on December 31, 2021; (e)

Contributor #5 made two contributions of $2,900 each to the Committee on December 16, 2021;

(f) Contributor #6 made two contributions of $2,900 each to the Committee on November 15,

2021; (g) Contributor #7 made two contributions of $2,900 each to the Committee on December

31, 2021; (h) Contributor #8 made two contributions of $2,900 each to the Committee on

December 31, 2021; (i) Contributor #9 made two contributions of $2,900 each to the Committee

on November 3, 2021; (j) Contributor #10 made a contribution of $3,900 to the Committee on

October 9, 2021; (k) Contributor #11 made a contribution of $2,900 to the Committee on

December 31, 2021; and (l) Person #2 made a contribution of $2,400 and a contribution of

$2,600 to the Committee, both on December 17, 2021.   Contrary to these statements, in truth

and in fact, as DEVOLDER SANTOS then and there well knew and believed, none of these

contributions had been made to the Committee by the persons reported to be the sources of these

funds.

(Title 18, United States Code, Sections 1001(a)(2), 2 and 3551 <u>et seq.</u>)

COUNT FIVE
(Falsification of a Record or Document – Year-End 2021 Report Submitted to the FEC)

74.     The allegations contained in paragraphs one through 65 are realleged and

incorporated as if fully set forth in this paragraph.

75.     On or about January 31, 2022, within the Eastern District of New York

and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as

"George Santos," together with others, did knowingly conceal, cover up, falsify and make one or

more false entries in a record and document, and cause others to do so, with the intent to impede,

obstruct and influence the investigation and proper administration of a matter within the

jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit: DEVOLDER SANTOS, together with others, caused the Committee to submit a Report of Receipts and Disbursements to the FEC falsely stating that: (a) Contributor #1 made two contributions of $2,900 each to the Committee on December 31, 2021; (b) Contributor #2 made one contribution of $2,900 to the Committee on December 31, 2021; (c) Contributor #3 made two contributions of $2,900 each to the Committee on December 31, 2021; (d) Contributor #4 made one contribution of $2,900 to the Committee on December 31, 2021; (e) Contributor #5 made two contributions of $2,900 each to the Committee on December 16, 2021; (f) Contributor #6 made two contributions of $2,900 each to the Committee on November 15, 2021; (g) Contributor #7 made two contributions of $2,900 each to the Committee on December 31, 2021; (h) Contributor #8 made two contributions of $2,900 each to the Committee on December 31, 2021; (i) Contributor #9 made two contributions of $2,900 each to the Committee on November 3, 2021; (j) Contributor #10 made a contribution of $3,900 to the Committee on October 9, 2021; (k) Contributor #11 made a contribution of $2,900 to the Committee on December 31, 2021; and (l) Person #2 made a contribution of $2,400 and a contribution of $2,600 to the Committee, both on December 17, 2021.   Contrary to these statements, in truth and in fact, as DEVOLDER SANTOS then and there well knew and believed, none of these contributions had been made to the Committee by the persons reported to be the sources of the funds.

(Title 18, United States Code, Sections 1519, 2 and 3551 et seq.)

## COUNT SIX
(Aggravated Identity Theft – the Party Program Scheme)

76.    The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

77.     On or about January 31, 2022, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, during and in relation to the crimes charged in Counts Two and Four, did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of a person, to wit: the name of Contributor #1, the name of Contributor #2, the name of Contributor #3, the name of Contributor #4, the name of Contributor #5, the name of Contributor #6, the name of Contributor #7, the name of Contributor #8, the name of Contributor #9, the name of Contributor #10 and the name of Contributor #11, knowing that the means of identification belonged to said other persons.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(4), 1028A(c)(5), 2 and 3551 et seq.)

