

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:AXB/LAZ
F. #2022R01030

*610 Federal Plaza*
*Central Islip, New York 11722*

October 20, 2023

**Filed Under Seal**

<u>By ECF</u>

The Honorable Joanna Seybert
United States District Judge
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. George Anthony Devolder Santos
             Criminal Docket No. 21-371 (S-1) (JS)

Dear Judge Seybert:

      The government respectfully submits this letter to notify the Court regarding a potential conflict of interest involving Joseph Murray, Esq., counsel for the defendant George Anthony Devolder Santos in the above-referenced matter. This potential conflict arises from relationships that Mr. Murray has with two individuals who are referenced in the superseding indictment, namely Person #1 and Nancy Marks. The government advises the Court of this information pursuant to its obligations under Second Circuit law so that the Court may conduct the appropriate inquiry pursuant to <u>United States v. Curcio</u>, 680 F.2d 881, 888-90 (2d Cir. 1982), including by appointing <u>Curcio</u> counsel during the next court appearance on October 27, 2023. <u>See, e.g.</u>, <u>United States v. Stantini</u>, 85 F.3d 9, 13 (2d Cir. 1996); <u>United States v. Malpiedi</u>, 62 F.3d 465, 467 (2d Cir. 1995).

I.      <u>Background</u>

      On October 10, 2023, a grand jury sitting in the Eastern District of New York returned a 23-count superseding indictment (the "Indictment") charging the defendant with: (i) one count of conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371; (ii) nine counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; (iii) four counts of making materially false statements, in violation of 18 U.S.C. §§ 1001(a)(2) and 2; (iv) two counts of falsification of records or documents, in violation of 18 U.S.C. §§ 1519 and 2; (v) two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2; (vi) one count of access device fraud, in violation of 18 U.S.C. §§ 1029(a)(5) and

1029(c)(1)(A)(ii); (vii) three counts of money laundering, in violation of 18 U.S.C. §§ 1957(a), 1957(b) and 2; and (viii) one count of theft of public money, in violation of 18 U.S.C. § 641.

As relevant here, Counts One through Eight arise from the defendant's alleged participation in a scheme to submit materially false reports to the Federal Election Commission ("FEC") on behalf of the defendant's campaign committee. Those reports fraudulently inflated the campaign committee's fundraising numbers for the purpose of misleading the FEC, a national political party committee and the public. By doing so, the defendant sought to, among other things, ensure that he qualified to receive financial and logistical support from the national political party committee (the "Party Program Scheme"). The Indictment alleges that Nancy Marks was the defendant's co-conspirator in the Party Program Scheme.[1]

Similarly, Counts Eleven through Eighteen arise from the defendant's alleged execution of a scheme to defraud and obtain money from supporters of his candidacy for the U.S. House of Representatives by fraudulently inducing them to contribute funds to a company he co-managed ("Company #1") under the false pretense that the money would be used to support the defendant's candidacy, when, in truth, the defendant spent thousands of dollars of the solicited funds on personal expenses, including luxury designer clothing and credit card payments (the "Company #1 Scheme"). The Indictment alleges that the defendant executed this scheme by providing Person #1 with false information about Company #1 for Person #1 to communicate to potential victims.

II.     Applicable Law

The Sixth Amendment affords a criminal defendant the right to the effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of [the defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if a defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal

---

[1] As the Court is aware, on October 5, 2023, Ms. Marks waived indictment and pled guilty to a felony information charging her with conspiracy to commit offenses against the United States. That charge arose from the same Party Program Scheme with which the defendant is currently charged.

quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable. They are of such a serious nature that, if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a

3

defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

III.  Analysis

To date, the government understands, from conversations with Mr. Murray, that the following is true: (a) Mr. Murray has had a personal relationship with Person #1 for several years, arising from their mutual involvement in local politics; (b), Person #1 initially sought to retain Mr. Murray as counsel during the government's investigation and had an initial consultation with Mr. Murray, during which they discussed the substance of the government's investigation; (c) due to his representation of the defendant, Mr. Murray ultimately decided not to represent Person #1 and never entered into a retainer agreement with Person #1; (d) Mr. Murray has a professional relationship with Nancy Marks, arising from Ms. Marks serving as Mr. Murray's campaign treasurer and campaign account signatory during Mr. Murray's two-month campaign to become the Queens County District Attorney in 2019; and (e) Mr. Murray's campaign account remains open but inactive and Ms. Marks remains the signatory for that account. Following Ms. Marks's guilty plea on October 5, 2023, Mr. Murray advised the government that he was concerned about the potential conflicts or appearance of conflicts created by the aforementioned relationships.

The government likewise believes that these issues warrant the Court's attention. Mr. Murray's relationships with Person #1 and Ms. Marks pose inherent dangers in that his affiliation with these individuals, each of whom was centrally involved in one of the criminal schemes charged in the Indictment, has the potential to affect his advice and conduct in this matter, including (1) advice to the defendant about whether to proceed to trial or plead guilty; (2) his cross-examination of either Person #1 or Ms. Marks, should they testify at trial; and (3) his choice of strategy at trial, to the extent certain strategies would require Mr. Murray to portray either Person #1 or Ms. Marks in a negative light.

