1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA,    :    23-CR-197(JS)
3                                  :
                  Plaintiff,       :
4                                  :    United States Courthouse
           -against-               :    Brooklyn, New York
5                                  :
     NANCY MARKS,                  :
6                                  :    October 5, 2023
                  Defendant.       :    3:00 p.m.
7                                  :
                                   :
8    - - - - - - - - - - - - - - X

9          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10        BEFORE THE HONORABLE JOANNA SEYBERT
              UNITED STATES DISTRICT JUDGE
11

12              A P P E A R A N C E S:

13   For the Government:  BREON PEACE, ESQ.
                          United States Attorney
14                        Eastern District of New York
                            271-A Cadman Plaza East
15                          Brooklyn, New York 11201
                          BY: ANTHONY BAGNUOLA, ESQ.
16                            RYAN HARRIS, ESQ.
                              LAURA ZUCKERWISE, ESQ.
17                            Assistant United States Attorneys

18                        UNITED STATES DEPARTMENT OF JUSTICE
                          Public Integrity Section
19                          1301 New York Avenue NW, 10th Floor
                            Washington, D.C. 20530
20                        BY: JACOB STEINER, ESQ.
                              JOHN TADDEI, ESQ.
21                            Assistant United States Attorneys

22   For the Defendant:   PERINI & HOERGER
23                          1770 Motor Parkway, Suite 300
                            Hauppauge, New York 11749
24                        BY: RAYMOND PERINI, ESQ.
                              MAUREEN HOERGER, ESQ.
25

*Kristi Cruz, RMR, CRR, RPR*
*Official Court Reporter*

*Proceedings*                                                    2

Court Reporter:     KRISTI CRUZ, RMR, CRR, RPR
                    Official Court Reporter
                    100 Federal Plaza / Central Islip, NY 11722
                    E-mail: kristi.edny@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by
Computer-Aided Transcription.



                        *       *       *       *



           (In open court.)

           THE COURTROOM DEPUTY:  All rise.

           (Judge enters.)

           THE COURT:  Good afternoon.  Please be seated.

           MR. PERINI:  Good afternoon, Your Honor.

           MR. BAGNUOLA:  Good afternoon, Your Honor.

           THE COURTROOM DEPUTY:  Calling criminal case

23-CR-197, United States of America versus Nancy Marks.

           Counsel, please state your appearances for the

record.

           MR. BAGNUOLA:  Good afternoon, Your Honor.

           Anthony Bagnuola for the Government.

           With me at counsel table today are Assistant U.S.

Attorneys Ryan Harris and Laura Zuckerwise, as well as trial

attorneys Jacob Steiner and John Taddei from the Public

Integrity Section of the Justice Department.

           THE COURT:  Good afternoon to you all.

*Proceedings*                                                                3

1          MR. PERINI:  Your Honor, Perini & Hoerger by

2     Raymond G. Perini, 1770 Motor Parkway.

3          At the table is my partner, Maureen Hoerger.

4          We're on behalf of Nancy Marks.

5          THE COURT:  Good afternoon to you all.

6          All right.  I understand there's going to be an

7     arraignment initially on the information with the waiver.

8     I'll advise the Government of the Brady rights of the

9     defendant.

10          And then it's my additional understanding that

11     there's going to be a disposition on one of the counts.

12          MR. PERINI:  That's right.

13          THE COURT:  So based on that, if you would stand,

14     Ms. Marks, we'll have you sworn in.

15          THE COURTROOM DEPUTY:  Ma'am, please raise your

16     right hand.

17          (Defendant sworn.)

18          THE COURTROOM DEPUTY:  Thank you.  You may be

19     seated.

20          THE COURT:  If you would speak directly into the

21     microphone.

22          Ms. Marks, you're under oath.  If you don't tell

23     the truth, you could be charged with perjury and face

24     additional jail time.

25          Do you understand that?

*Proceedings*                                                                4

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  If at any time you don't understand a

3    question, tell me you don't understand it and I'll rephrase

4    it.

5          And if at any time you want to speak to your

6    lawyer before you answer a question, let me know that and

7    I'll give you a chance to speak to counsel in private.

8          All right?

9          THE DEFENDANT:  Yes.  Thank you.

10          THE COURT:  You're welcome.

11          Are you willing to answer my questions under oath

12    knowing the consequences of not telling the truth?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Prior to coming to court today, have

15    you had any drugs, alcohol, any substance that might impair

16    your ability to understand these proceedings?

