

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/AXB/LAZ            *610 Federal Plaza*
F. #2022R01030         *Central Islip, New York 11722*

April 17, 2024

By ECF

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

         Re:    United States v. Devolder Santos
               Criminal Docket No. 23-197 (S-1) (JS)

Dear Judge Seybert:

        The government respectfully submits this letter in response to defendant George Anthony Devolder Santos's ("Santos") motion dated April 11, 2024, seeking: (1) a 30-day extension of the pre-trial motion schedule; and (2) to selectively disseminate to the public certain Confidential Discovery Materials disclosed pursuant to the protective order entered by the Court in this case. For the reasons that follow, the Court should deny the motion in its entirety.

      I.     The Defendant's Motion to Adjourn the Pre-Trial Motion Schedule

        In support of his request for an extension of the pre-trial motion schedule, Santos cites to two disclosures made by the government on October 27, 2023, and March 14, 2024 (the "Disclosures"), which contain summaries of statements made to the government by certain third parties. Santos argues that a 30-day extension of the pre-trial motion deadline is appropriate for two reasons. First, he contends that the Disclosures "will likely substantially impact the defense motions" he plans to file. Dkt. No. 65 at 1. Second, he claims to anticipate obtaining from the government additional records and materials related to the Disclosures. Dkt. No. 65 at 2. Neither of these arguments justifies the extension he seeks.

        As the Court is aware, on January 22, 2024, the parties jointly proposed a pre-trial motion schedule; based on the parties' agreement on the suitability of that schedule, the Court entered it on January 23, 2024. See Dkt. Nos. 58, 59. As the parties made clear at the time, this pre-trial motion schedule was the product of extensive negotiation and represented a significant concession from the government, which had initially sought a more accelerated schedule. See Dkt. No. 54 (containing the government's original proposed motion

deadline of January 19, 2024).  The government only made this concession to accommodate defense counsel's request, made on the record in open court at the previous status conference, for a lengthy time period to focus on plea negotiations (which defense counsel expressed optimism would be "fruitful"), review discovery, and contemplate pre-trial motions.  <u>See</u> Transcript of Dec. 12, 2023 Status Conference at 3:18-4:13, attached herein as Ex. A.

Following the court appearance on January 23, 2024, however, defense counsel failed to engage with the government regarding plea negotiations for more than two months.  Nor did defense counsel meaningfully engage with the government regarding the discovery process.  Indeed, it was not until approximately one week ago, on April 8, 2024—more than nine months after the government began voluntarily producing discovery; approximately six months after the superseding information was filed; and nearly three months after Santos sought a significantly delayed schedule purportedly to review discovery and explore a guilty plea—that defense counsel submitted to the government formal requests for discovery materials beyond records quoted in the indictment.  In other words, having failed to capitalize on the lengthy time period afforded to the parties between January 23, 2024, and the pre-trial motion deadline—to say nothing of the approximately ten-and-a-half months that elapsed since Santos's arrest—defense counsel now has requested a thirty-day adjournment, citing a basis that can only be described as pretextual and meritless.  The Court should deny it.

A.    <u>The Timing of the Disclosures Does Not Justify an Extension</u>

As this Court is aware, the government takes a broad view of its discovery obligations, including its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny, and thus generally discloses far more than is required under the law.[1]  Because "it is sometimes difficult to assess the materiality of evidence before trial," federal prosecutors prudentially "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."  Justice Manual ("JM") § 9-5.001(B)(1).  The government thus produces materials that fall well short of the stringent <u>Brady</u> materiality standard on a forward-looking basis "in an abundance of caution," as it did here.  Indeed, while arguably helpful to the defense in the broadest possible sense, the Disclosures that the government provided to Santos out of an abundance of caution were not "highly exculpatory."  Dkt. No. 65 at 1.  Rather, the Disclosures largely describe admissions made by third parties concerning their participation in criminal conduct or bad acts <u>with which the defendant is not charged</u>.  Thus, they fall well short of the materiality standard set forth in the relevant case law.  Nevertheless, consistent with the Justice Department's expansive view of its disclosure obligations, the government in this case has voluntarily disclosed the information in question and will continue to do so for information of similar nature, even though the Disclosures at the heart of Santos's instant request do nothing to "exonerate" him of the charged criminality.