## COUNT SEVEN
### (False Statements – April 2022 Quarterly Report Submitted to the FEC)

78.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

79.     On or about April 15, 2022, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, in a matter within the jurisdiction of a department and agency of the United States Government, to wit: the FEC, did knowingly and willfully make and cause to be made one or more materially false, fictitious and fraudulent statements and representations, to wit: DEVOLDER SANTOS caused the Committee to submit a Report of Receipts and Disbursements to the FEC falsely stating that DEVOLDER SANTOS had loaned the Committee $500,000 on March 31, 2022.   Contrary to these statements, in truth and in fact, as DEVOLDER

SANTOS then and there well knew and believed, DEVOLDER SANTOS had not loaned the

Committee $500,000 on March 31, 2022.

(Title 18, United States Code, Sections 1001(a)(2), 2 and 3551 et seq.)

## COUNT EIGHT
(Falsification of a Record or Document – April 2022 Quarterly Report Submitted to the FEC)

80.    The allegations contained in paragraphs one through 65 are realleged and

incorporated as if fully set forth in this paragraph.

81.    On or about April 15, 2022, within the Eastern District of New York and

elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George

Santos," together with others, did knowingly conceal, cover up, falsify and make one or more

false entries in a record and document, and cause others to do so, with the intent to impede,

obstruct and influence the investigation and proper administration of a matter within the

jurisdiction of a department and agency of the United States, and in relation to and contemplation

of such matter, to wit: DEVOLDER SANTOS, together with others, caused the Committee to

submit a Report of Receipts and Disbursements to the FEC falsely stating that DEVOLDER

SANTOS had loaned the Committee $500,000 on March 31, 2022.   Contrary to these

statements, in truth and in fact, as DEVOLDER SANTOS then and there well knew and

believed, DEVOLDER SANTOS had not loaned the Committee $500,000 on March 31, 2022.

(Title 18, United States Code, Sections 1519, 2 and 3551 et seq.)

## COUNT NINE
(Access Device Fraud – the Credit Card Fraud Scheme)

82.    The allegations contained in paragraphs one through 65 are realleged and

incorporated as if fully set forth in this paragraph.

83.     In or about and between December 2021 and August 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did knowingly and with intent to defraud effect transactions, with one or more access devices issued to another person or persons, to receive payment and other things of value during a one-year period the aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate commerce.

(Title 18, United States Code, Sections 1029(a)(5), 1029(c)(1)(A)(ii) and 3551 et seq.)

## COUNT TEN
(Aggravated Identity Theft – the Credit Card Fraud Scheme)

84.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

85.     In or about and between December 2021 and August 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, during and in relation to the crime charged in Count Nine, did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of one or more persons, to wit: the name and access device of Contributor #12, knowing that the means of identification belonged to another person.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(4), 2 and 3551 et seq.)

## COUNTS ELEVEN THROUGH FIFTEEN
### (Wire Fraud – the Company #1 Fraud Scheme)

86.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

87.     In or about and between September 2022 and October 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money by means of one or more materially false and fraudulent pretenses, representations and promises.

88.     On or about the dates set forth below, for the purpose of executing such scheme and artifice, and attempting to do so, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| ELEVEN | October 4, 2022 | Email on behalf of Company #1 to Contributor #1 falsely stating that funds received from Contributor #1 would be used in support of DEVOLDER SANTOS's candidacy for the House. |
| TWELVE | October 12, 2022 | Email on behalf of Company #1 to Contributor #2 falsely stating that funds received from Contributor #2 would be used to independently support DEVOLDER SANTOS's candidacy for the House and that Company #1 was a Section 501(c)(4) social welfare organization that could accept limitless contributions. |

| THIRTEEN | October 20, 2022 | Email on behalf of Company #1 to Contributor #1 falsely stating that funds received from Contributor #1 would be used, in part, to purchase television advertisements supporting DEVOLDER SANTOS's candidacy for the House. |
| FOURTEEN | October 21, 2022 | Text message from DEVOLDER SANTOS to Contributor #2 falsely stating that funds received from Contributor #2 would be used, in part, to purchase television advertisements supporting DEVOLDER SANTOS's candidacy for the House. |
| FIFTEEN | October 25, 2022 | Text message on behalf of Company #1 to Contributor #1 falsely stating that funds received from Contributor #1 would be used, in part, to purchase television advertisements supporting DEVOLDER SANTOS's candidacy for the House. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS SIXTEEN THROUGH EIGHTEEN
(Unlawful Monetary Transactions Over $10,000 – the Company #1 Fraud Scheme)