That being said, based on the information the government possesses at this time, the government respectfully submits that the aforementioned potential conflicts of interest created by Mr. Murray's relationships with Person #1 and Ms. Marks are waivable. Courts have previously held that similar conflicts may be waivable by a defendant. For example, in United States v. Basciano, defense counsel had a prior relationship with one of the government's cooperating witnesses and had conversations with the cooperating witness before the cooperating witness was arrested, after he was arrested, and after he had begun cooperating with the government. No. 03 CR 929 (NGG), 2008 WL 794945, at *6 (E.D.N.Y. Mar. 24, 2008). Following a Curcio hearing, during which independent counsel was appointed to speak with the defendant, the Court permitted the defendant to waive the conflict. Id. at *7. Following his conviction at trial, the defendant moved for a new trial on the basis of the denial

of his right to conflict-free counsel. Id. at *1. The district court denied the motion, concluding that "[c]onflicts involving an attorney's prior representation of a trial witness are generally waivable" and the defendant's "waiver was knowing and intelligent." Id. at *7-8. To the government's knowledge, Mr. Murray did not ultimately represent Person #1 or Ms. Marks in connection with this matter, although he had an initial consultation with Person #1.[2]

        Accordingly, the government respectfully requests that the Court appoint Curcio counsel to advise the defendant regarding the potential conflicts and evaluate whether the defendant is able to knowingly and intelligently waive that conflict. A Curcio hearing is necessary to determine: (i) whether Mr. Murray's relationships with Person #1 or Ms. Marks present a conflict or a potential conflict; (ii) the nature and extent of that conflict or potential conflict; and (iii) whether the defendant is willing and able to make a knowing and voluntary waiver of the conflict. The government has provided proposed questions for the Court to ask the defendant to ensure a valid waiver, which are attached as Exhibit A.

---

[2] To address his potentially privileged communications with Person #1, Mr. Murray has advised the government that, should the defendant knowingly and intelligently waive these potential conflicts of interest, Mr. Murray would arrange for the defendant to retain separate counsel for the purpose of cross-examining Person #1, should Person #1 testify at any future trial in this matter.

IV.    <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that the Court notify the defendant of the potential conflicts described above and conduct an appropriate inquiry pursuant to <u>Curcio</u>, including through the appointment of <u>Curcio</u> counsel. The government further requests that the Court advise the defendant regarding his right to conflict-free representation and determine whether he knowingly and intelligently waives those rights.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   *Ryan C. Harris*
        Ryan C. Harris
        Anthony Bagnuola
        Laura A. Zuckerwise
        Assistant U.S. Attorneys
        (718) 254-7000

        COREY R. AMUNDSON
        Chief, Public Integrity Section
        U.S. Department of Justice

By:   *Jacob R. Steiner*
        Jacob R. Steiner
        John P. Taddei
        Trial Attorneys

### Exhibit A

Proposed <u>Curcio</u> Examination

I. <u>Potential Conflict of Interest Posed by Defense Counsel's Relationships</u>

1. Are you satisfied with the services of your attorney thus far in this case?

2. Do you understand that, in every criminal case, including this one, the defendant is entitled to the assistance of counsel whose loyalty to him or her is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his or her client's interests?

3. Have you received any inducements, promises, or threats about your choice of counsel in this case?

4. Are you aware of the nature of your attorney's relationship with Nancy Marks? Has Mr. Murray explained that relationship to you and do you feel you fully understand it?

5. Are you aware of the nature of your attorney's relationship with the person identified in the Indictment as Person #1? Without stating his identity, are you aware of the identity of Person #1? Has Mr. Murray explained his relationship with Person #1 to you and do you feel you fully understand it?

6. Because your attorney has relationships with persons whose conduct is at issue in this case, he may be influenced by his relationships with these persons in connection with your attorney's representation of you, that is, he may be influenced to advise you to do things that are either in your attorney's interests or the interests of Person #1 or Ms. Marks and not in your best interests.

7. Have you consulted with counsel other than your attorney about the risks associated with this potential conflict of interest?

8. Let me give you some examples of the ways in which your attorney's ability to represent you might be affected by the fact that your attorney has relationships with Person #1 and Ms. Marks. This could affect the way that your lawyer considers and advises you:

   a. Whether, and when, you should plead guilty or proceed to trial;

   b. What defenses you should raise;

   c. Whether you should testify at trial;

   d. Which witnesses should be cross examined, by whom they should be cross examined, and what questions they should be asked;

   e. Which witnesses should be called, and what other evidence to offer on your behalf;

   f. What arguments to make on your behalf to the jury;

   g. What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or, if you are convicted, at your sentencing.

9. Tell me in your own words what your understanding is of the potential conflict of interest arising in this situation.

II. <u>Right to Conflict-Free Representation</u>

1. Do you understand that you have the right to object to your attorney's continued representation of you based upon the existence of a potential conflict of interest?

2. It is important that you understand that no one can predict with any certainty the course that this case will take or how this conflict may affect it.

3. What is your understanding of the right to "effective assistance of counsel"?

4. Is there anything I have said that you wish to have explained further?

5. I will give you an opportunity to think about what you have been told, and, if you would like, to talk it over with counsel other than your attorney. After you have thought it over, I will ask whether you have considered the matters that I have talked to you about, either with or without an attorney. Then I will ask whether you wish to continue with your attorney.

III.    <u>Continuation of Curcio Hearing</u>

1. Given that your defense attorney's relationships with Person #1 and Ms. Marks has the potential to adversely affect your defense, do you still believe that it is in your best interest to proceed with your attorney?

2. Is that your wish?

3. Do you understand that by continuing in this fashion with your attorney, you are waiving your right to be represented by an attorney who has no conflict of interest or potential conflict of interest?

4. Are you knowingly and voluntarily waiving your right to conflict-free representation?

5. Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of your attorney having these relationships with Person #1 and Ms. Marks, you were denied effective assistance of counsel?

6. Is there anything that the Court has said that you wish to have explained further?