17          THE DEFENDANT:  No.  Just my medical prescription.

18          THE COURT:  In terms of your medical prescriptions,

19    you're able to function, drive a car, speak to counsel,

20    review everything; is that correct?

21          THE DEFENDANT:  Correct, Your Honor.

22          THE COURT:  And have you had sufficient time to

23    review the documents and discuss these items with your

24    attorney?

25          THE DEFENDANT:  Yes, Your Honor.

*Proceedings*                                                          5

1          THE COURT:  And there is currently an information,

2    and you know you're entitled to have an indictment.  An

3    indictment would require a grand jury to render a

4    determination that there was sufficient evidence to hold you

5    for trial.

6          Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  The Government would present a case to

9    the grand jury, and they would make a determination as to

10   whether or not there was sufficient evidence.

11         Meanwhile, information that you have at this point

12   is a document that's signed by the U.S. Attorney.  It's not

13   presented as to a grand jury, and you're giving up that

14   important right, because this is a felony charge we're

15   talking about.

16         Do you understand?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.

19         Having done that and being advised, Mr. Perini, of

20   her rights, the defendant has executed a Waiver of

21   Indictment; is that correct?

22         MR. PERINI:  That's correct, Your Honor.

23         THE COURT:  Unless there's something else to be

24   stated, the Court will accept that, and I will advise the

25   Government of the defendant's rights under Brady.

*Proceedings*                                                             6

1          I direct the prosecution to comply with its

2    obligation under *Brady vs. Maryland* and its progeny to

3    disclose to the defense all information, whether admissible

4    or not, that is favorable to the defendant, material either

5    to guilt or to punishment, and known to the prosecution.

6    Possible consequences for noncompliance may include

7    dismissal of individual charges of the entire case,

8    exclusion of evidence, and professional discipline or court

9    sanctions on the attorneys responsible.  I will be entering

10   a written order more fully describing this obligation and

11   the possible consequences of failing to meet it, and I

12   direct the prosecution to review and comply with that order.

13          Does the prosecution confirm that it understands

14   its obligations and will fulfill them?

15          MR. BAGNUOLA:  Yes, Your Honor, we do and we will.

16          THE COURT:  Thank you.  All right.  And I will

17   sign off on the Waiver of Indictment.

18          A not guilty plea has been entered, and it's my

19   understanding that the defendant wishes to withdraw the not

20   guilty plea and enter a guilty plea to the information as to

21   conspiracy to defraud the United States; is that correct?

22          MR. PERINI:  That's correct, Your Honor.

23          MR. BAGNUOLA:  Yes, Your Honor.  This is a

24   single-count information.

25          THE COURT:  Yes.

*Proceedings*                                                    7

1          MR. BAGNUOLA:  The exact charge contained in here

2     is conspiracy to commit one or more federal offenses.

3          THE COURT:  Everybody's coughing.  This is not a

4     good sign.

5          MR. PERINI:  I think it's only me.

6          THE COURT:  The Government has also given to the

7     Court, in addition to the plea agreement, and I have a

8     standard plea form that I use, is also an element sheet

9     which indicates this is a conspiracy to defraud the United

10    States under 18 United States Code Section 371, and the

11    conspiratorial object is a wire fraud under Section 18

12    United States Code 1343.  Also Conspiratorial Object

13    Number 2, false statements under 18 United States Code

14    Section 1001(a)(2).  And Conspiratorial Object Number 3,

15    falsification of a record or document, and that's under

16    Title 18 United States Code section 1519.  And

17    Conspiratorial Object Number 4, aggravated identity theft,

18    under 18 United States Code 1028(a).

19          In addition, let me ask Ms. Marks, have you

20    reviewed the plea agreement with your attorney?

21          THE DEFENDANT:  Yes, I have, Your Honor.

22          THE COURT:  And you filled out the standard plea

23    form indicating you understand your rights and the

24    consequences of pleading guilty, essentially, right?