---

[1]    "<u>Brady</u> does not . . . require the prosecution to disclose all exculpatory and impeachment material; it need disclose only material that, if suppressed, would deprive the defendant of a fair trial."  <u>United States v. Coppa</u>, 267 F.3d 132, 135 (2d Cir. 2001).

Dkt. No. 65 at 4.  Moreover, the content of these Disclosures will not necessarily be admitted at trial and the government does not concede their admissibility at this time.

That said, even assuming <u>arguendo</u> the Disclosures were materially exculpatory (they are not), Santos has had ample time to make use of the information before filing his motions, and he has not credibly claimed otherwise.  Indeed, one of the Disclosures Santos characterizes as "late" (Dkt. No. 65 at 1) was made by the government more than six months ago, and approximately three months before the parties jointly submitted the proposed pre-trial motion schedule to the Court.  Put plainly, at the time Santos agreed to the current pre-trial motion schedule, he was already aware of this Disclosure and thus cannot plausibly point to it as a basis for further delay that schedule.  The second Disclosure was made in mid-March 2024, approximately six weeks before the motion deadline and approximately six months before trial. In short, Santos has had more than sufficient opportunity to make effective use of the Disclosures either in motion practice or at trial.

Given that the first disclosure, on October 27, 2023, was made approximately 11 months prior to trial and the second disclosure, on March 14, 2024, was made approximately six months prior to trial, any implication from Santos that the government has somehow not complied with its obligations under <u>Brady</u> is absurd.  "<u>Brady</u> only requires that exculpatory material be produced sufficiently in advance of trial so that the defense has the opportunity to make effective use of that information."  <u>United States v. Persing</u>, No. 06 CR 815 (BMC), 2008 WL 11344620, at *4 (E.D.N.Y. May 5, 2008) (citation omitted).  Indeed, courts have not considered exculpatory evidence improperly "suppressed" within the meaning of <u>Brady</u> even when the government has disclosed the evidence immediately before or during trial.  <u>See</u> <u>United States v. Douglas</u>, 525 F.3d 225, 245–46 (2d Cir. 2008); <u>see also</u> <u>United States v. Barrera</u>, 950 F. Supp. 2d 461, 476 (E.D.N.Y. 2013) ("[I]t is the government's responsibility to determine what evidence is material and when such evidence should be disclosed in time for its effective use.") (internal quotation and citation omitted).

Applying these standards, it is wholly unclear how the timing of the Disclosures has impaired Santos's ability to make effective use of them, and his motion, unsurprisingly, identifies none.  In fact, in correspondence among the parties, the government invited Santos's attorneys, in writing, to identify any relevant legal authority supporting their position "that the government's prior disclosures [were] somehow insufficient under <u>Brady</u> or <u>Giglio</u>," among other things.  <u>See</u> Def. Mot. at Ex. C.  Rather than do so, Santos instead elected to file the instant motion which, over the course of four single-spaced pages, fails to cite any case, statute, or other legal authority favoring his position.  The motion should be denied on this basis alone.

B.    <u>An Extension is Not Necessary to Permit Supplemental Disclosures</u>

Santos also claims that a 30-day adjournment is necessary for the government "to supplement" the Disclosures and for defense counsel to "engag[e] with the government to secure the records, documents, and/or recordings" related to the Disclosures.  Dkt. No. 65 at 1–2.  This argument fails because, as the government has already advised Santos's attorneys,

it has far exceeded its disclosure obligations and no further supplementation of the Disclosures is required or appropriate at this time.

Here, the government has already disclosed to Santos – months before the start of trial – the names of potential witnesses with arguably favorable information to the defense, a disclosure that "alone has been held to satisfy Brady in this Circuit," and has "also described the nature of the exculpatory information possessed by each of these witnesses, further assisting [Santos's] ability to make effective use of it at trial." United States v. Mavashev, No. 08 CR 902 (DLI), 2010 WL 670083, at *3 (E.D.N.Y. Feb. 23, 2010) (finding that the government had satisfied its Brady obligations when it disclosed the identities of witnesses with potentially exculpatory information and one- to two-sentence summaries of that information); see also United States v. Alshahhi, No. 21 CR 371, 2022 WL 2239624, at *28 (E.D.N.Y. June 22, 2022); United States v. Fasciana, No. 01 CR 58, 2002 WL 31495995, at *2 (S.D.N.Y. Nov. 6, 2002); United States v. Jacques Dessange, Inc., No. 99 CR 1182, 2000 WL 280050, at *9 (S.D.N.Y. Mar. 14, 2000). The Disclosures here, which identified the relevant witnesses and certain statements attributed to them, fully complied with – and indeed, surpassed – the government's Brady obligations. To the extent that Santos seeks further reports and recordings of witnesses, "there is no pre-trial right to statements and reports of witnesses in the government's possession."[2] United States v. Raniere, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019). Again, in an effort to avoid needless litigation, the government invited Santos's attorneys to identify contrary authority favoring their position; they did not. Accordingly, the government's compliance with its disclosure obligations is, in fact, uncontroverted. And because supplementation is unjustified, Santos's unilateral request for it does not warrant adjournment of the pre-trial motion schedule.