89.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

90.     On or about and between October 21, 2022 and October 26, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did knowingly and intentionally engage in one or more monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, as set forth in the chart below, and that was derived from specified unlawful activity, to wit: wire fraud as charged in Counts Eleven through Fifteen, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a):

| Count | Approximate Date | Description |
|---|---|---|
| SIXTEEN | October 21, 2022 | On or about October 21, 2022, DEVOLDER SANTOS electronically transferred approximately $25,000 fraudulently obtained from Contributor #2 from Company #1 Bank Account to Devolder Santos Bank Account #1. |
| SEVENTEEN | October 26, 2022 | On or about October 26, 2022, DEVOLDER SANTOS electronically transferred approximately $25,000 fraudulently obtained from Contributor #1 from Company #1 Bank Account to Devolder Santos Bank Account #2. |
| EIGHTEEN | October 26, 2022 | On or about October 26, 2022, DEVOLDER SANTOS electronically transferred approximately $24,000 fraudulently obtained from Contributor #1 from Devolder Santos Bank Account #2 to Devolder Santos Bank Account #1. |

(Title 18, United States Code, Sections 1957(a), 1957(b), 2 and 3551 et seq.)

COUNT NINETEEN
(Theft of Public Money – Fraudulent Application for and Receipt of Unemployment Benefits)

91.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

92.     In or about and between June 2020 and April 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did knowingly, willfully and without lawful authority embezzle, steal, purloin and convert to his own use money and things of value of the United States and a department and agency thereof, to wit: money of the United States Department of the Treasury, the aggregate value of which exceeded $1,000.

(Title 18, United States Code, Sections 641 and 3551 et seq.)

COUNTS TWENTY AND TWENTY-ONE

(Wire Fraud – Fraudulent Application for and Receipt of Unemployment Benefits)

93.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

94.     On or about and between June 19, 2020 and April 15, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did knowingly and intentionally devise a scheme and artifice to defraud the NYS DOL, and to obtain money from the NYS DOL by means of one or more materially false and fraudulent pretenses, representations and promises.

95.     On or about the dates set forth below, for the purpose of executing the scheme, and attempting to do so, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

| Count | Date | Description |
|-------|------|-------------|
| TWENTY | January 19, 2021 | On or about January 19, 2021, DEVOLDER SANTOS received $564.00 through interstate wires from the NYS DOL in New York to Devolder Santos Bank Account #2 in New York, passing through one or more computer servers located outside New York. |
| TWENTY-ONE | January 26, 2021 | On or about January 26, 2021, DEVOLDER SANTOS received $564.00 through interstate wires from the NYS DOL in New York to Devolder Santos Bank Account #2 in New York, passing through one or more computer servers located outside New York. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

<u>COUNT TWENTY-TWO</u>
(False Statements – 2020 House Disclosure Reports)

96.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

97.     On or about May 11, 2020, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," in a matter within the jurisdiction of the legislative branch of the Government of the United States, did knowingly and willfully make one or more materially false, fictious and fraudulent statements and representations, to wit: DEVOLDER SANTOS submitted to the Clerk of the House, for delivery to the House Committee on Ethics, an amended House Disclosure falsely stating that, during the applicable reporting period: (a) his only earned income consisted of a salary, commission and bonus totaling $55,000 from Company #2; and (b) the only compensation exceeding $5,000 he received from a single source in which he had an ownership interest was a commission bonus from Company #2, when in truth and in fact, as DEVOLDER SANTOS then and there well knew and believed, he had earned $27,555 from Company #2 in 2019 and had received approximately $25,403 in income from Investment Firm #1 during the same reporting period, which he failed to report as required.

(Title 18, United States Code, Sections 1001(a)(2), (c)(1) and 3551 <u>et seq.</u>)

<u>COUNT TWENTY-THREE</u>
(False Statements – 2022 House Disclosure Report)

98.     The allegations contained in paragraphs one through 65 are realleged and incorporated as if fully set forth in this paragraph.