25          THE DEFENDANT:  Yes, Your Honor.

*Proceedings*                                                    8

1          THE COURT:  Now, having waived indictment, you're

2    now facing this one count, information, and based on that

3    you'll be pleading guilty to, as I said before, Title 18

4    United States Code 371, and that's a conspiracy to commit

5    one or more offenses against the United States.  The maximum

6    term of imprisonment is five years.  There is no minimum

7    term.  There's a maximum supervised release term of three

8    years.  But if you violate any of the portions of your

9    obligations under the supervised release term, you can be

10   sent back to jail and serve additional time, and you can be

11   sentenced up to two years without credit for prerelease

12   imprisonment or time previously served on post-release.

13          Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Additionally, there is a maximum fine

16   of $250,000, or twice the gross gain or twice the gross

17   loss.

18          Do you realize that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Restitution is mandatory, and that

21   would mean the full amount of each victim's losses as I

22   would determine.  Additionally, you must pay a $100 special

23   assessment fee.

24          Do you realize that?

25          THE DEFENDANT:  Yes, Your Honor.

*Proceedings*        9

1       THE COURT:  And I'm sure Mr. Perini and

2   Ms. Hoerger has told you about the sentencing guidelines.

3   They are advisory.  The Court is not required to follow

4   them, but the Court is required to look at them, review

5   them, and see where you stand in terms of the guidelines as.

6   It's calculated now, there's a base offense of 6, a loss

7   between $150,000 and $250,000; abuse of trust, position of

8   public trust, and that's two additional levels, for a total

9   of 18.

10      And going on with the conspiratorial object,

11   there's a total of 16 with respect to obstruction of

12   justice.  The conspiratorial object with false statements,

13   that's an 8.  Conspiratorial object of identity theft,

14   that's 18.  So you have a base offense of 18, and there is

15   no additional calculation on that.

16      But according to this agreement, if you clearly

17   demonstrate your acceptance of responsibility through your

18   allocution, your pleading guilty, and your subsequent

19   conduct prior to sentence being imposed, you'll get a

20   two-level reduction, and if that's warranted and the Court

21   makes that determination, that would result in an adjusted

22   offense level of 16 and a range of imprisonment of 21 to 27

23   months.  That's assuming you have a Criminal History

24   Category of I.

25      In addition, that would also allow additional time

*Proceedings*                                              10

1   to be put on here with conspiratorial object number four,

2   that's 24 months to run consecutive to all other counts.

3   The effective guideline range, therefore, is 45 to 51

4   months.  And if you accept responsibility, according to the

5   U.S. Attorney's Office, they will recommend, plead guilty

6   today, an additional one-level reduction, which will bring

7   you down to an imprisonment range of 18 to 24 months, and

8   because of Conspiratorial Object Number 4, 24 months in

9   addition to run consecutive to all the other counts.  So

10  that puts you at a guideline range of 42 to 48 months.

11          Do you understand that calculation?

12          THE DEFENDANT:  I do, Your Honor.

13          THE COURT:  Are you sure?

14          THE DEFENDANT:  Yes.  We went over it.

15          THE COURT:  All right.

16          In addition, you know that these conditions are

17  not binding on the U.S. Attorney's Office, the Probation

18  Department, or the Court.  They are an estimate.  The

19  guideline offense can be different that's advocated by the

20  U.S. Attorney's Office or determined by the Probation

21  Department or by the Court.

22          Do you realize that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  However, you are agreeing not to file

25  an appeal, other than if you're filing an appeal for

1   ineffective assistance of counsel.  You won't file an appeal

2   of the Court's sentence if I sentence you to a term of 51

3   months or less.

4           THE DEFENDANT:  Correct, Your Honor.

5           THE COURT:  Okay.  And Mr. Perini and Ms. Hoerger

6   have described that to you in detail, right?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  So you give up any right to challenge

9   your conviction as being unconstitutional, claiming that it

10  doesn't fall within the statute or have any appellate

11  review.

12          All right?

13          THE DEFENDANT:  I do.

14          THE COURT:  Additionally, if the Government finds

15  out additional disclosure in connection with your guilty

16  plea, you are not going to file an appeal as a prevailing

17  party or under the various other ways to appeal; is that

18  correct?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And you promise to pay the special

21  assessment to the Clerk of the Court on or before

22  sentencing; is that right?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And this is what the U.S. Attorney's

25  Office is promising to you based on what they know now, that

1    they will have no further criminal charges against you for

2    participating --

3              MR. BAGNUOLA:  Your Honor.

4              THE COURT:  Sorry?

5              MR. BAGNUOLA:  May we approach just for one

6    moment, please?