The government further notes that despite defense counsel's representation to the contrary, a 30-day adjournment of the pre-trial motion schedule would disrupt, or at a minimum substantially complicate, the remainder of the pre-trial schedule entered by the Court on January 23, 2024. Under the amended schedule proposed by defense counsel, pre-trial motions would not be fully briefed until July 8, 2024, just two months prior to trial. This would leave the Court little time to resolve those pre-trial motions and the parties even less time to adjust their trial preparations following the Court's decision on these motions. In fact, the government raised this very concern at the status conference before the Court on December 12, 2023. See Ex. A at 8:16-9:1. Moreover, the parties' motions in limine are due on August 2, 2024, and the nature of those motions will, of course, be guided by the Court's decision on any pre-trial motions. A 30-day adjournment of the pre-trial motion schedule would unnecessarily compress and complicate a carefully set pre-trial schedule that this Court thoughtfully adopted based on the joint recommendation of the government and Santos's attorneys.

---

[2] Consistent with the Court's scheduling order, the government intends to disclose statements of potential witnesses included in reports and notes of interviews on or before the August 19, 2024 deadline for 18 U.S.C. § 3500 materials.

II.      <u>The Defendant's Motion to Publicly Disseminate the Disclosures</u>

On June 22, 2023, upon agreement of the parties, this Court entered a protective order (the "Protective Order") pursuant to Federal Rule of Criminal Procedure 16(d) that provided, in relevant part:

> <u>All</u> material and information disclosed or produced by the government to the defendant (the "Defendant") and the Defendant's counsel ("Defense counsel") in the above-captioned case (hereinafter, the "Confidential Discovery Materials"), including, but not limited to material and information disclosed or produced pursuant to Rule 16 of the Federal Rules of Criminal Procedure; 18 U.S.C. § 3500; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); or <u>Giglio v. United States</u>, 405 U.S. 150 (1972), shall be governed by this protective order (the "Protective Order").
>
> . . .
>
> Confidential Discovery Materials . . . may be used by the Defendant, Defense Counsel and Defense Staff . . . only for the purposes of defending against the charges in the above-captioned case[.]
>
> . . .
>
> Except as otherwise provided in this Protective Order, any and all Confidential Discovery Materials disclosed or produced to the Defendant and/or Defense Counsel by the government . . . <u>shall not</u> be further disclosed, disseminated, or discussed by the Defendant, Defense Counsel, or Defense Staff to, or with, any individuals, organizations, or other entities.
>
> <u>None</u> of the Confidential Discovery Material nor any copies, notes, transcripts, documents, or other information and materials derived or prepared from the Confidential Discovery Materials shall be disseminated to, or discussed with, the media <u>in any form</u>.

Dkt. No. 29. Notwithstanding the clear and unequivocal terms of this stipulated agreement, Santos now seeks authorization to publicly disseminate, presumably to the media, select portions of the Disclosures.