99.     On or about September 6, 2022, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as

"George Santos," in a matter within the legislative branch of the Government of the United

States, did knowingly and willfully make one or more materially false, fictious and fraudulent

statements and representations, to wit: DEVOLDER SANTOS submitted to the Clerk of the

House, for delivery to the House Committee on Ethics, a House Disclosure falsely stating that, in

the year 2021 and in 2022 up to the filing date: (a) his earned income consisted of $750,000 in

salary from the Devolder Organization LLC; (b) his unearned income included dividends from

the Devolder Organization LLC valued at between $1,000,001 and $5,000,000; and (c) he had no

compensation exceeding $5,000 from a single source in which he had an ownership interest.

Further, DEVOLDER SANTOS falsely stated that (d) he owned a checking account with

deposits totaling between $100,001 and $250,000; and (e) he owned a savings account with

deposits totaling between $1,000,001 and $5,000,000.   Contrary to these statements, in truth and

in fact, as DEVOLDER SANTOS then and there well knew and believed, he had not received

from the Devolder Organization LLC the reported amounts of salary or dividends; he did not

maintain checking or savings accounts with deposits in the reported amounts; and he received

approximately $28,107 in income from Investment Firm #1 and approximately $20,304 in

unemployment insurance benefits from the NYS DOL during the same reporting period, all of

which he failed to report as required.

(Title 18, United States Code, Sections 1001(a)(2), (c)(1) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE THROUGH THREE, ELEVEN THROUGH FIFTEEN, AND
### NINETEEN THROUGH TWENTY-ONE

100.    The United States hereby gives notice to the defendant that, upon his

conviction of any of the offenses charged in Counts One through Three, Eleven through

Fifteen and Nineteen through Twenty-One, the government will seek forfeiture in accordance

with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code,

Section 2461(c), which require any person convicted of such offenses to forfeit any property, real

or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of

such offenses.

101.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

>           (a)     cannot be located upon the exercise of due diligence;
>
>           (b)     has been transferred or sold to, or deposited with, a third party;
>
>           (c)     has been placed beyond the jurisdiction of the court;
>
>           (d)     has been substantially diminished in value; or
>
>           (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT NINE

102.    The United States hereby gives notice to the defendant that, upon his

conviction of the offense charged in Count Nine, the government will seek forfeiture in

accordance with: (a) Title 18, United States Code, Section 982(a)(2)(B), which requires any

person convicted of such offense to forfeit any property constituting, or derived from, proceeds

obtained directly or indirectly as a result of such offense; and (b) Title 18, United States Code,

Section 1029(c)(1)(C), which requires any person convicted of such offense to forfeit any personal property used or intended to be used to commit the offense.

103.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B), 982(b)(1), 1029(c)(1)(C) and 1029(c)(2); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS SIXTEEN THROUGH EIGHTEEN

104.    The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Sixteen through Eighteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

105. If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Corey R. Amundson

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
U.S. DEPARTMENT OF JUSTICE

F.#: 2022R01030

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

GEORGE ANTHONY DEVOLDER SANTOS, *et al.*

Defendant.

# SUPERSEDING INDICTMENT

( T. 18, U.S.C., §§ 371, 641, 981(a)(1)(C), 982(a)(1), 982(a)(2)(B),
982(b)(1), 1001(a)(2), 1001(c)(1), 1028A(a)(1), 1028A(b), 1028A(c)(4),
1028A(c)(5), 1029(a)(5), 1029(c)(1)(A)(ii), 1343, 1519, 1957(a), 1957(b),
2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

_____ Foreperson _____

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____ Clerk _____

*Bail, $* _____

*Ryan C. Harris / Laura Zuckerwise, Assistant U.S. Attorneys (718) 254-6489 / 6204*
*Anthony Bagnuola Assistant U.S. Attorney (631) 715-7849*
*Jacob R. Steiner / John P. Taddei, Trial Attorneys (202) 514-1412*