7              THE COURT:  Sure.  Come on up.

8              (Sidebar conference.)

9              (Continued on the following page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following occurred at sidebar and is under

2     seal.)







*Sealed by Order of the Court*                    15

24    (Sidebar ends.)

25    (Continued on following page.)

*Proceedings* 16

1        (In open court.)

2        THE COURT:  All right.  With regard to the plea

3    agreement, that will be filed, but the portion that I

4    started to refer to will not be filed, but the information

5    lays out the elements.

6        Let me ask you, Ms. Marks, have you had a chance

7    to review not only the plea agreement, but the information

8    in its entirety?

9        THE DEFENDANT:  Yes, I have, Your Honor.

10        THE COURT:  All right.  And you've discussed this

11    with your attorney?

12        THE DEFENDANT:  Yes, I have.

13        THE COURT:  And you agree not to have this

14    particular portion of the plea agreement made public; is

15    that right?

16        THE DEFENDANT:  Correct, Your Honor.

17        THE COURT:  All right.

18        So also based on what the office knows now, it

19    will not make a motion for an upward departure into the

20    sentencing guidelines.  If they find out additional

21    information or you violate the terms of this agreement, then

22    they can make such a motion.  So they won't give you an

23    additional downward adjustment for timely acceptance as

24    indicated earlier, and they will be bound by the various

25    provisions of the plea agreement that we've referred to.

*Proceedings*                                                    17

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  You also understand that this plea

4   agreement, this agreement you have with the Government,

5   doesn't bind the Government from going after you

6   administratively, civilly, and also it doesn't stop other

7   governmental and state entities from prosecuting you.  It's

8   limited to the U.S. Attorney for the Eastern District of New

9   York on the charges.

10         Do you understand that?

11         THE DEFENDANT:  Yes, I do.

12         MR. PERINI:  Your Honor, can I have one moment to

13  speak to the prosecutor?

14         THE COURT:  Yes.

15         (Discussion held off the record.)

16         MR. PERINI:  Your Honor, I have no further

17  application.

18         THE COURT:  You have no further application.

19         MR. PERINI:  None, Your Honor.

20         THE COURT:  All right.

21         And also, Ms. Marks, this is the only agreement

22  that you're aware of?  You don't have any written proffer

23  agreements; is that correct?

24         THE DEFENDANT:  Correct, Your Honor.

25         THE COURT:  And you know if you violate the terms

*Proceedings*                                                    18

1   of the agreement, that can result in the Government making

2   various motions to increase your penalties.  All right?

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  All right.

5             We've gone through basically the rights you'll be

6   giving up if I accept your plea to this information.

7             First of all, you're entitled to a public speedy

8   trial, at which you are entitled to counsel.  If you don't

9   have funds for counsel, the Court would appoint counsel for

10  you.

11            Additionally, you're entitled to have witnesses

12  subpoenaed on your behalf.  There's a variety of defenses

13  that you have to these charges.  Counsel has discussed that

14  with you; is that correct?

15            THE DEFENDANT:  Correct, Your Honor.

16            THE COURT:  The Government has the burden of

17  proving your guilt beyond a reasonable doubt.  That burden

18  remains on the Government up until a jury of 12 impartial

19  jurors find you guilty beyond a reasonable doubt.  It

20  continues.  So you're giving up a very significant right by

21  pleading guilty.

22            Do you understand that?

23            THE DEFENDANT:  Yes, I do.

24            THE COURT:  And there's other rights that you have

25  with respect to your appeals process.  There are a variety

*Proceedings*                                                    19

1   of things, defenses, I'm sure you've discussed with counsel,

2   and you understand you're giving them up too?

3           THE DEFENDANT:  Yes, I do.

4           THE COURT:  Do you also understand that you're

5   agreeing not to appeal the sentence if you're sentenced to a

6   term of 51 months or less?

7           THE DEFENDANT:  Correct.

8           THE COURT:  Are there any other agreements or

9   promises as to what this sentence would be?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Do you have any questions?

12          THE DEFENDANT:  At the moment, no.

13          THE COURT:  All right.

14          And Mr. Perini and Ms. Hoerger have discussed in

15   detail with you the consequences of pleading guilty?

16          THE DEFENDANT:  Everything, Your Honor.

17          THE COURT:  And you're pleading guilty because you

18   are guilty and for no other reason?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.