As an initial matter, it is blackletter law in the Second Circuit that materials exchanged in discovery, such as the Disclosures here, are not "judicial documents" subject to either a First Amendment or common law presumptive right of public access.  <u>See</u> <u>United States v. Longueuil</u>, 567 F. App'x 13, 15 (2d Cir. 2014) (Summary Order) ("'[D]ocuments that play no role in the performance of Article III functions, <u>such as those passed between the</u>

parties in discovery, lie entirely beyond the presumption [of public access's] reach . . .")
(emphasis in original; quoting United States v. Amodeo, 71 F.3d 1044 1050 (2d Cir. 1995));
United States v. Kerik, No. 07 CR 1027, 2014 WL 12710346, at *1 (S.D.N.Y. July 23, 2014)
("There is no presumptive right of public access to documents exchanged by parties during
discovery and not considered by the Court."); United States v. Smith, 985 F. Supp. 2d 506,
519 (S.D.N.Y. 2013) ("[E]xperience and logic show that there is no right of access to discovery
materials."); see also United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986)
("Discovery, whether civil or criminal, is essentially a private process because the litigants and
the courts assume that the sole purpose of discovery is to assist trial preparation.  That is why
parties regularly agree, and courts often order, that discovery information will remain
private.").  To the contrary, there is "a general and strong presumption against access to
documents sealed under protective order when there was reasonable reliance upon such an
order."  S.E.C. v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001) (emphasis in original).
"This presumption can only be overcome if there is a showing of improvidence in the grant of
[the] order or some extraordinary circumstance or compelling need."  Kerik, 2014 WL
12710346, at *1 (citing TheStreet.com, 273 F.3d at 229) (internal quotation marks omitted).
As Santos concedes, the Disclosures at issue here were provided by the government during the
discovery process and in reasonable reliance upon the Protective Order.  There is therefore no
presumptive right of public access to that information under either common law or the First
Amendment, but instead a strong presumption against such access.  See Seattle Times Co. v.
Rhinehart, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted,
information are not a restriction on a traditionally public source of information.").  Santos falls
woefully short of overcoming that presumption.

        In that regard, Santos has not argued that the Protective Order was
improvidently granted, nor can he credibly do so since "he expressly agreed to be bound by"
its terms.  Kerik, 2014 WL 12710346, at *2.  There is no dispute that the parties negotiated,
agreed to, and jointly submitted the Protective Order for the Court's approval.  In his motion,
Santos cites no extraordinary circumstance or compelling need justifying his change of heart,
other than an apparently newly formed belief that "there is a compelling public interest in
disclosing information that may exonerate a candidate accused of election-related
misconduct." Dkt. No. 65 at 4.  Again, setting aside Santos's self-serving mischaracterization
of the Disclosures as "exonerating" him in any way, his attempt to selectively weaponize
discovery materials to influence public opinion on this matter—including prospective jurors—
is entirely inappropriate.  It is a transparent effort to litigate this matter in the press rather than
in the courtroom.  As the Second Circuit has noted, the purpose of discovery is "'to facilitate
orderly preparation for trial, not to educate or titillate the public.'"  TheStreet.com, 273 F.3d
at 233 (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982)).  "'Defendant[s] [have] no
constitutional right to use the media to influence public opinion concerning [t]his case so as to
gain an advantage at trial.'"  Smith, 985 F. Supp. 2d at 540 (alterations in original) (quoting
United States v. Lindh, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002)).  This is because "[t]he
theory of our system is that the conclusions to be reached in a case will be induced only by
evidence and argument in open court, and not by any outside influence, whether of private talk
or public print."  Patterson v. Colorado, 205 U.S. 454, 462 (1907); see also Bridges v.
California, 314 U.S. 252, 271 (1941) ("Legal trials are not like elections, to be won through

the use of the meeting-hall, the radio, and the newspaper."); United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings and . . . emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

Indeed, it is for the very purpose of assuring fair trials that this Court's local rules prohibit precisely what defense counsel seeks to do here, namely, publicize witness statements disclosed during discovery. Specifically, Local Criminal Rule 23.1(a) prohibits lawyers from:

> [R]eleas[ing] or authoriz[ing] the release of non-public information . . . which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

Local Criminal Rule 23.1(d) provides that statements concerning "[t]he identity, testimony or credibility of prospective witnesses" "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."