21          Can you tell me what it is that you did -- if you

22   have a written summary or however you're going to do it --

23   with respect to this charge?

24          MR. PERINI:  Your Honor, it is a written summary

25   that we've gone over and which she will read to the Court.

*Proceedings*                                                20

1          Would you like her to stand?

2          THE COURT:  No, I'd like her to be seated and

3    speak directly into the mic so we have an accurate record,

4    if you would.

5          THE DEFENDANT:  Your Honor, I have read the

6    information and understand it.  I admit to all the actions

7    attributed to me in the information, including when I filed

8    a list of false donors with the FEC on the year-end 2021

9    report knowing it was not true, and the donors, who are the

10   real people, didn't give me permission to use their names.

11   I filed the first quarter 2022 report stating that 500,000

12   was loaned to the campaign by Co-Conspirator Number 1, and

13   the money was not received at that time.  As campaign

14   treasurer, I knew that the loan had not been made at that

15   time.

16          These reports were created and filed online within

17   the Eastern District of New York.  I did these things in

18   agreement with Co-Conspirator Number 1 for his benefit and

19   to obtain money for his campaign by artificially inflating

20   his funds to meet thresholds set by a national political

21   committee.  I knew that this information was material to the

22   FEC and that they would rely on it.

23          THE COURT:  All right.

24          And where did this occur?  Any particular area or

25   location?

*Proceedings*                                                21

1          THE DEFENDANT:  It covered New York Congressional

2    Number 3.

3          THE COURT:  And that's in the Eastern District of

4    New York, correct?

5          THE DEFENDANT:  Correct.

6          THE COURT:  All right.

7          What would the Government's proof be with regard

8    to the various elements in these charges?

9          MR. BAGNUOLA:  Yes, Your Honor.  Would you prefer

10   I also remain seated?

11         THE COURT:  Yes, I would.

12         MR. BAGNUOLA:  If this case were to proceed to

13   trial, the Government would offer official reports, emails

14   and text messages, financial records, and testimony from

15   victims and witnesses, among other things, to establish the

16   following:

17         During the 2020 and 2022 election cycles,

18   Ms. Marks was the treasurer for the principal fundraising

19   committee for a congressional candidate here in the Eastern

20   District of New York.  As part of her job for the campaign,

21   Ms. Marks made periodic reports, usually online, to the FEC,

22   the federal agency charged with accurately reporting to the

23   public the sources and amounts of money raised by political

24   campaigns and monitoring compliance with campaign finance

25   laws.

*Proceedings*                                                    22

1        During the 2020 and 2022 election cycles, however,

2   Ms. Marks and the candidate agreed to and did make numerous

3   false reports and statements to the FEC, to a national

4   political party committee based in Washington, D.C., and to

5   the public, all for the purpose of falsely inflating the

6   campaign's publicly-reported fundraising numbers and

7   tricking the national political party committee into

8   accepting the candidate into a program that would provide

9   financial and logistical support to the campaign.

10       For example, in the campaign's 2021 year-end

11  report, Ms. Marks and the candidate agreed to and did

12  falsely report that at least ten of their family members had

13  made significant financial contributions to the campaign,

14  many on the final day of the reporting cycle.  In fact,

15  Ms. Marks and the candidate knew that none of those

16  individuals had made the reported contributions.

17  Nevertheless, Ms. Marks and the candidate used those

18  individuals' names, addresses, and other personal

19  information without their knowledge or consent to make false

20  public filings to the FEC.

21       The purpose of this fraudulent scheme was to make

22  it appear that the campaign had reached certain fundraising

23  benchmarks that were required for qualification in the

24  program run by the national political party committee when,

25  in fact, the campaign had not met those benchmarks.

1          Based on Ms. Marks's falsified reports, the

2    campaign falsely claimed total quarterly receipts exceeding

3    that required for qualification and acceptance in the

4    national party committee's program.  And at least partially

5    in reliance on those false reports, the candidate was

6    accepted into the program and received financial and

7    logistical support from the national political party

8    committee.

9          Thereafter, Ms. Marks and the candidate agreed to

10   and did continue making false representations to the FEC, to

11   the national political party committee, and in public

12   statements about the campaign's fund raising.  In

13   particular, in the campaign's 2022 first quarter report,

14   Ms. Marks and the candidate agreed to and did falsely report

15   to the FEC that the candidate personally loaned $500,000 to

16   the campaign.  In fact, Ms. Marks and the candidate knew

17   that the candidate made no such loan, and at the time lacked

18   the financial ability to make any such loan.