In direct contravention of Local Criminal Rule 23.1(d), Santos seeks to disclose the testimony of prospective witnesses in an inappropriate effort to influence public sentiment.[3] Courts in this circuit have frequently expressed concern regarding efforts by litigants to disclose discovery materials to the media and thereby jeopardize the fairness of trial. See, e.g., Smith, 985 F. Supp. 2d at 520. Further, "the risk of prejudice to the fair administration of justice from a public-relations battle is heightened in high-profile cases," such as this one. Id. at 541 (citing cases). This Court should not condone Santos's effort to litigate this case in the media. See Lindh, 198 F. Supp. 2d at 743 ("[I]t is a lamentable fact of life that parties in newsworthy trials may attempt to use the media precisely for this purpose" of influencing public opinion by disclosing discovery materials). As the government previously advised Santos's attorneys, it would be equally inappropriate for the government to publicly disseminate to the media and elsewhere the numerous statements it has obtained from witnesses, including some of the very same witnesses cited in the Disclosures, incriminating

---

[3]    Santos attempts to sidestep the applicability of the presumption of substantial prejudice set forth in Local Criminal Rule 23.1(d)(4) by claiming that his planned dissemination would amount only to a "brief description of the nature of the defense" as addressed in Local Criminal Rule 23.1(e)(7), (Dkt. No. 65 at 3), despite the government's prior effort to inform Santos that Local Criminal Rule 23.1(d)(4) was the relevant provision, see Def. Mot., Ex. F.  Rather than heed that information, counsel simply recycled their incorrect legal citation in the instant motion, continuing their efforts to fit a square peg through a round hole.

Santos in the crimes charged; defense counsel would surely object to such behavior, but nonetheless seek to do so here.[4]  The Court should not sanction such one-sided gamesmanship.

Without citing a single legal authority at any point in the motion, Santos claims that permitting the public dissemination of these materials is "necessary to safeguard his First Amendment right to offer insight into his defense without jeopardizing the fair administration of justice." Dkt. No. 65 at 3.  As an initial matter, Santos has been uninhibited in exercising his First Amendment rights, including in making statements to the press about this matter, and has repeatedly outlined the nature of his defense, including during an impromptu press conference he convened outside the courthouse on the day he was arrested.  See CBS New York, George Santos news conference after court appearance, (May 10, 2023), https://www.youtube.com/watch?v=AIb-T1ZG_SU (stating, regarding the case as a whole, that "the reality is it's a witch hunt," and, regarding the crimes alleged in Counts Nine through Eleven of the original indictment, that "during the pandemic, it wasn't very clear – I don't understand where the government is getting their information but I will present my facts . . . my employment was changed during the time, I don't understand where the government's coming from") (last visited April 15, 2024).

In addition, during a nationally broadcast interview with CNN on November 5, 2023, Santos made lengthy comments regarding the charges alleged in the Superseding Indictment and his defenses on each of those charges.  See CNN, CNN reporter confronts George Santos about his lies (Nov. 5, 2023) https://www.youtube.com/watch?v=sdfaG6QY9pM (last visited April 15, 2024).  Specifically:

- Regarding the Party Program Scheme alleged in the Superseding Indictment: "I never, ever submitted or even looked at a single [Federal Election Commission ("FEC")] report . . .  As far as all the allegations, remember how a campaign works.  I'm a candidate.  Candidates do not handle money. Candidates do not handle finances.  Candidates do not handle filings.  I don't even know what the FEC filing system looks like."

---

[4]        Santos also suggests that he should be able to release these statements to the public as a sort of counter to the "excoriating allegations" in the Superseding Indictment.  See Dkt. No. 65 at 4.  An indictment, however, is not an extrajudicial statement: it is a finding of probable cause by the grand jury.  Indeed, such a finding is guaranteed by the Fifth Amendment.  And the press releases issued by the government following the indictments fit within Local Criminal Rule 23.1(e)(3)'s presumption against interference with a fair trial or prejudice to the due administration of justice for statements regarding the "nature, substance or text of the charge, including a brief description of the offense charged."  See, e.g., United States v. Woodberry, 546 F. Supp. 3d 180, 186 (E.D.N.Y. 2021).  Moreover, Santos's complaints about the detailed allegations in the Superseding Indictment are at odds with his request for a bill of particulars, which contends (without support) that the Superseding Indictment was insufficiently detailed.  See Def. Mot., Ex. B at 4–5.

- Regarding the allegations of a non-existent $500,000 loan fraudulently reported to the Federal Election Commission alleged in paragraphs 32 through 38 of the Superseding Indictment: "Oh, I made the $500,000 loan . . . I can guarantee you that I made the financial loans to my campaign that are on the record."

- Regarding the plea allocution of co-defendant Nancy Marks, which directly implicated Santos: "People will say whatever they have to say. Cut whatever deal they have to cut in order to save their hide. And this isn't surprising."