19         Again, based in part on Ms. Marks's and the

20   candidate's fraudulent conduct, the national political party

21   committee provided financial and logistical support to the

22   campaign, including access to the proceeds of joint

23   fundraising efforts involving other accepted members of the

24   program.

25         THE COURT:  How do you plead to the information,

*Proceedings*                                                        24

1    Ms. Marks?

2           THE DEFENDANT:  Guilty, Your Honor.

3           THE COURT:  The Court finds that you made a

4    knowing voluntary waiver of your rights, that you understand

5    the consequences of pleading guilty, and there is factual

6    predicate and the Government has the proof to establish your

7    guilt.

8           All right.

9           I understand that Pretrial Services has done a

10   report, which I've reviewed, and I believe that there is a

11   potential suretor and monies that were put up.  This would

12   be a personal recognizance bond in the amount of $100,000,

13   and defendant has agreed to submit to Pretrial supervision

14   and report to Pretrial Services as directed.  She will

15   surrender any passport to Pretrial Services.  She'll not

16   obtain another one or engage in any international travel.

17   She shall not leave the areas except for travel to and from

18   court, Long Island, New York, New York City, and other

19   Florida and travel-between destinations.  She will not have

20   any contact with the individuals that have been provided,

21   and locations, to defense counsel.

22          Do you acknowledge that you will not have contact

23   with these persons?

24          MR. PERINI:  Your Honor, we have not gotten that

25   list yet, but we have talked about it, so I believe we all

*Proceedings*                                                              25

1    are on the same page.

2            MR. BAGNUOLA:  Yes, Your Honor.  The Government

3    will provide a list of individuals to defense counsel as to

4    whom those restrictions should apply.

5            THE COURT:  All right.  And you haven't done that

6    yet?

7            MR. BAGNUOLA:  We will after we recess these

8    proceedings, Your Honor.

9            If I may, before we move on entirely from

10   Ms. Marks's allocution, I would ask the Court just to put

11   the question to Ms. Marks to confirm that her plea is

12   voluntary and absent force, threats, and promises, other

13   than those contained in the plea agreement.

14           THE COURT:  I thought that was included, but I'll

15   do it again.

16           MR. BAGNUOLA:  Thank you, Your Honor.

17           THE COURT:  Ms. Marks, do you agree that your plea

18   is not forced, it's voluntary; no one has threatened you; no

19   one has said that you must plead guilty; and you understand

20   the waiver of all your rights?

21           THE DEFENDANT:  Yes, I do.

22           THE COURT:  All right.

23           MR. BAGNUOLA:  Thank you, Your Honor.

24           THE COURT:  You're welcome.

25           So going back to your terms of release, you'll

*Proceedings*                                                    26

1   maintain a residence that will be at a location approved by

2   Pretrial Services.  There's no curfew involved here.

3          And the $100,000 bond, is that going to be put up

4   by --

5          MR. PERINI:  Unsecured, Your Honor.

6          THE COURT:  Unsecured.  All right.

7          So that's on your promise.  If you don't return to

8   court, you can be charged with additional criminal charges,

9   and you certainly would not do well if you came back to the

10  Court.  I would issue a warrant for your arrest previously,

11  and that would have dire circumstances.

12         All right?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  A date for future.  Let me check with

15  Eric.

16         THE COURTROOM DEPUTY:  Counsel, can we do

17  April 12th at 1:30?

18         MR. BAGNUOLA:  That should be fine for the

19  Government.  Thank you.

20         MR. PERINI:  That's fine, Your Honor.

21         THE COURTROOM DEPUTY:  And sentencing memos will

22  be April 5th.

23         THE COURT:  Please make sure that you report to

24  Pretrial Services.

25         Unless there's something else, documents will be

*Proceedings*                                                    27

1  filed.

2           Thank you.

3           MR. PERINI:  Thank you, Your Honor.

4           MR. BAGNUOLA:  Thank you, Your Honor.

5           (Matter adjourned.)

6

7

8                    *       *       *       *       *

9

10

11  I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

12

13  /s/ Kristi Cruz
    _____

14      KRISTI CRUZ

15

16

17

18

19

20

21

22

23

24

25