- Regarding the Credit Card Fraud Scheme alleged in the Superseding Indictment: "I didn't even handle donations. A lot of that happened in our campaign and whenever people would say, 'Oh, I got charged again,' we would refund them. It's on the report . . . I can say I did not handle donations in my campaign."

- Regarding the charges set forth in Counts Nineteen through Twenty-One of the Superseding Indictment: "I'm saying that I did, in my defense, what I think I was qualified for. Now, let's make this very clear. In any other circumstance, a person that goes and takes a[n] unemployment check and then God, God willing, oh no, oh you actually didn't qualify you, you quit. You were not terminated. So you didn't qualify for benefits. You don't indict that person. You know what? Every single time it happens, they go ahead and deduct it from your taxes. They, they put a lien on you. Oh, you can't take unemployment benefits. Or, or every year, they'll just chip away at it slowly. I got indicted . . . I'm just saying there's people out there who have gone through this process of over taking a check or two or whatever the case is and then just having to pay it back. But nobody gets criminally indicted. It's crazy."

- Regarding the charges set forth in Counts Twenty-Two and Twenty-Three of the Superseding Indictment: "Were there mistakes made on those forms? Now, I know there were. Was I, were they malicious? No. And I'm a new candidate. And I'm sorry that, like, mistakes were made. But it's another, here's another thing. Every time somebody suspects there's a mistake on your Ethics Report, you know what happens? The Ethics Committee reaches out and says, 'Hey, this looks funky.' Guess what happened? That never happened . . . I didn't understand the forms. That's just plain and simple. [I filled out those forms] with some help. But most, like, most of them, yes."

In light of Santos's extensive statements to the media regarding the charges alleged in the Superseding Indictment, any argument that public dissemination of the Disclosures is

9

"necessary to safeguard his First Amendment right to offer brief insight into his defense" strains credulity.  Dkt. No. 65 at 4.

Moreover, the Court should deny the motion on the ground that Santos's selective dissemination of witness statements would jeopardize important law enforcement interests and the privacy interests of third parties.  Indeed, Santos's proposed course of conduct threatens to expose private individuals to undue public scrutiny and chill cooperation with law enforcement investigations.  Redacting the names of the witnesses is not a viable alternative, since the nature and context of the statements would likely make clear the identities of the witnesses.  Thus, because public dissemination of the Disclosures would reveal the identity of third-party witnesses and excerpted summaries of their statements, the damage to law enforcement interests and privacy interests here would be significant and severalfold.  First, disclosure would unnecessarily expose those witnesses to months of public scrutiny leading up to trial and invade their privacy, deterring their willingness to meet with law enforcement investigators in the future.  Second, because there is no assurance that these witnesses will testify at trial, such dissemination would expose the public, including potential jurors, to potentially inadmissible evidence, thereby jeopardizing the fairness of trial.  Third, dissemination would chill the cooperation of witnesses with the government, not only for the three witnesses Santos targets, but also for other witnesses in this case, and for witnesses in other investigations involving public and political figures.[5]  Indeed, as the Second Circuit has recognized, "[o]fficials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality.  If that confidentiality cannot be assured, cooperation will not be forthcoming."  Amodeo, 71 F.3d at 1051; Kerik, 2014 WL 12710346, at *2 (denying request to permit public access to documents that "might reveal investigatory tactics and might also discourage potential cooperators in ongoing or future Government investigations").

In short, Santos's request to de-designate is a transparent effort to litigate this case in the media, not in the courtroom, and to improperly influence both the jury pool and potential trial witnesses.  The Court should not condone such a tactic.

---

[5]     Santos's decision to publicly file his application and characterize statements of potential witnesses therein itself may have a troubling and chilling effect on the cooperation of witnesses in this matter, as it publicly broadcasts a message that the confidentiality of witnesses is at risk, even if those witnesses never testify.

III.       Conclusion

For all these reasons, the Court should deny Santos's motion, keep the pre-trial motion schedule intact, and enforce the Protective Order as the parties and the Court jointly intended it.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/
Ryan C. Harris
Anthony Bagnuola
Laura Zuckerwise
Assistant U.S. Attorneys

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

By:      /s/
Jacob R. Steiner
John P. Taddei
Trial Attorneys

cc:    Defense Counsel (by ECF)
       Clerk of the Court (JS) (by ECF)