UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **23-197 (S-1) (JS) (AYS)** |
| -v- | |
| GEORGE ANTHONY DEVOLDER SANTOS, <br> Also known as "George Santos" | |
| *Defendant*. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S PRETRIAL OMNIBUS MOTIONS

**JOSEPH W. MURRAY, ESQ.**
185 Great Neck Road, Ste. 461
Great Neck, New York 11021
(646) 838 – 1702
joe@jmurray-law.com

**MANCILLA & FANTONE, LLP**
Andrew Mancilla, Esq.
Robert Fantone, Esq.
260 Madison Avenue, 22nd Floor
New York, New York 10016
P (646) 225-6686
F (646) 655-0269
E andrew@law-mf.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. iv

PRELIMINARY STATEMENT ........................................................................ 2

STATEMENT OF FACTS ................................................................................. 4

DISCUSSION ................................................................................................... 9

I.   COUNTS 6 AND 10 CHARGING AGGRAVATED IDENTITY THEFT
     MUST BE DISMISSED PURSUANT TO *DUBIN V. UNITED STATES*,
     143 S. CT. 1557 (2023) ...................................................................... 9

     A. Count 6 Must Be Dismissed Because The Use of The Contributors'
        Names Was Not At The "Crux" of the Alleged Fraud ..................... 11

     B. Count 10 Must be Dismissed Because Over-Charging Does Not
        Constitute Aggravated Identity Theft And Santos Is Not Accused Of
        Improperly Transferring His Donors' Credit Cards ........................ 14

II.  ALTERNATIVELY COUNTS 6 AND 10 MUST BE DISMISSED
     BECAUSE §1028A IS UNCONSTITUTIONALLY VAGUE ON ITS
     FACE AND AS APPLIED TO THE ALLEGATIONS IN COUNTS 6
     AND 10 ................................................................................................ 20

     A. Section 1028A Is Unconstitutionally Vague On Its Face .................. 20

     B.  Section 1028A is Unconstitutionally Vague As Applied To Counts 6
         and 10 ............................................................................................. 21

III. MOTION TO DISMISS COUNT 10 AS MULTIPLICITOUS ............... 24

IV.  MOTION TO DISMISS COUNT 19 AS DUPLICITOUS ....................... 27

V.   MOTION TO COMPEL A BILL OF PARTICULARS ............................ 32

     A. Legal Standard ................................................................................. 33

     B. The Following Particulars Are Necessary To Provide Adequate Notice To
        the Defense And To Properly Prepare For Trial And Prevent Surprise ........... 33

        i.  The Identification of Allegedly False Statements Related to Counts 2-
            8 ................................................................................................ 33

   ii.   **Identification of Victims, Dates, and Amounts Related to Access Device Fraud and Aggravated Identity Theft Charges Alleged in Counts 9 and 10** .................................................................**36**

   iii.  **Identification of the Transactions And Additional Entities Involved In Counts 9 And 10** ...........................................................**39**

**VI.**   **MOTION TO COMPEL PRODUCTION AND DISCLOSURE UNDER *BRADY/GIGLIO*** ...............................................................**40**

**VII.**  **THE COURT SHOULD STRIKE PREJUDICIAL SURPLUSAGE FROM THE SUPERSEDING INDICTMENT** .......................................**47**

**VIII.** **MOTION TO PRESERVE** ...............................................................**50**

**IX.**   **RESERVATION OF RIGHTS** ........................................................**51**

**CONCLUSION** ................................................................................**52**

## **TABLE OF AUTHORITIES**

**Cases**

*Blockburger v. United States*,
　284 U.S. 299, 304 (1932) ....................................................................... 24, 25

*Brady v. Maryland*,
　373 U.S. 83, 83 S. Ct. 1194 (1963) ...................................................... 40

*City of Chicago v. Morales*,
　527 U.S. 41 (1999) .................................................................................. 24

*Dubin v. United States,*
　143 S. Ct. 1557 (2023), ................................................................... *passim*

*Flores-Figueroa v. United States*,
　556 U.S. 646 (2009) .......................................................................... 17, 26

*Garrett v. United States*,
　471 U.S. 773, 778-779 (1988) ............................................................. 24

*Giglio v. United States*,
　405 U.S. 150, 92 S. Ct. 763 (1972) .................................................. 40, 44

*Johnson v. United States*,
　576 U.S. 591 (2015) ................................................................... 20, 21, 24

*Kolender v. Lawson*,
　461 U.S. 352 (1983) ................................................................................ 20

*Kyles v. Whitley*,
　514 U.S. 419, 115 S. Ct. 1555 (1995) ................................................. 40

*Leka v. Portuondo*,
　257 F.3d 89 (2d Cir. 2001) .................................................................... 41

*Rubin v. Garvin*,
　544 F.3d 461 (2d Cir. 2008) .................................................................. 21

*Skilling v. United States*,
　561 U.S. 358 (2010) ................................................................................ 21

*United States v Collins*,
　409 F Supp 3d 228 (SDNY 2019) ........................................................ 44

*United States v Marinello*,
　2012 US Dist LEXIS 93902 (WDNY 2012) ........................................ 50

*United States v Schock*,
　No. 16-CR-30061, 2017 US Dist LEXIS 174830 (CD Ill 2017) ......... 28, 31

*United States v. Alexander*,
　No. 5:14-CR-0453 (GTS), 2016 U.S. Dist. LEXIS 192710 (N.D.N.Y. 2016) .......... 26

*United States v. Anderson*,
　36 F. Supp. 2d 1264 (D. Kan. 1998) .................................................... 47

*United States v. Bagley*,
　473 U.S. 667, 105 S. Ct. 3375 (1985) ................................................. 40

*United States v. Barnes,*
    158 F.3d 662 (2d Cir. 1998))..............................................................................33

*United States v. Bessigano,*
    No. 2:08 CR 110, 2008 U.S. Dist. LEXIS 90148 (N.D. Ind. 2008).......................28

*United States v. Bin Laden,*
    92 F. Supp. 2d 225 (S.D.N.Y. 2000)..................................................................37

*United States v. Binday,*
    908 F. Supp. 2d 485 (S.D.N.Y. 2012)................................................................41

*United States v. Bonilla,*
    579 F.3d 1233 (11th Cir. 2009)..........................................................................26

*United States v. Bortnovsky,*
    820 F.2d 572 (2d Cir.1987)................................................................................35

*United States v. Brighton Building & Maintenance Co.,*
    435 F. Supp. 222 (N.D. Ill. 1977) ....................................................................50

*United States v. Coppa,*
    267 F.3d 132 (2d Cir. 2001)...............................................................................40

*United States v. Croft,*
    87 F.4th 644 (5th Cir. 2023)...............................................................................13

*United States v. Davidoff,*
    845 F.2d 1151 (2d Cir. 1988).............................................................................37

*United States v. Davis,*
    471 F.3d 783 (7th Cir. 2006) ......................................................................28, 32

*United States v. DeFabritus,*
    605 F. Supp. 1538 (S.D.N.Y. 1985)..................................................................50

*United States v. DePalma,*
    461 F. Supp. 778 (S.D.N.Y. 1978).....................................................................48

*United States v. Desimone,*
    No. 94-CR-130, 1994 U.S. Dist. LEXIS 14493 (S.D.N.Y. 1994) (McKenna, DJ) .................37

*United States v. Duclos,*
    No. 22-271-cr, 2023 U.S. App. LEXIS 14243 (2nd Cir. 2023) ..............................27

*United States v. Freeman,*
    619 F.2d 1112 (5th Cir. 1980)............................................................................50

*United States v. Girard,*
    601 F.2d 69 (2d Cir. 1979), *cert. denied*, 444 U.S. 871 (1979). ..............................30

*United States v. Hatfield,*
    No. 06-CR-0550 (JS), 2009 US Dist LEXIS 63108 (EDNY July 22, 2009)...........................27

*United States v. Henrikson,*
    191 F. Supp. 3d 999 (D.S.D. 2016)....................................................................30

*United States v. Josephberg,*

459 F.3d 350 (2d Cir. 2006) ................................................................................... 26

United States v. Kaplan,
No. 02-CR-883, 2003 U.S. Dist. LEXIS 21825 (S.D.N.Y. 2003) (Batts, DJ) ......................... 33

United States v. Komolafe,
246 Fed. Appx. 806 (3d Cir. 2007). ....................................................................... 26

United States v. Lizza,
No. 19-CR-0548(JS)(AYS), 2023 U.S. Dist. LEXIS 17890 (E.D.N.Y. 2023) ......................... 33

United States v. Margiotta,
646 F.2d 729 (2d Cir. 1981) ........................................................................ 28, 31

United States v. McCallister,
No. 00-CR-482, 2000 U.S. Dist. LEXIS 16955 (S.D.N.Y. 2000) (McKenna, DJ) ................. 37

United States v. Mohamed,
148 F. Supp. 3d 232 (E.D.N.Y. 2015)....................................................................... 46

United States v. Nachamie,
91 F. Supp. 2d 565 (S.D.N.Y. 2000) ....................................................................... 39

United States v. Napout,
963 F.3d 163 (2d Cir. 2020) .................................................................................. 21

United States v. Ordaz-Gallardo,
520 F. Supp. 2d 516 (S.D.N.Y. 2007)....................................................................... 46

United States v. Perez,
222 F. Supp. 2d 164 (D. Conn. 2002) ..................................................................... 41

United States v. Portanova,
961 F.3d 252 (3d Cir. 2020) ................................................................................. 21

United States v. Rajaratnam,
No. 09-CR-1184, 2010 U.S. Dist. LEXIS 70385 (S.D.N.Y. 2010) (Holwell, DJ) ................. 37

United States v. Rigas,
605 F.3d 194 (3d Cir. 2010) ................................................................................. 28

United States v. Sattar,
272 F. Supp. 2d 348 (S.D.N.Y. 2003) ..................................................................... 21

United States v. Savin,
00 Cr. 45 (RWS), 2001 U.S. Dist. LEXIS 2445, 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) . 38

United States v. Scarpa,
913 F.2d 993 (2d Cir. 1990) ................................................................................. 48

United States v. Scully,
108 F.Supp.3d 59 (E.D.N.Y. 2015)......................................................................... 35

United States v. Silver,
117 F. Supp. 3d 461 (S.D.N.Y. 2015)....................................................................... 38

United States v. Tournant,
No. 22-CR-276, 2023 U.S. Dist. LEXIS 222329 (S.D.N.Y. 2023) (Swain, DJ) ..................... 35

United States v. Triumph Cap. Group, Inc.,

544 F.3d 149 (2d Cir. 2008) ......................................................................... 47
*United States v. Underwood,*
    2005 U.S. Dist. LEXIS 6810 (S.D.N.Y. 2005) ...................................... 41
*United States v. Victor Teicher & Co.*, L.P.,
    726 F. Supp. 1424 (S.D.N.Y. 1989) ........................................................ 48
*United States v. White,*
    296 Fed. Appx. 483 (6th Cir. 2008) ........................................................ 26
*United States v. Yashar*
    166 F.3d 873 (7th Cir. 1999); ................................................................. 30
*United States v. Yusuf Abdur-Rahman,*
    No. 10-4814-cr, 2013 U.S. App. LEXIS 4967 (2nd Cir. 2013) .............. 25
*United States v. Zhong,*
    No. 16-CR-614, 2017 U.S. Dist. LEXIS 175357 (E.D.N.Y. 2017) ......... 35

**Statutes**
18 USC §1028A .......................................................................................... *passim*
18 USC §1001(a)(2) ......................................................................................... 11
18 USC §1343 .................................................................................................. 11
18 USC §641 ................................................................................... 3, 28, 30, 31
Fed. R. Crim. P. 12(b)(3)(B)(ii) ..................................................................... 27
Fed. R. Crim. P. 12(b)(3)(B)(v) ....................................................................... 9
Fed. R. Crim. P.  7(c) ..................................................................................... 32
Fed. R. Crim. P.  7(f) ...................................................................................... 33

The Defendant George Anthony Devolder Santos ("Santos") respectfully submits this memorandum of law, and corresponding Declaration of Andrew Mancilla dated May 3, 2024, in support of Santos' motions to (1) dismiss the aggravated identity theft charges (Counts 6 and 10) of the Superseding Indictment ("S1 Indictment") for failure to state an offense; (2) dismiss the aggravated identity theft charges (Counts 6 and 10) of the S1 Indictment because 18 U.S.C. § 1028A is unconstitutionally vague on its face and unconstitutionally vague as applied to these allegations; (3) dismiss Count 10 on the S1 Indictment on grounds of multiplicity; (4) dismiss count 19 of the S1 Indictment on grounds of duplicity; (5) compel the government to provide a bill of particulars; (6) compelling the government to provide Brady/Giglio material; (7) strike the prejudicial and irrelevant surplusage from the S1 Indictment; (8) compel the government to preserve; (9) permitting the defense to make further motions if the circumstances require; and (10) granting any and all further relief the Court deems just and proper.

## PRELIMINARY STATEMENT

Santos' first and primary application is to dismiss Counts 6 and 10 of the S1 Indictment charging aggravated identity theft (Counts 6 and 10) on the grounds that the government's theory does not fall within 18 USC §1028A as narrowed by the United States Supreme Court in *Dubin v. United States,* 143 S. Ct. 1557 (2023), which rendered by unanimous decision published on June 8, 2023[1].

The Court must dismiss Count 6 because Santos' alleged fraudulent use of names of those known to him on his January 2021 FEC filing was not at the **crux** of the fraud alleged in the S1 Indictment.  Similarly, the Court must dismiss Count 10 because Santos' alleged

---

[1] Exhibit "A" is a true and accurate copy of the transcript of the oral argument on February 27, 2023, in *Dubin v. United States,* 143 S. Ct. 1557 (2023).

unauthorized overcharging of contributors' credit cards is now excluded from Section 1028A under *Dubin*.

Santos' second application herein is to dismiss Counts 6 and 10 because Section 1028A is unconstitutionally vague, both on its face and as applied to the facts herein. The statute does not provide a reasonable person fair notice of what conduct falls within its scope, and particularly as applied to the instant allegations, Section 1028A is impermissibly vague.

Santos' third application requests dismissal of Count 10 as multiplicitious to Count 9. The Counts are multiplictious because neither Count requires proof of a fact the other does not, and the Counts therefore violate Santos' constitutional protection against Double Jeopardy.

Santos fourth application requests dismissal of Count 19, charging theft of government funds in violation of 18 USC §641, on the grounds of duplicity. Dismissal is appropriate because, as plead, Count 19 charges an unidentified number of individual transactions over two distinct time periods and jury instructions would not suffice to cure the ambiguity nor the insufficient notice to Santos.

Santos' fifth application is to compel the government to provide a bill of particulars. Specifically, Santos is requesting an Order directing the government to (i) identify allegedly fraudulent statements encompassed by the "including but not limited to" language in the S1 Indictment, (ii) disclose the identity of alleged unnamed victims described in the S1 Indictment and to identify which transactions the government alleges to be fraudulent, and (iii) to specify which of Santos' organizations processed the allegedly fraudulent transactions. The Court must grant this application because Santos cannot discern this information from the discovery, which is extremely voluminous, and such information is necessary to adequately prepare his defense.

Santos' sixth application is to compel the government to provide *Brady/Giglio* material, and specifically, the notes and 302s, pertaining to the government's *Brady/Giglio* (or any other record memorializing the witness interviews) of the interviews with witnesses identified by the government who have provided *Brady/Giglio* statements to the government. As the Court will appreciate upon reading the instant motion, while this request was made within a compressed timeframe, the evidence requested very much impacts the arguments advanced in our motion to dismiss the aggravated identity theft counts. In addition, we submit that full disclosure of all underlying material is necessary under *Brady* to ensure the defense may utilize this information in our pretrial investigation, and so that the Court may rule on the Defendant's first application.

Santos' seventh application is to strike prejudicial surplusage from the S1 Indictment must be granted because language such as "at least", "among others", and "including but not limited to" adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury.

Finally, we respectfully reserve the right to supplement these pretrial motions or file additional motions if the circumstances so require.

## STATEMENT OF FACTS

Santos was elected to the U.S. House of Representatives ("House") in New York's 3rd congressional district in 2022. The instant case arose immediately following Santos' election to Congress. Upon information and belief, immediately following his election to Congress, the government began investigating Santos, sending out dozens of subpoenas and contacting multiple people who were involved in his campaign for congress.

Santos was sworn into Congress in January 2023 and began serving as a member of the House. Only five months later, on May 9, 2023, Santos was charged by indictment with thirteen (13) counts accusing him of conduct including fraud related to his campaign, making false statements on an unemployment application he filed in 2020 during Covid-19, and making false statements on forms that he filed with the House Ethics Committee in 2020 and 2022 (ECF No. 1). Santos was arraigned on these charges the following day, May 10, 2023, before the Honorable Magistrate Judge Anne Y. Shields, and released on bond (ECF No. 9).

On October 10, 2023, the government filed a the S1 Indictment charging Santos with twenty-three (23) counts related to five (5) alleged schemes: (1) a scheme to obtain the support from the National Party Committee #1 by making false statements to the Federal Election Commission ("FEC") (the "Party Program Scheme"); (2) a scheme to use credit card information from campaign contributors to make unauthorized charges ("Credit Card Fraud Scheme"); (3) a scheme to fraudulently solicit political contributions through "Company #1" (the "Company #1 Fraud Scheme"); (4) a scheme to fraudulently obtain unemployment benefits made available through the COVID-19 CARES Act (the "Employment-Related Fraud Scheme"); and (5) providing false statements in his House Disclosure Reports (the "House Disclosure Report Scheme") (ECF No. 50).

The alleged Party Program Scheme is premised on the theory that Santos and the treasurer of his congressional campaign committee, Nancy Marks, conspired to submit false reports in the campaign's 2021 year-end report to the FEC and the April 2022 quarterly report to the FEC (S1 Ind. at ¶16). With respect to the 2021 year-end report, which Marks filed on January 31, 2022, the S1 Indictment alleges that Santos and Marks falsely reported contributions by their family members that were never actually made (Id. at ¶¶22-31). With respect to the

April 2022 quarterly report to the FEC, the S1 Indictment alleges that Santos and Marks falsely reported a personal loan from Santos to his campaign in the amount of $500,000 that was not made (*Id*. at ¶¶32-42). The S1 Indictment alleges that Marks and Santos submitted these false reports to the FEC to inflate the committee's fundraising numbers so that they would qualify the campaign for support from the National Party Committee #1 (*Id*. at ¶¶16, 29-31, 39-42).

The alleged Credit Card Fraud Scheme is premised on the theory that Santos used credit card information of individuals who donated to his campaign to make additional charges to their cards without their authorization (*Id*. at ¶¶17, 43-48).

The alleged Company #1 Fraud Scheme is premised on the theory that Santos used "Person #1" and "Company #1" to solicit campaign contributions from two contributors ("Contributors #13 and #14") by falsely representing that "Company #1" was a 501(c)(4) and that such contributions would be spent, at least in part, on ads supporting the campaign (*Id.* at ¶¶18, 49-56). The S1 Indictment alleges that Santos' false representations induced Contributors #13 and #14 to contribute $50,000 to Santos, which the S1 Indictment alleges Santos spent for personal purposes (*Id*).

The Employment-Related Fraud Scheme alleges that in 2020 and early 2021 Santos obtained approximately $24,744 in unemployment benefits issued as Covid-19 pandemic relief under the CARES Act by falsely representing to the NYS Department of Labor (the "NYS DOL") that he was unemployed (*Id.* at ¶¶57-59).

The House Disclosure Report Scheme alleges that Santos made false statements concerning his finances in his 2020 and 2022 House Disclosure Report (*Id.* at ¶¶60-65).

The aforementioned purported schemes are charged as Counts One to Twenty Three as follows:

| Party Program Scheme | **COUNT 1: Conspiracy (18 USC §371)** | |
|---|---|---|
| | 2021 year-end report (¶27) | **COUNT 2: Wire Fraud (18 USC §1343)** **COUNT 4: False Statements (18 USC §1001(a)(2))** **COUNT 5: Falsification of a Document (18 USC §1519)** **COUNT 6: Aggravated Identity Theft (18 USC §1028A(a)(1))** |
| | April 2022 quarterly report (¶38) | **COUNT 3: Wire Fraud (18 USC §1343)** **COUNT 7: False Statements (18 USC §1001(a)(2))** **COUNT 8: Falsification of a Document (18 USC §1519)** |
| Credit Card Fraud Scheme | **COUNT 9: Access Device Fraud (18 USC §1029(a)(5))** | |
| | **COUNT 10: Aggravated Identity Theft (18 USC §1028A(a)(1))** | |
| Company #1 Fraud Scheme | CONTRIBUTOR #13 | **COUNT 11: Wire Fraud (18 USC §1343):** October 4, 2022 Email **COUNT 13: Wire Fraud (18 USC §1343):** October 20, 2022 Email **COUNT 15: Wire Fraud (18 USC §1343):** October 25, 2022 Text message **COUNT 17 (Unlawful Money Transactions over $10,000 (18 USC §1957(a)):** October 26, 2022, transfer of approximately $25,000 **COUNT 18 (Unlawful Money Transactions over $10,000 (18 USC §1957(a)):** October 26, 2022, transfer of approximately $24,000 |
| | CONTRIBUTOR #14 | **COUNT 12: Wire Fraud (18 USC §1343):** October 12, 2022 Email **COUNT 14: Wire Fraud (18 USC §1343):** October 21, 2022 Text **COUNT 16: Unlawful Money Transactions over $10,000 (18 USC §1957(a)):** October 21, 2022 transfer of approximately $25,000 |
| Employment-Related Fraudulent Scheme | **COUNT 19: Theft of Public Money (18 USC §641)** | |
| | **COUNT 20: Wire Fraud (18 USC §1343):** Receipt by Santos on January 19, 2021, of $564.00 from the NYS DOL | |
| | **COUNT 21: Wire Fraud (18 USC §1343):** Receipt by Santos on January 26, 2021, of $564.00 from the NYS DOL | |

7

| House Disclosure Report Scheme | May 11, 2020 House Disclosure Report and Amended House Disclosure Report | **COUNT 22: False Statements (18 USC §1001(a)(2))** |
|---|---|---|
| | September 6, 2022 House Disclosure Report | **COUNT 23: False Statements (18 USC §1001(a)(2))** |

On January 22, 2024, the parties submitted a joint proposed pre-trial schedule providing that defense motions would be due on April 26, 2024; the government's response papers would be due May 24, 2024; and the defense's Reply would be due June 7, 2024 (Dkt. No. 58).[2]

On January 23, 2024, the Court held a status conference whereupon it adopted the pre-trial submission schedule.

In late June 2023, the government began providing discovery to the defense on a rolling basis, with productions dated: June 27, 2023; September 6, 2023; October 27, 2023 (Ex. "B"); December 12, 2023; December 13, 2023; January 23, 2024; March 14, 2024; and April 11, 2024. The disclosure dated March 14, 2024, outlined crucial exculpatory information, including information that the government had learned much earlier, in January 2023. Ex. "C".

On April 8, 2024, the defense sent the government a letter requesting discovery and a bill of particulars. Ex. "D". The following day, April 9, 2024, the government responded by letter indicating that it would comply with its *Brady* and discovery obligations but that the government believed the S1 Indictment was sufficient with respect to the request for a bill of particulars. Ex. "E".

On April 11, 2024, the defense filed a motion for an extension of time to file pretrial motions and to de-designate certain material as confidential (ECF No. 65), which the

---

[2] That same day, attorneys Andrew Mancilla and Robert Fantone filed their notices of appearance on behalf of Santos, supplementing his prior representation by Joseph Murray.

government opposed by letter dated April 17, 2024 (ECF No. <u>68</u>), and the defense replied on April 19, 2024 (ECF No. <u>69</u>).

On April 24, 2024, the Court issued a Memorandum and Order denying the defendant's motion to de-designate the specified confidential material and granting a 7-day extension of the briefing schedule. ECF No. <u>70</u>.

<u>**DISCUSSION**</u>

**I.     COUNTS 6 AND 10 CHARGING AGGRAVATED IDENTITY THEFT MUST BE DISMISSED PURSUANT TO *DUBIN V. UNITED STATES*, 143 S.CT. 1557 (2023)**

Santos moves pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) and the recent Supreme Court decision in *Dubin v. United States,* 143 S. Ct. 1557 (2023), to dismiss Counts 6 and 10 of the S1 Indictment, both of which charge aggravated identity theft under 18 U.S.C. §1028A.

Section 1028A(a)(1), applies when a defendant, "during and in relation to any [predicate offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 USC § 1028A(a)(1).  The term "means of identification" is defined broadly by Section 1028(d)(7) and includes any name or access device, such as a credit card. 18 USC §1028(d)(7)(A) and (D).

The Supreme Court's decision in *Dubin* sought to remedy the unfortunate reality that "[t]he Government has, by its own admission, wielded §1028A(a)(1) well beyond the ordinary meanings of identity theft." *Dubin*, 143 S. Ct. at 1564.  Recognizing that the statute's language is incredibly vague, the Supreme Court clarified the interpretation of the "uses [...] a means of identification" and "in relation to a predicate offense" elements. *Id.* at 1565-67.  In doing so, the Court concluded that the aggravated identity theft statute requires "a more targeted reading [that]

9

accurately captures the ordinary understanding of identity theft, where misuse of a means of identification is at the **crux** of the criminality." *Id.* at 1567 (emphasis added).

In *Dubin*, the petitioner David Dubin—who helped manage a psychological services company —overbilled Medicaid by submitting claims that falsely inflated the amount to which the company was entitled to be reimbursed. *Id.* at 1563. The Government charged Dubin with aggravated identity theft because "[his] fraudulent billing included [a] patient's Medicaid reimbursement number" and the Government interpreted this Medicaid number as a "means of identification" under Section 1028A(a)(1). *Id.* Dubin was convicted with the predicate crime of healthcare fraud, 18 U.S.C. § 1347, and aggravated identity theft, 18 U.S.C. § 1028A(a)(1). *Id.* at 1560.

Dubin challenged his aggravated identity theft conviction, arguing that he did not *use* the patient's identity when overbilling Medicaid and that, under § 1028A(a)(1), "the means of identification [must be] at the crux of what makes the predicate offense criminal, rather than merely an ancillary feature[.]" *Id.* at 1565.

The *Dubin* Court ultimately agreed and narrowed the government's overly broad application of the aggravated identity theft statute, stating that:

> A defendant "uses" another person's means of identification "in relation to" a predicate offense *when this use is at the crux of what makes the conduct criminal*. To be clear, being at the crux of the criminality requires more than a causal relationship, such as "facilitation" of the offense or being a but-for cause of its "success." *Post*, at 1575, 1576 - 1577 (GORSUCH, J., concurring in judgment). Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.
>
> Here, [Dubin's] use of the patient's name was not at the crux of what made the underlying overbilling fraudulent. The crux of the healthcare fraud was a misrepresentation about the qualifications of

[Dubin's] employee. The patient's name was an ancillary feature of the billing method employed.

*Id.* at 1573 (emphasis added).

Here, the government has applied Section 1028A under two separate theories. Count 6 alleges that Santos engaged in wire fraud by making false entries in his campaign's January 31, 2022 FEC filing for the purpose of inflating his campaign fundraising totals. The government alleges that such conduct constitutes aggravated identity theft because Santos allegedly used the names of Santos and Marks' family members that did not actually contribute. S1 Ind. at ¶¶28, 76-77. Count 10 alleges that after Contributor #12 donated to Santos' campaign, Santos again charged Contributor #12's credit card in amounts that exceeded the authorization Contributor #12 had provided. S1 Ind. at ¶¶43-48, 82-85.

As discussed below, a fair reading of *Dubin* reveals that the government in this instance has disregarded the Supreme Court's guidance, taking an overly broad view of Section 1028A. We submit that the allegations in Counts 6 and 10 clearly fall outside the scope of Section 1028A and therefore must be dismissed.

### A.    Count 6 Must Be Dismissed Because The Use of The Contributors' Names Was Not At The "Crux" of the Alleged Fraud

Count 6 charges Santos with aggravated identity theft in relation to the first part of the Party Program Scheme, which charges Santos with falsely inflating his campaign's fundraising totals for the last quarter of 2021. S1 Ind. at ¶¶16, 22-27. The aggravated identity theft charge is premised on the predicate offenses charged in Counts 2 (wire fraud (18 USC §1343)) and 4 (false statements (18 USC §1001(a)(2)), which are based on Santos' alleged use of the "names" of Contributors #1-11, without their authority, in his campaign's January 31, 2022 FEC filing. S1 Ind. at ¶¶22-27, 71, 73, and 76-77. In essence, Count 6's aggravated identity theft charge is

based on Santos and Marks' alleged placement of 11 additional contributors on Santos' January 31, 2022 FEC filing to "fraudulently inflat[e] the Committee's **fundraising numbers** for the purpose of misleading the FEC, National Party Committee #1 and the public."  S1 Ind. at ¶16 (emphasis added); *see also id* at ¶22 ("In or about and between December 2021 and January 2022, the defendant [Santos] and Nancy Marks conspired and agreed to **falsely inflate the Committee's fundraising totals**") (emphasis added).

Here, the "crux" of the fraud underlying Count 6 is Santos' alleged false inflation of the amount of money raised by his campaign, not the identities of the individuals that donated. *Id.* In fact, *who* Santos and Marks allegedly used to falsely inflate the fundraising totals was irrelevant to the overall goal, which the S1 Indictment alleges was to "report fundraising totals sufficient to meet the $250,000 threshold necessary to qualify for the second phase of the Program." S1 Ind. at ¶19; *see also* ¶¶ 4, 23, 26, and 28 ("These falsely reported contributions contained in the Year End 2021 Report to the FEC totaled $53,200, causing the Committee to falsely claim total quarterly receipts of $251,549.68 and thereby surpass the $250,000 threshold necessary to qualify for the second phase of the Program. The defendant [Santos] and Marks knew that none of these reported contributions were true.")

Importantly, the inapplicability of Section 1028A to the alleged "Party Program Scheme" is corroborated by the government's recent *Brady* disclosure in its letter dated March 14, 2024. Ex. "C".  Specifically, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ Thus, it cannot be said that the "crux" of the alleged fraud in this case concerned the identities of the individuals

on the FEC filings. *See cf. United States v. Croft*, 87 F.4th 644, 648-49 (5th Cir. 2023) (Finding the defendant's false representation that he employed specific teachers at his school at the "crux" of his fraud because "the roster of instructors and their qualifications was 'particularly important' to the application [... and] veterans would not get G.I. Bill benefits if they took courses with unapproved instructors").

Just as in *Dubin*, the contributor's "name was an ancillary feature" of what makes the conduct criminal and cannot be said to have played a "key role" in the fraud described by the government. *Id*. at 1573; *see also Id*. at 1562: ("Section 1028A(a)(1)'s enhancement is not indiscriminate, but targets situations **where the means of identification itself plays a key role—one that warrants a 2-year mandatory minimum**. This points once more to a targeted reading, where the means of identification is at the crux of the underlying criminality, not an ancillary feature of billing") (emphasis added).

Considering that the entire purpose of *Dubin* was to curb the governments' overzealous application of the Section 1028A statute to situations that "are not captured or even fairly described by the words 'identity theft'" (*id*. at 1564) it seems obvious that Count 6 should be dismissed as an overly aggressive and unnatural application of Section 1028A. *Id*. at 1567 ("Section 1028A(a)(1)'s title and terms both point to a narrower reading, one centered around the ordinary understanding of identity theft. This cuts against the Government's broad reading, which the Government admits bears little relationship to the common understanding of identity theft. In contrast, a more targeted reading accurately captures the ordinary understanding of identity theft, where misuse of a means of identification is at the crux of the criminality.") Count 6 fundamentally misapplies the statute's intended scope, failing to recognize its purpose. Accordingly, dismissal is warranted.

13

**B.      Count 10 Must be Dismissed Because Over-Charging Does Not Constitute Aggravated Identity Theft And Santos Is Not Accused Of Improperly Transferring His Donors' Credit Cards**

Count 10 also runs afoul of *Dubin*, but for different reasons.  Count 10 charges aggravated identity theft predicated on the Access Device Fraud (18 USC §1029(a)(5)) alleged in Count 9.  Both counts are based on the same alleged conduct: that Contributor #12, and unidentified others, provided Santos' campaign with his/her credit card information to donate to Santos' campaign, and that Santos then made additional charges on those credit cards without authorization.  S1 Ind. at ¶¶ 43-48, 82-85.

Crucially, the S1 Indictment does not allege that Santos came into possession of any of the contributors' credit card information unlawfully.  All of the credit cards were voluntarily sent to Santos' campaign and his campaign was authorized to charge the cards for a specified amount. *Id*. at ¶43 ("the personal identity and financial information" that Santos allegedly used were from "individuals who had contributed to the [Campaign]"); *see also* ¶44 ("For example, on or about December 14, 2021, Contributor #12, an individual whose identity is known to the Grand Jury, texted the defendant [Santos] and another agent of the [Campaign], providing billing information for two credit cards belonging to Contributor # 12 for the purpose of authorizing a contribution to the [Campaign]").  Rather, the government's charge is based on Santos' alleged **overcharging** of the credit card(s) without authority from these donors (*id* at ¶43 ("charged repeatedly without authorization")).

*Dubin* explicitly prohibited the application of the aggravated identity theft statute to these scenarios where a defendant charged someone else's "ubiquitous payment method," such as a credit card (*id*. at 1562), in excess of the authority provided:

> The Government's reading would sweep in the hour-inflating lawyer, the steak switching waiter, the building contractor who tacks an extra $10

> onto the price of the paint he purchased. So long as they used various common billing methods, they would all be subject to a mandatory two years in federal prison. To say that such a result is implausible would be an understatement. Because everyday overbilling cases would account for the majority of violations in practice, the Government's reading places at the core of the statute its most improbable applications.

*See id.* at 1572-73.

This point is particularly clear from portions of the transcript of the oral argument in

*Dubin*:[3]

> MR. FISHER: So, if the waiter uses [the patron's credit card] to charge something else, that's an additional transaction that is not authorized.
>
> JUSTICE JACKSON: What if he charges me for a bunch of things I didn't order? So it is using for the meal, right? We're not in that other scenario. But I didn't order all these things, and suddenly they're on the bill.
>
> MR. FISHER: So I think that is -- that is without lawful authority, but I think it might be -- you might -- it might still not be in relation to the crime because there --
>
> JUSTICE JACKSON: Right, right.
>
> […]
>
> MR. FISHER: I think, Justice Jackson, if it's just extra food on the bill, that may not be without lawful authority, but, if it's something different from the items in the restaurant, then that would be outside of the expectation of the transaction.
>
> JUSTICE SOTOMAYOR: But that's not –
>
> [...]
>
> JUSTICE SOTOMAYOR: That's not identity theft, meaning there's two –
>
> MR. FISHER: It's still not [aggravated] identity theft –
>
> JUSTICE SOTOMAYOR: --there's two elements.
>
> MR. FISHER: That's right.

---

[3] Although certainly informative, we acknowledge that discussions during oral arguments are not binding precedent and are only submitted as an example of the pertinent issues discussed.

Ex. "A" at 8:22-11:8.

As the above colloquy revealed (by way of analogy) at oral argument, even if the waiter charged the patron's card without authority for "something different from the items in the restaurant", that is still "not identity theft" because the use of the credit card was not "in relation to", or at the "crux" of the underlying crime. *Dubin*, 143 S. Ct. at 1561 ("[The Government's] reading [of the statute] would, in practice, place garden-variety overbilling at the core of §1028A. Instead, 'identity theft' has a focused meaning: '[T]he fraudulent appropriation and use of another person's identifying data or documents,' Webster's Unabridged Dictionary xi, or '[t]he unlawful taking and use of another person's identifying information for fraudulent purposes," Black's Law Dictionary 894. This understanding of identity theft supports a reading of 'in relation to' where use of the means of identification is at the crux of the underlying crime. And under these definitions, identity theft occurs when a defendant 'uses' the means of identification itself to defraud others. Further, the inclusion of 'aggravated' in §1028A's title suggests that Congress had in mind a particularly serious form of identity theft, not just all manner of everyday overbilling offenses.")

Here, Count 10 alleges that contributors to Santos' campaign provided him with their credit card information and authority to charge a contribution, but that in addition to charging the authorized contribution, Santos overcharged these credit cards by making additional unauthorized charges. *Id* at ¶¶43-48.  These allegations are much like the hypothetical discussed during the oral argument in *Dubin*.  As *Dubin* makes clear, this is precisely the type of overcharging or overbilling that does not constitute aggravated identity theft under Section 1028A. *See id.* at 1572-73.  Rather, such conduct is already prohibited by access device fraud

under 18 USC §1029, with which Santos is already charged in Count 9.  Accordingly, Count 10 must be dismissed.

Count 10 must also be dismissed because *Dubin* explicitly limited the application of Section 1028A to circumstances in which a defendant has **improperly transferred** the means of identification, stating: "Generally, to unlawfully 'possess' something belonging to another person suggests it has been stolen. And to unlawfully 'transfer' something belonging to another person similarly connotes misappropriating it and passing it along. [...] 'Transfer' and 'possess' not only connote theft, but identity theft in particular.  The verbs point to (1) theft of a (2) means of identification belonging to (3) another person." *Dubin*, 143 S. Ct. at 1569-70.  The *Dubin* Court also highlighted that "the Government, at argument, agreed: these two verbs 'refer to circumstances in which the information is stolen.'"  *Id.* at 1569.

The significant policy concerns expressed by the Supreme Court in *Dubin* also loom large herein.  First, in support of its ruling that the means of identification must be improperly transferred to support a conviction under Section 1028A, the Supreme Court highlighted the fact that the legislature created a separate identity fraud statute under 18 U.S.C. § 1028, titled "Fraud and related activity in connection with identification documents, authentication features, and information" (*id.* at 1567):  "That Congress separated the identity fraud crime from the identity theft crime in §1028A suggests that §1028A is focused on identity theft specifically, rather than all fraud involving means of identification."  *Id*. at 1561 (*quoting Flores-Figueroa v. United States*, 556 U.S. 646 (2009) (internal quotations and brackets omitted)).

This palpable distinction between **identity theft** under Section 1028A and **identity fraud** under Section 1028 is necessary to fairly address the reality that "[i]n virtually all cases where a defendant employs a means of identification to facilitate a crime, the defendant will also possess

or transfer the means of identification in a way that facilitates the crime." *Id*. at 1570.  The Supreme Court was highly critical of the government's willingness to abuse the ambiguity of the language in §1028A, stating "the Government's reading creates an automatic 2-year sentence for generic overbilling that happens to use ubiquitous payment methods" such as "payment apps, credit and debit cards" as "other means of identification" that "are used routinely for billing and payment." *Id*. at 1562.   The Supreme Court held that this reading of Section 1028A was too broad.

Here, just as the Supreme Court warned in *Dubin*, the government's application of Section 1028A to the allegations in Count 10 is proscribed by the natural implications of the legislature's creation of Section 1028.  Section 1028(a)(7) covers situations in which one "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit [...] any unlawful activity that constitutes a violation of Federal law [...]".  This statute does not require the "theft" of the means of identification and for that reason, does not carry a two-year mandatory term of incarceration. 18 USC §1028(b).

Here, the conduct alleged by the government in Count 10 unquestionably falls under Section 1028 because Santos is not alleged to have improperly taken or transferred the credit cards (the "means of identification") from his donors; instead, he is alleged to have merely used them in an unauthorized manner.  S1 Ind. at ¶¶ 43-48, 82-85.  Accordingly, the fact that the legislature provided a separate crime under Section 1028 that did not require the theft of identification, which fits perfectly to the instant allegations, reveals that the government in this case is overcharging Santos in an effort to include the 2-year mandatory minimum sentence.

Second, as the Supreme Court emphasized in *Dubin*: "[t]his Court has 'traditionally exercised restraint in assessing the reach of a federal criminal statute" (*id*. at 1572) and, "[t]ime

and again, this Court has prudently avoided reading incongruous breadth into opaque language in criminal statutes" (*Id*. at 1572). The Supreme Court disapproved of the "staggering breadth of the Government's reading" of the statute and added:

> As to "uses," the Government seems just to mean "employ[s]" in any sense. [ ] Section 1028A(a)(1) would thus apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses. In other words, virtually all of the time.

*Id*. at 1564 (internal citation omitted).

The *Dubin* Court concluded this point by emphasizing: "[c]rimes are supposed to be defined by the legislature, not by clever prosecutors riffing on equivocal language" (*id*. at 1572 (*internal quotations omitted*)) and that "we cannot construe a criminal statute on the assumption that the Government will use it responsibly," explaining:

> [T]o rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's highly abstract general statutory language places great power in the hands of the prosecutor. This concern is particularly salient here. If §1028A(a)(1) applies virtually automatically to a swath of predicate offenses, the prosecutor can hold the threat of charging an additional 2-year mandatory prison sentence over the head of any defendant who is considering going to trial.

*Id*. at 1573 (internal citations and quotations omitted).

This is exactly what the defense believes happened here. Santos' refusal to plead guilty immediately after his arrest led to the government's filing of the S1 Indictment, which added two counts of aggravated identity which were not previously charged. In doing so, the defense strongly believes that the government sought to leverage the 2-year mandatory minimum provided by Section 1028A, nearly doubling the time of incarceration Santos could receive post-trial.

The Supreme Court issued the *Dubin* decision, at least in part, to put an end to the government's overbroad and dare we say abusive application of §1028A. However, the government's prosecution of Santos exemplifies the government's prerogative to ignore *Dubin's* prohibitions and continue its policy of overzealously applying the statute.

## II.    ALTERNATIVELY COUNTS 6 AND 10 MUST BE DISMISSED BECAUSE §1028A IS UNCONSTITUTIONALLY VAGUE ON ITS FACE AND AS APPLIED TO THE INSTANT ALLEGATIONS

### A.    Section 1028A Is Unconstitutionally Vague On Its Face

In the alternative, Santos moves to dismiss the aggravated identity theft charged in Counts 6 and 10 on the grounds that Section 1028A is unconstitutionally vague on its face, and particularly as applied to this case.

"The Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (*quoting Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) (internal quotations and ellipses omitted)).

Here, Santos agrees with the concurrence in *Dubin*, which opined that the ambiguous language in Section 1028A is unconstitutionally vague because there are, without question: "an uncountable number of ways in which an individual could 'use' the 'means of identification' of another to commit fraud [...] [a]nd no obvious neutral rule exists to separate those 'uses' that violate §1028A(a)(1) from others that do not." *Dubin*, 143 S.Ct. at 1577, (Gorsuch, J., concurring). Unlike those Supreme Court decisions that were able to adequately address vagueness challenges by distinguishing categories of conduct that are criminal from those that

20

are not (*see e.g. Skilling v. United States*, 561 U.S. 358 (2010)), that is simply not feasible with respect to Section 1028A.  Even as narrowed, the *Dubin* Court's "crux text," does not provide the "a person of ordinary intelligence" with fair notice concerning the "conduct that gives rise to liability from conduct that does not," as it lacks "clear lines and a limiting principle."  *Dubin*, 143 S.Ct. at 1577, (Gorsuch, J., concurring).  Thus, the indeterminacy resulting from Section 1028A "both denies fair notice to defendants and invites arbitrary enforcement" by prosecutors and judges.  *Johnson*, 576 U.S. at 597.  In fact, it is this vagueness that invited the arbitrary (and we submit improper) application of the statute to the instant facts.

**B.      Section 1028A is Unconstitutionally Vague As Applied To Counts 6 and 10**

Assuming *arguendo* that the Court determines Section 1028A is not unconstitutionally vague on its face, it must find that it is vague as applied to this case.

In evaluating a vagueness challenge the Court must "determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Rubin v. Garvin*, 544 F.3d 461, 468 (2d Cir. 2008); *United States v. Napout*, 963 F.3d 163, 181 (2d Cir. 2020) ("Under the fair notice prong, a court must determine whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.'").  If a statute fails to provide fair notice that the particular facts alleged by the government constituted a violation, that charged statute must be dismissed.  *See, e.g., United States v. Portanova*, 961 F.3d 252, 263 (3d Cir. 2020) ("Because vagueness challenges are evaluated on a case by case basis, we must examine the statute to determine if it is vague as applied to Portanova."); *United States v. Sattar*, 272 F. Supp. 2d 348, 359-61 (S.D.N.Y. 2003) (granting defendant's as-applied vagueness challenge and dismissing counts of Indictment where government application of terms and concepts to statute in charging decisions provided "no

notice to persons of ordinary intelligence and [left] the standards of enforcement to be developed by the Government").

Here, Section 1028A is unconstitutionally vague as applied to the instant set of allegations underlying Counts 6 and 10.  Count 6 alleges that Santos and Marks fraudulently inflated their fundraising totals by adding a number of fake additional contributions from 11 members of their friends and family to their January 31, 2022 FEC filing.  S1 Ind. at ¶¶22-27, 71, 73, and 76-77.

Applying the "crux" test under *Dubin*, it cannot reasonably be argued that adding nonexistent contributions into an FEC filing, and simply assigning those contributions to friends and family, would constitute identity theft worthy of the mandatory minimum of 2 years in prison.  An ordinary and natural understanding of what makes such conduct criminal is the addition of the monetary contributions, not the identity of the contributors.  Further, the government specifically alleged that this was the purpose of the scheme.  The identities of the contributors are entirely ancillary to the falsehoods concerning the amounts raised.  An ordinary person would not appreciate that such ancillary use of names, when the purpose was to inflate values alone, constitutes identity theft under Section 1028A.  Accordingly, as applied to the allegations averred in Count 6, Section 1028A is unconstitutionally vague.

The underlying conduct charged in Count 10 fares no better.  Count 10 charges Santos with charging donor credit cards beyond the authority he was provided. S1 Ind. at ¶¶ 43-48, 82-85.  It is particularly difficult to determine whether these allegations fall within Section 1028A because Santos was provided the credit card information voluntarily by his contributors and given authority to make contributions to his campaign. S1 Ind. at ¶¶ 43-44.

The Supreme Court itself spent considerable time grappling with the boundaries of Section 1028A in circumstances such as these, a fact underscoring Justice Gorsuch's concurrence. *See Dubin*, 143 S.Ct. at 1575-77 (Gorsuch, J., concurring).  While we submit, as discussed above, that the colloquies and decision indicate that the Supreme Court considered all instances of overcharging/overbilling to fall outside of Section 1028A, this Court may conclude that *Dubin* does not go so far.  However, it ought not be lost on the reader that the implications of making such a determination necessarily makes the exact point asserted by Santos: Where did Congress intend to draw the line? The very credible and reasonable arguments on either side highlight the ambiguity in the aggravated identity theft statute as applied to these facts, where some overcharges were allegedly for additional campaign contributions (S1 Ind. at ¶45) and at least one was allegedly for unrelated personal items (S1 Ind. at ¶47).

It cannot be overstated that the Supreme Court's own struggle with determining the boundaries of the conduct that Congress intended to prohibit with respect to, for example, a waiter charging customer credit cards without authority (whether it is for a different type of food or to pay off the waiter's mortgage after the customer leaves) should give this Court considerable pause as to whether Santos was given fair notice that his alleged making such unauthorized charges to his donors' credit card would result in the stiff 2-year mandatory minimum consecutive penalty imposed by the statute.

While we submit that the language in the Supreme Court's *Dubin* opinion clearly requires dismissal of Counts 6 and 10, we trust that the Court's review of the *Dubin* decision, as well as the briefs submitted in support and the transcript at oral argument, will reveal that at the very least, the aggravated identity theft statute is unconstitutionally vague as applied to the instant set of facts alleged in Counts 6 and 10.

For these reasons, and others articulated in Justice Gorsuch's concurrence in *Dubin*, Santos argues in the alternative that Counts 6 and 10 must be dismissed because Section 1028A is unconstitutionally vague on its face and as applied to this case. *See Johnson, supra*; *see also City of Chicago v. Morales*, 527 U.S. 41 (1999).

## III.   MOTION TO DISMISS COUNT 10 AS MULTIPLICITOUS

In the event that Count 10 is not dismissed under the Court's reading of the holding in *Dubin*, and the Court concludes that Section 1028A is not unconstitutionally vague as applied to these allegations (or in general), then Count 10 must necessarily be dismissed as multiplicitous to its referenced predicate - access device fraud charged in Count 9.

Multiplicity occurs when an indictment charges two crimes in separate counts, when in actuality, only one crime has been committed. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Multiplicitous charges thus violate the protections against double jeopardy contained in the Fifth Amendment. *Id*. To determine if charges are multiplicitous: "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id*. However, even if two offenses are multiplicitous, double jeopardy cannot serve to prohibit cumulative punishment when Congress intended both statutes to apply simultaneously. *Garrett v. United States*, 471 U.S. 773, 778-779 (1988) ("We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history").

Here, Count 10, charging aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), must be dismissed as multiplicitous to Count 9 (which charges access device fraud in violation of 18 U.S.C. § 1029(a)(5)), because the government's overly broad application of

aggravated identity theft does not require "proof of a fact which [the access device fraud in Count 9] does not." *Blockburger*, 284 U.S. at 304.

As a preliminary matter, it is undisputed that the S1 Indictment charges aggravated identity theft in Count 10 based on the identical facts, and predicate felony, alleged in Count 9: that Santos overcharged the credit cards of donors who contributed to his campaign. S1 Ind. at ¶¶ 43, 44, 82-85.  Moreover, under the government's broad interpretation of 18 U.S.C. § 1028A(a)(1), as reflected in Count 9, any overcharging of another's credit card, which constitutes access device fraud, **also automatically constitutes aggravated identity theft.**  But this is precisely the overbroad interpretation of the aggravated identity theft statute that is now proscribed under *Dubin*, 143 S. Ct. at 1572-73.  As noted above, the Supreme Court in *Dubin* made clear that Section 1028A does not apply in overcharging or overbilling situations. *Id.; see also id.* at 1561 ("That 'Congress separated the [identity] fraud crime from the [identity] theft crime in' §1028A suggests that §1028A is focused on identity theft specifically, rather than all fraud involving means of identification. [...] [T]he inclusion of 'aggravated' in §1028A's title suggests that Congress had in mind a particularly serious form of identity theft, not just all manner of everyday overbilling offenses.")

Notably, prior to *Dubin*, the Second Circuit appeared to foreclose the instant argument. In analyzing the multiplicity issue presented by a charge of both §1028A and §1029(a)(5), the Second Circuit appeared to agree (at least implicitly) that these offenses, when charged together, are multiplicitous. *United States v. Yusuf Abdur-Rahman,* No. 10-4814-cr, 2013 U.S. App. LEXIS 4967, at *9-10 (2nd Cir. 2013).  However, it determined, based on the pre-*Dubin* overly broad interpretation of Section 1028A, that Congress' intended on permitting cumulative punishment, and thus there can be no constitutional violation implicating the Double Jeopardy

clause. *Id.* (*citing Flores-Figueroa*, 556 U.S. 646); *see also United States v. Bonilla*, 579 F.3d 1233, 1244 (11th Cir. 2009); *United States v. White*, 296 Fed. Appx. 483, 490-91 (6th Cir. 2008); *United States v. Komolafe*, 246 Fed. Appx. 806, 813 (3d Cir. 2007).

Now, in light of the Supreme Court's narrowing interpretation under *Dubin*, which was in part premised on the conclusion that Congress intended for the aggravated identity theft statute to be reserved for "particularly serious form[s] of identity theft", it is difficult to see how its application to the instant case does not violate the Double Jeopardy clause in this case. *Dubin*, 143 S. Ct. at 1561 ("the inclusion of 'aggravated' in §1028A's title suggests that Congress had in mind a particularly serious form of identity theft, not just all manner of everyday overbilling offenses").

While the §1028A enhancement can be constitutionally applied in connection with some of its broader predicate offenses (*see e.g.* §1028A(c)(5) relating to mail, bank, and wire fraud) because there is clearly conduct in addition to the underlying predicate that triggers the application of §1028(a)(1), its application to §1029 is not the same.  Every time a defendant's conduct violates §1029(a)(5), it cannot, and should not trigger the §1028A enhancements. Therefore, there is no additional conduct or circumstance present to justify the §1028A enhancement, thus making any violation of §1029(a)(5) the same offense as a violation of §1028A.

Lastly, although courts in this circuit generally address the issue of multiplicity after trial (*see e.g. United States v. Alexander*, No. 5:14-CR-0453 (GTS), 2016 U.S. Dist. LEXIS 192710, *17 (N.D.N.Y. March 1, 2016) (*citing United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006)), Santos raises this issue in the instant application to preserve his rights and because

26

Federal Rule of Criminal Procedure 12(b)(3) requires that defects in the S1 Indictment, including multiplicity, be raised by pretrial motion. Fed. R. Crim. P. 12(b)(3)(B)(ii).

## IV.    MOTION TO DISMISS COUNT 19 AS DUPLICITOUS

Count 19 of the S1 Indictment should be dismissed as duplicitous pursuant to Fed. R. Crim. P. 12(b)(3)(B).  Count 19 charges Santos with the theft of public money in violation of Section 641 based on allegations that he fraudulently applied for, and received, unemployment benefits under the pandemic related CARES Act. S1 Ind. at ¶¶57-59.

"An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby. However, acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Duclos*, No. 22-271-cr, 2023 U.S. App. LEXIS 14243, at *5 (2nd Cir. 2023) (internal citation and quotation omitted)

"Before the Court can grant a dismissal on duplicity grounds, a defendant must demonstrate prejudice resulting from the alleged duplicity; the duplicity doctrine is 'more than an exercise in mere formalism.'" *United States v. Hatfield*, No. 06-CR-0550 (JS), 2009 US Dist LEXIS 63108, at *4 (EDNY July 22, 2009) (internal citations omitted).  The policy underlying duplicity is "avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double

jeopardy in a subsequent prosecution." *United States v. Margiotta*, 646 F.2d 729, 732 (2d Cir. 1981).

If the Court finds counts in an indictment to be impermissibly duplicitous by virtue of the pleading itself—as it should here—such counts should be dismissed to allow the government to supersede. *United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) ("An impermissibly duplicitous indictment is subject to dismissal."); *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006) ("If the indictment confused the defendant, the proper time to raise that objection was before trial, allowing the court an opportunity to correct the error and allowing the government to seek a superseding indictment."); *United States v. Bessigano*, No. 2:08 CR 110, 2008 U.S. Dist. LEXIS 90148, at *8 (N.D. Ind. Nov. 4, 2008) ("because defendant properly raised this issue before trial, the proper remedy is dismissal of the duplicitous count"); *see also United States v Schock*, No. 16-CR-30061, 2017 US Dist LEXIS 174830, at *54-58 (CD Ill Oct. 23, 2017) ("The Government chose the language contained in [the duplicitous count]. The Government cannot now edit that language [...] in order to avoid dismissal of the count as duplicitous.").

Here, Count 19 charges a single offense of theft of government funds in violation of 18 U.S.C. § 641.  The S1 Indictment alleges that this single count occurred "between June 2020 and April 2021" and that Defendant "did knowingly, willfully and without lawful authority embezzle, steal, purloin and convert to his own use money and things of value of the United States and a department and agency thereof, to wit: money of the United States Department of the Treasury, the aggregate value of which exceeded $1,000."

Count 19 also incorporated "[p]aragraphs one through 65", including paragraph 59, which appears to include a separate charge that includes conduct during a different, albeit overlapping, timeframe: "[f]or the period of approximately March 22, 2020 through April 15,

2021, based on a false application and false weekly certifications to the NYS DOL, the defendant [SANTOS] received approximately $24,744 in unemployment insurance benefits, which were deposited into [Santos'] Bank Account #2." S1 Ind. at ¶59 (emphasis added)

Count 19 is duplicitous because it charges two separate schemes and multiple transactions within the same count. The count "combines two or more distinct crimes into one count" because taken as a whole, they allege one scheme that took place "**between June 2020 and April 2021**" (S1 Ind. at ¶92) and a separate scheme that occurred from "**March 22, 2020 through April 15, 2021**" (*id.* at ¶59). Defendant is prejudiced because the distinctive time periods do not provide adequate notice as to which of the two schemes is charged in Count 19.

The prejudice is compounded because Count 19 charges numerous individual isolated unidentified transactions over an unspecified period of time, as one scheme. The S1 Indictment alleges that as a result of an unspecified number of "weekly" false certifications concerning his continuing eligibility for unemployment benefits, Santos received a total of approximately $24,744 from New York State Department of Labor ("DOL") (S1 Ind. at ¶¶58-59). However, Counts 20 and 21 (the other counts related to the purported unemployment scheme) each charge Santos with wire fraud based on two discrete instances in which he received $564.00 on two separate dates from New York State Department of Labor, which necessarily leads to the conclusion that there were numerous other instances in which Santos allegedly receive the remaining $23,616 ($24,744-$564-$564) from the DOL. Given the lack of specificity of the dates of each specific transaction underlying the Count 19, as well as the fact that it alleges two separate time periods covered, Defendant is prejudiced because the jury could issue a conviction without actually agreeing on which specific conduct Santos committed.

While this Circuit, contrary to other Circuits, has held that separate isolated transactions may be charged as a single scheme under Section 641 without rendering a count duplicitous[4], as pled, the combined effect of charging multiple isolated and transactions covering two distinct time periods renders Count 19 prejudicially duplicitous.  Santos is prejudiced because by combining multiple alleged offenses into Count 19, the government has failed to identify for Santos when, where, and how he is alleged to have violated the law.  Santos does not know the purported instances when he is alleged to have committed this offense, including the alleged dates, places, and amounts/values of the property in each alleged instance (except for those two identified by Counts 20 and 21).

*Girard* does not foreclose the possibility that an indictment charging multiple violations within Section 641 is duplicitous.  Unlike in *Gerard*, where the Second Circuit rejected the defenses argument of duplicity where four identified transactions were charged under one count of Section 641 (*id* at 72), the transactions charged in the S1 Indictment are not identified by number, date, amount (aside from the two contained in Counts 20 and 21), or factual context.  Such an attempt to group numerous unidentified transactions together under a single violation of Section 641 does not provide the defendant with "adequate notice" and creates a grave risk of "uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime

---

[4] *See United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979), *cert. denied*, 444 U.S. 871 (1979). However, other federal courts disagree. *See United States v Reagan*, 596 F3d 251, 254 (5th Cir 2010) ("[T]he 'allowable unit of prosecution' under § 641 is each individual transaction in which government money is received, even if the transaction is part of an overarching scheme."); *United States v. Yashar* 166 F.3d 873, 875 (7th Cir. 1999); *United States v Schock*, No. 16-CR-30061, 2017 US Dist LEXIS 174830, at *54-58 (CD Ill Oct. 23, 2017) (dismissing as duplicitous a single charge of 18 USC §641 that improperly grouped multiple violations of 641 into a single count); *United States v. Henrikson*, 191 F. Supp. 3d 999, 1004 (D.S.D. 2016) ("[t]heft of government property as contained in the first paragraph of § 641 does not constitute a continuing offense").  As it appears that the Supreme Court has not yet resolved this specific issue, Santos moves to dismiss Count 19 on these grounds as well.

and a finding of not guilty as to another." *United States v. Margiotta*, 646 F.2d 729, 732 (2d Cir. 1981).

Indeed, other courts have held that such pleadings duplicitous when they result in prejudice. For example, in *United States v Schock*, No. 16-CR-30061, 2017 US Dist LEXIS 174830, at *54-58 (CD Ill Oct. 23, 2017), the district court dismissed as duplicitous a Section 641 count that was an attempt by the government "to group numerous transactions into a single theft count." *Id*. The indictment in *Schock* did not specify which transactions over the five-year period were involved, making it difficult to identify the exact acts the defendant was charged with. Instead, it broadly referenced previous allegations in the indictment that included multiple instances of financial transactions. *Id*. The district court found prejudice because this lack of specificity meant the defendant could not be sure of the exact nature of the charges. *Id*. The court concluded that because the indictment was fundamentally flawed in its construction by charging multiple, unspecified thefts as a single count, dismissal was the appropriate remedy.

Here, just as in *Schock*, 2017 US Dist LEXIS 174830, at *54-58, it is unclear how many transactions occurred, when those transactions occurred, and which statements by Santos resulted in disbursements of unemployment benefits by the DOL. S1 Ind. at ¶¶57-59, 91-92. Count 19 does not identify the transactions but instead incorporates all the prior paragraphs that speak generally about the purported scheme, and includes the amount disbursed covering two separate time periods. *Cf, Schock*, 2017 US Dist LEXIS 174830, at *54-58 ("Further supporting the court's conclusion that Count 11 is duplicitous is the fact that the Government did not allege specific facts related to the individual charge. Instead, the Government incorporated by reference '[p]aragraphs 1 through 74 of Counts 1 through 8.' Those 74 paragraphs contain numerous allegations relating to various requests for reimbursement which resulted in multiple

disbursements of government funds.  Any one of those disbursements could have given rise to the alleged violation of § 641 contained in Count 11.  By incorporating all 74 paragraphs, the Government has made it impossible for Defendant (and the court) to determine which disbursement gave rise to the allegations contained in Count 11.  The Indictment, therefore, does not give Defendant fair notice of the charged offense and the dangers expressed by the Seventh Circuit in *Davis* are clearly present. See *Davis*, 471 F.3d at 790").

For the reasons stated above, we submit that Count 19, as pled, is duplicitous and dismissal is warranted.

## V.  MOTION TO COMPEL A BILL OF PARTICULARS

Santos moves for a bill of particulars pursuant to Fed. R. Crim. P. 7(f) because the S1 Indictment does not sufficiently inform him of the nature of several of the charges.  Despite the loquaciousness in which the government styled its S1 Indictment, it has nevertheless failed to articulate several key allegations necessary for Santos to prepare for trial and prevent unfair surprise.

By letter dated April 8, 2024, the defense sent the government a request for a bill of particulars that requested, in sum, that the government (1) identify the alleged victims of the charged schemes because the S1 Indictment fails to do so; and (2) identify the specific false statements underlying some of the wire fraud counts.  The government denied Santos' request in full via letter dated April 9, 2024, asserting that "the detailed 42-page superseding indictment in this matter plainly satisfies the pleading standard set by Federal Rule of Criminal Procedure 7(c) and provides more than sufficient notice of the charges against the defendant." Ex. "E".

However, for the reasons described below, it does not.  More is required to allow Santos to prepare a defense.

A.      **Legal Standard**

"Rule 7(f) permits a defendant to move for a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.  A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.  The decision whether to grant a bill of particulars is committed to the sound discretion of the district court and is reviewed only for abuse of discretion." *United States v. Lizza*, No. 19-CR-0548(JS)(AYS), 2023 U.S. Dist. LEXIS 17890, at *25 (E.D.N.Y. Feb. 2, 2023) (internal citation and quotations omitted).

"[A] bill of particulars will be required even if the effect is disclosure of the Government's evidence or theories, if necessary to give the defendant enough information about the charge to prepare his defense." even if it means the government must disclose portions of its evidence or theories.  *United States v. Kaplan*, No. 02-CR-883, 2003 U.S. Dist. LEXIS 21825, at *40 (S.D.N.Y. December 8, 2003) (Batts, DJ) (*citing United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998)).

B.      **The Following Particulars Are Necessary To Provide Adequate Notice To the Defense to Properly Prepare For Trial And To Prevent Surprise**

i.      **The Identification of Allegedly False Statements Related to Counts 2-8**

Santos' first request relates to the identification of falsehoods pertaining to the "Party Program Scheme" charged in Counts 2-8.[5] With respect to this alleged scheme, paragraph 22 of

---

[5] Specifically, these charges are as follows: Count 2 (wire fraud - January 2022 FEC Filing), Count 3 (wire fraud - April 2022 FEC Filing), Count 4 (False Statements - January 2022 FEC Filing), Count 5 (False Record - January 2022 FEC Filing), Count 6 (Aggravated Identity Theft - January 2022 FEC

the S1 Indictment states: "In or about and between December 2021 and January 2022, the defendant [Santos] and Nancy Marks conspired and agreed to falsely inflate the [Campaign's] fundraising totals, **including but not limited to**, in public filings with the FEC." S1 Ind. at ¶22 (emphasis added).  Paragraph 32 contains the same "including but not limited to" language pertaining to the timeframe of "March and April 2022". *Id*. at ¶32.  While the S1 Indictment identifies several allegedly fraudulent statements pertaining to the above-mentioned Counts (which are specified in paragraphs 27, 38, 71, 73, 75, 79, and 81), the "including but not limited to" language indicates that the identified falsehoods are not exhaustive.  Accordingly, Santos is at risk of the government introducing additional, unidentified statements in support of these counts at trial.   Accordingly, Santos requested that the government:

> identify all alleged falsehoods and the locations of those falsehoods with respect to the allegations in paragraphs 22 and 32 that Santos and Marks inflated the Committee's fundraising totals that form the basis of the purported "Party Program Scheme".  Specifically, while the government alleges in paragraph 22 that between December 2021 and January 2022 Santos and Marks "conspired and agreed to falsely inflate the Committee's fundraising totals" in its "public filings with the FEC", the allegation avers that there are other locations/documents/ communications in which Santos and Marks inflated their fundraising totals without identifying where. Similarly, paragraph 32 contains virtually identical language alleging that the public filing was not the only manner in which Santos and Marks inflated fundraising totals. Our review of the discovery has not revealed any other inflated representations between December 2021 and April 2022. Accordingly, we request that the government specifically identify all falsely inflated representations that it intends to prove at trial. Notice is required as to what specific representations the government intends to prove are false, where they were made, and by whom specifically they were made.

Ex. "D".  This request was denied.  Ex. "E".

---

Filing), Count 7 (False Statements - April 2022 FEC Filing), and Count 8 (False Record - April 2022 FEC Filing).

Without identification of such statements (the falsity of which would satisfy elements of the above-referenced substantive offenses) Santos will not be able to properly prepare his defense.  The two FEC filings pertaining to Counts 2-8 (January 31, 2022 and April 15, 2022) total more than 500 pages and contain more than 1,000 different statements concerning Santos' fundraising activities.  In addition, the discovery in this case has exceeded 1.3 million pages of discovery material.   Under these circumstances, where discovery is voluminous and the government has included broad and intentionally vague language in the S1 Indictment, Santos must be provided with the specific statements alleged to be false to adequately prepare for trial and prevent any unfair surprise. *United States v. Tournant*, No. 22-CR-276, 2023 U.S. Dist. LEXIS 222329, at *12 (S.D.N.Y. Dec. 13, 2023) (Swain, DJ) (finding insufficient mere "examples of allegedly fraudulent misrepresentations identified among at least seven millions of pages of discovery" and concluding that "particulars as to the alleged victims are necessary to allow defense counsel to conduct a reasonably focused investigation" and adequately prepare for trial); *United States v. Zhong*, No. 16-CR-614, 2017 U.S. Dist. LEXIS 175357, at *6-7 (E.D.N.Y. October 23, 2017) (Irizarry, DJ) (Ordering the government to provide particulars to the defense specifically identifying the false statements alleged to have been made by the defendant); *United States v. Scully*, 108 F.Supp.3d 59 (E.D.N.Y. 2015) (granting a motion for a bill of particulars because the case involved a complex conspiracy to sell misbranded drugs, and the seventy-three count indictment did not allege the specific statements that the government contended were fraudulent); *see also United States v. Bortnovsky*, 820 F.2d 572, 573-75 (2d Cir.1987) (holding that the district court abused its discretion in denying defendant's motion for a bill of particulars seeking to identify the false statements in over 4,000 pages of allegedly fraudulent insurance claims)

For these reasons, Santos requests an order directing the government to identify the particular statements referred to by the S1 Indictment's "including but not limited to" language related to Counts 2-8.  Alternatively, Santos requests that the Court order the government to confirm that it will not expand the scope of statements it claims are false beyond those specifically identified in the S1 Indictment in support of Counts 2-8.

### ii.   Identification of The Alleged Victims, Dates, and Amounts Related to Access Device Fraud and Aggravated Identity Theft Charged in Counts 9 and 10

Santos' fourth and sixth request for particulars related to Counts 9 and 10, the alleged "Credit Card Fraud" scheme. Ex. "D".

Counts 9 and 10 charge Santos with unauthorized use of an access device and aggravated identity theft, respectively, and allege multiple instances of misconduct that underlie these offenses.  However, the S1 Indictment only provides one example: Contributor #12.  S1 Ind. at ¶¶44-48, 82-83.  Aside the example of Contributor #12, the S1 Indictment does not identify any other alleged victims, the dates of the allegedly fraudulent transactions, or the amounts fraudulently charged. S1 Ind. at ¶48.

Nor does the voluminous discovery provide such information. The government has produced over 1 million documents including bank statements and credit card charges from hundreds of contributors to Santos' campaign.  In addition, the government's theory is based on overcharging, not theft of credit card information. S1 Ind. at ¶43-44.  It is undisputed that the credit card information was voluntarily provided by the contributors to Santos' campaign, and that each of them had authorized contributions. *Id.*  Accordingly, the credit card charges expectedly present in the discovery do not allow the defense to identify the alleged fraudulent transactions or the alleged victims.  In other words, the discovery merely reflects contributions, **it does not reflect which of those contributions were unauthorized**.

Where neither the indictment nor the discovery allow the defense to identify the fraudulent transactions charged by the government, a bill of particulars is required. *See United States v. Desimone*, No. 94-CR-130, 1994 U.S. Dist. LEXIS 14493, at *3 (S.D.N.Y. October 12, 1994) (McKenna, DJ) (Ordering the government to provide the defense with the requested particulars identifying the credit card identification, amount, and date of transaction in an access device fraud prosecution to the extent that information is not disclosed by the indictment or the discovery); *United States v. McCallister*, No. 00-CR-482, 2000 U.S. Dist. LEXIS 16955, at *1 (S.D.N.Y. November 21, 2000) (McKenna, DJ) (Ordering the government to provide a bill of particulars if it intends to prove fraudulent access device transactions beyond those specifically identified in the charging instruments).

The voluminous nature of the discovery combined with the government's theory that only certain transactions were fraudulent weighs heavily in favor of ordering the requested particulars. *United States v. Rajaratnam*, No. 09-CR-1184, 2010 U.S. Dist. LEXIS 70385, at *7 (S.D.N.Y. July 13, 2010) (Holwell, DJ) ("'sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.'") (*quoting United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000)).

Simply put, aside from the charges related to Contributor #12, it is impossible for Santos to prepare a defense to Counts 9 and 10 without the identity of the alleged victims.  Thus, Santos is entitled to know the identity of these "other individuals" to prepare his defense at trial.  *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (holding denial of bill of particulars "identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove" an abuse of discretion where over 4,000 documents were produced); *see also Tournant*, 2023 U.S. Dist. LEXIS 222329, at *12.

The same reasoning applies with equal force to Santos' request for particulars as to the dates and times of the unauthorized transactions, since not all contributors were alleged victims, and not all of the victims' contributions were unauthorized.  In light of the fact that each contributor authorized at least one of the contributions to Santos' campaign, particulars as to the dates and times of those contributions that were allegedly unauthorized is also necessary.  Again, the discovery offers no distinction between contributions that were authorized versus those that were not and are the subject of Counts 9 and 10.

In *United States v. Silver*, 117 F. Supp. 3d 461 (S.D.N.Y. 2015), the court noted that the indictment was:

> devoid of any specific information regarding the dates of the allegedly offending mailings and wire transmissions, and it include[d] language permitting the Government to rely on *any* mailing or wire transmission in furtherance of [the defendant's] wide-ranging crimes to satisfy that element of the charges. [] Given the exceptional volume of mailings and wire transmissions in this case, the potentially relevant communications could easily number in the hundreds or thousands. Under those circumstances, it is not unreasonable for the Defendant to want to know which mailings and wire transmissions the Government will rely upon to prove its case.

*Id*. at 471 (emphasis in original).  The district court therefore ordered the government to provide the defendant with a bill of particulars "'identifying the specific mailings and wire transfers' on which it will rely to prove the charges contained in Counts One through Four." *Id*.; *see also United States v. Savin*, 00 Cr. 45 (RWS), 2001 U.S. Dist. LEXIS 2445, 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (granting request for particulars about defendant's role in transactions, where defendant had "been provided with 100,000 pages of discovery," a "veritable mountain of documents" that the government would have forced the defendant "comb through" to "attempt to guess at" which transactions, during a six-year period, were allegedly improper); *United States v.*

*Nachamie*, 91 F. Supp. 2d 565, 571-72 (S.D.N.Y. 2000) (granting bill of particulars where government had produced 200,000 documents relating to 2,000 Medicare claims, but had not told the defendants which claims were alleged to be false).

Santos requests the Court issue a similar Order here so that the defense can obtain the identity of the "other individuals" described as alleged victims in paragraph 48 of the S1 Indictment, as well as the dates, times, and/or amounts of such transactions so that Santos can at the very least, identify which transactions were allegedly unauthorized. Alternatively, if the government does not intend to rely upon transactions related to anyone other than Contributor #12 in proving Counts 9 and 10, Santos requests that the Court order the government to confirm that it will not rely on any other allegedly unauthorized transactions in support of Counts 9 and 10 at trial.

### iii. Identification of the Transactions And Additional Entities Involved In Counts 9 And 10

While the S1 Indictment alleges that Santos used two access devices of Contributor #12 without authorization, it does not identify the specific entity that received the two allegedly fraudulent contributions. Instead, the allegation states as follows: "That same day, [Santos] caused two other contributions to be made **to the Committee or affiliated political committees** using the credit card billing information provided by Contributor #12."

It is virtually impossible for Santos to isolate the specific transactions the government alleges to be the basis of Counts 9 and 10 without knowing which "Committee or affiliated political committee" processed the transaction. Thus, Santos' fifth request to the government stated: "Please identify the 'affiliated political committees' to which the Defendant caused 'two other contributions to be made' as described in paragraphs 44 and 45 of the indictment." Ex. "D".

Again, Santos' various political committees received an enormous number of contributions during the timeframe identified in the S1 Indictment (December 2021 to August 2022, *see* S1 Ind. at ¶83), making it impossible for Santos to prepare his defense to the "two other contributions" alleged in the S1 Indictment. In addition, should the government identify other alleged victims, the Court should also Order that the unauthorized transactions of those additional individuals' credit cards be specifically identified by the government.

For these reasons, Santos respectfully requests that the Court issue an Order directing the government to provide the aforementioned particulars.

## VI. MOTION TO COMPEL PRODUCTION AND DISCLOSURE UNDER *BRADY/GIGLIO*

Santos moves for an order, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) and its progeny, *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995), *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375 (1985), and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972), compelling the government to immediately disclose all evidence and information related to the interviews, and follow-up interviews, with ██████████████████ ██████████████ including, but not limited to, the FD-302s, notes, drafts, recordings, or other records memorializing the statements each allegedly made as summarized in the government's disclosure letters dated October 27, 2023 and March 14, 2024. While the defense understands that as a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant" (*United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001)) the specific material identified below should be immediately disclosed to the defense to protect the defendant's right to make "effective use" of it pretrial, including in the instant motions. The government has refused to produce this material to the defense choosing instead to merely describe the material. *See* Exs. "D" and "E".

*Brady* requires the production of "evidence", not merely information. *Brady*, 373 U.S. at 87.[6]  *Brady* also requires disclosures to be sufficiently specific and complete. *See, e.g., Leka v. Portuondo*, 257 F.3d 89, 103 (2d Cir. 2001) (finding *Brady* not satisfied when the defendant was left in the dark on what a witness would say because the government did not disclose details of potential witness's knowledge).  "The Second Circuit held in *Coppa* that *Brady* and *Giglio* material must be disclosed to defense in 'sufficient time' for defense to make 'effective use' of the disclosed material." *United States v. Underwood*, 2005 U.S. Dist. LEXIS 6810, at *6 (S.D.N.Y. Apr. 21, 2005) (*citing Coppa* at 144). "The Court further elaborates that 'the time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case.'" *Id.* (*citing Coppa* at 146). Some courts have gone so far as to hold that "'timeliness' with respect to *Brady* disclosure means immediate disclosure upon discovery." *United States v. Binday*, 908 F. Supp. 2d 485, 498 (S.D.N.Y. 2012), *rev'd on other grounds*, 804 F.3d 558 (2d Cir. 2015) ; *see also* U.S Dep't of Justice, Justice Manual, Title 9-5.001 [January 2020] "Policy Regarding Disclosure of Exculpatory and Impeachment Information"[7] at D(1) ("Exculpatory information must be disclosed reasonably promptly after it is discovered.").

In addressing *Brady* issues, the Court has broad authority to regulate discovery under its inherent authority and Rule 16(d) of the Federal Rules of Criminal Procedure. *See United States v. Perez*, 222 F. Supp. 2d 164, 166 (D. Conn. 2002) (recognizing inherent authority to control disclosure of *Brady* material).

---

[6] *Brady* material also includes inadmissible evidence that could lead to the discovery of admissible evidence. *United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012).

[7] (https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.001)

Here, the government made two *Brady* disclosures, which together identified at least three witnesses that provided information to the government that is exculpatory and/or indicates a basis to impeach those witnesses.  For example, the government's letter dated October 27, 2023, stated that ███████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████ Ex. "B".  The disclosure further noted that ████████████████████████████████████████ *Id.*

While ███████████████ ███████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████



This disclosure is highly relevant to the not only the "materiality" requirement of the false statements Santos and Marks purportedly made to the FEC, but also to the propriety of charging Santos with aggravated identity theft (18 USC §1028A) following the Supreme Court's reasoning in *Dubin*. As discussed above in Section I, *supra*, the Supreme Court in *Dubin* held that aggravated identity

43

theft should not apply where use of the individual's identity is the "crux" of the fraud.

███████████████████████████████████████████████████████████████

████████ directly undermines any theory that names Santos allegedly falsely included in the FEC filings was the "crux" of the fraud.  In fact, it is for this reason that for the Court to adequately rule on the motion to dismiss Count 6, it would be highly advisable that it Order the government to disclose the 302s, notes, memos, and any other records it possesses relating to its interviews with ██████████.  It is also for this reason that the government's disclosure of this material to the defense has impacted the "architecture" of the instant pretrial motion.  In this regard, Santos reserves the right to supplement his motion to dismiss Count 6 upon receipt of the full scope of material relevant to this inquiry, and in particular, to its interviews with ██

███████████

Because two of the aforementioned disclosures ███████████████████████

████████████████████████ they are exculpatory because they contradict the government's theory to the contrary, and they fall within *Giglio* because the admissions of criminal conduct can be used to impeach those witnesses. *Giglio,* 405 U.S. 150.

Though the government has provided what it claims to be the "sum and substance" of what these witnesses said, we respectfully submit that this is insufficient.  We acknowledge that there are district court decisions that hold otherwise (*see, e.g., United States v Collins*, 409 F Supp 3d 228, 244-245 (SDNY 2019)), but we believe this to be a misapplication of both the language of *Brady* and the express intent of *Brady*.

As stated above, *Brady* requires not just the disclosure of exculpatory information, but of exculpatory "evidence." *Brady*, 373 U.S. at 87.  The government's summaries do not constitute "evidence" and the defense cannot use a summary written by an AUSA to cross examine a

witness unless that AUSA is prepared to be called as a witness in the event the witness testifies to a discrepancy.  Nor can defense counsel interview witnesses now to investigate if any discrepancy exists because the actual interview notes and 302s (and whatever other records were generated that memorialize the interviews) may have different statements, phrases, or information that the witnesses provided to the government.  Details provided in interview notes and FD-302s, for instance, often contain important context surrounding witness knowledge (and the basis thereof) and the manner in which exculpatory statements were elicited and made. Such details are absent from the condensed, post hoc summaries drafted by government attorneys.

For instance, the defense might interview these witnesses today based on these summaries, and the witnesses could confirm that the statements broadly match what they conveyed to the government.  However, they might discover on the eve of trial, when there is no time left to investigate, that these witnesses actually shared far more detailed information with the government.  Simply put, the government's limited disclosure does not satisfy its *Brady* obligations because it does not allow the defense to make use of the evidence.  The government's summaries are no substitute for full notes and FD-302s.

Unfortunately, while the government claims that it will continue to abide by its *Brady* obligations, the defense cannot take the government at its word, and nor should the Court.  As detailed in our letter request for an extension (ECF No. 65), the government's disclosure of this information, particularly the information concerning ███████████████████ ████████████████████████████████████████was withheld by the government for nearly fourteen (14) months.  This was in violation of Magistrate Judge Shields' *Brady* Order, which provides that the government must disclose all *Brady* material "to the defense *promptly* after its existence becomes known to the Government" (ECF No. 11 at 1)

45

(emphasis added), and its own policy manual requiring that "Exculpatory information must be disclosed reasonably promptly after it is discovered." U.S Dep't of Justice, Justice Manual, Title 9-5.001 at D(1).[8]

We concede that courts in this Circuit have routinely denied motions to compel production of Brady material where the government represents to the court that it "recognizes its continuing obligation to disclose all such material [and] has, in good-faith, asserted that it has met, and will continue to meet its obligations." *United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516, 522 (S.D.N.Y. 2007). However, disclosure is warranted where "the Defense . . . provide[s] . . . reason for suspecting the Government will not comply" with its *Brady* obligations. *United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015).

The government was in possession of this information and had known about it even prior to charging Santos, yet they moved forward with their theory that Santos was the organizer/leader of all of the alleged Schemes charged in the S1 Indictment. The government also withheld this information while they simultaneously attempted to persuade Santos plead guilty and admit that he was the organizer/leader under the guidelines. They also withheld the information provided by Mr. ███████ while they tried to have Santos plead guilty to aggravated identity theft. We respectfully submit that this behavior casts doubt on the government's assurances that it will continue to fulfill its obligations under *Brady*, and militates in favor of the Court's intervention.

Despite some recent district court decisions holding otherwise, the instant request for production of the underlying notes/memos/302s does not go unsupported by the law. Where, as here, exculpatory and impeaching statements by witnesses are recorded in notes and other

---

[8] (https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.001)
[updated January 2020]

materials, the Second Circuit has required the government to produce those materials to satisfy its *Brady* obligations. For example, the Second Circuit remanded for a new trial where it found a *Brady* violation due to the government withholding altogether an FBI agent's proffer notes that contained exculpatory and impeaching witness statements. *United States v. Triumph Cap. Group, Inc.*, 544 F.3d 149, 161 (2d Cir. 2008) (finding a *Brady* violation where undisclosed notes could" "have been used to negate an element of the charges as well as to impeach the witness's credibility through cross-examination or questioning the FBI agent or the witness's attorney). Santos is similarly disadvantaged by the government's withholding of exculpatory and impeaching material in his pretrial investigations even if the prosecution will eventually provide it.

Other courts have agreed that such underlying material must be disclosed to satisfy the government's *Brady* obligations. *See, e.g., United States v. Anderson*, 36 F. Supp. 2d 1264, 1268 (D. Kan. 1998) ("the government must disclose material and exculpatory information appearing in all FBI rough interview notes to the extent the information does not appear in the FBI 302 reports already disclosed.")

For all these reasons, we respectfully request that the Court Order the government to produce the underlying notes, recordings, memorandums, and/or FD-302 with respect to each of these witnesses' exculpatory statements.

## VII.   THE COURT SHOULD STRIKE PREJUDICIAL SURPLUSAGE FROM THE SUPERSEDING INDICTMENT

Santos moves pursuant to Fed. R. Crim. P. 7(d) to strike specific prejudicial and irrelevant language from the S1 Indictment.

Language in an indictment that "adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may

47

impermissibly enlarge the charges contained in the Indictment returned by the grand jury," may be struck by the Court. *United States v. DePalma*, 461 F. Supp. 778, 798-99 (S.D.N.Y. 1978); *see also United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (A court may strike irrelevant, inflammatory, and prejudicial language from an indictment) (citation omitted); *United States v. Victor Teicher & Co.*, L.P., 726 F. Supp. 1424, 1441 (S.D.N.Y. 1989) ("Where 'language does not add anything to the charges in the indictment and would lead the jury to draw improper inferences regarding other crimes not charged in the indictment, it should be stricken.'")

Here, the S1 Indictment contains highly prejudicial extraneous statements suggesting that Santos engaged in crimes and other wrongdoing unconnected to the crimes with which he is charged.  Specifically:

a.  Paragraph 15:

   i.  This section describes Santos as having devised and executed "*at least*" three fraudulent schemes to obtain money for himself and for the Committee by making "*various*" material misrepresentations and omissions to, "*among others*", the FEC, National Party Committee #1, potential contributors to the Committee, and the public. The use of the terms "at least", "various" and "among others" is overbroad, invites speculation, and thus is highly prejudicial because they are likely to inflame the jury's perception of Santos' character beyond the specific charges.  This broad characterization suggests a general disposition towards fraud and deceit, which may prejudice the jury by implying a criminal propensity.

   ii.  The phrase "among others" is used in describing to whom Santos made material misrepresentations. This phrase can be found in the sentence: "Santos devised and executed at least three fraudulent schemes to obtain money for himself and for the Committee by making various material misrepresentations and omissions to, among others, the FEC, National Party Committee #1, potential contributors to the Committee, and the public." This language is prejudicial and should be struck because it implies that there are additional, unspecified parties affected by Santos' actions, which might lead the jury to infer further wrongdoing not specified in the charges.

      iii.    The use of "among other things" occurs in the broader context of describing the fraudulent schemes, specifically stating: "These schemes involved, *among other things*, falsifying donor information and laundering campaign funds." (emphasis added).  This language is prejudicial because it implies that Santos engaged in other unspecified illegal activities beyond those detailed in the SI.

  b.  Paragraph 16:
      i.    The phrase "among others" in "First, in or about and between December 2021 and November 2022, the defendant [Santos] and Nancy Marks devised and executed a scheme to submit materially false reports to the FEC on behalf of the Committee in which they fraudulently inflated the Committee's fundraising numbers for the purpose of misleading the FEC, National Party Committee #1 and the public, *among others*." (emphasis added).  This phrase "among others" serves no useful purpose and allows the jury to infer the defendant is accused of misleading other entities not specifically charged.

  c.  Paragraph 22:
      i.    The phrase "including, but not limited to" in: "In or about and between December 2021 and January 2022, the defendant [Santos] and Nancy Marks conspired and agreed to falsely inflate the Committee's fundraising totals, *including, but not limited to*, in public filings with the FEC, in order to mislead the FEC, National Party Committee #1 and the public so that [Santos] would qualify for the Program and receive financial and logistical support from National Party Committee #1." (emphasis added).  This phrase "including, but not limited to" is prejudicial and must be struck because it suggests there were other ways the defendant falsely inflated fundraising totals not specifically alleged.

  d.  Paragraph 46:
      i.    The phrase "among others" in: "[Santos] attempted to use the credit card billing information of Contributor #12 to make contributions to the Committee and to the campaign committees of other candidates for elected office in the names of, *among others*…" (emphasis added). This phrase "among others" is highly prejudicial if the government does not identify the "others" because this phrase clearly states that there were other individuals whose names were used not specifically alleged.

e. Paragraph 48:

i. The phrase "including individuals who had previously contributed to his campaign and his own relatives, among others" in: "Again, in an effort to mask the true source of the funds and to circumvent the Election Act's limits on individual contributions, [Santos] repeatedly masked those fraudulent transactions by using the names of other unwitting individuals, including individuals who had previously contributed to his campaign and his own relatives, *among others*." (emphasis added) This phrase "among others" coupled with using the plural of "individual" again clearly states that there were others whose names were used not specifically alleged.

In similar circumstances, courts in the Second Circuit have stricken words such as "among others," and "among other things" which "serve no useful purpose and allow the jury to draw the inference that the defendant is accused of crimes not charged in the indictment." *United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985); *see also United States v. Brighton Building & Maintenance Co.*, 435 F. Supp. 222, 230 (N.D. Ill. 1977), *aff'd*, 598 F.2d 1101 (7th Cir. 1979); *see also United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (reference in indictment to particular events that "included, but were not limited to, the following" should have been treated as surplusage), *cert. denied*, 450 U.S. 910 (1981).

Accordingly, the Court should strike the surplusage identified above from the S1 Indictment.

## VIII.   MOTION TO PRESERVE

The defendant hereby requests that the Court Order the government to preserve the rough notes and other evidence taken by law enforcement agents during their interviews with all witnesses. *See United States v Marinello*, 2012 US Dist LEXIS 93902, at *7 (WDNY July 6, 2012) ("The defendant has requested the preservation of rough notes and other evidence taken by law enforcement agents involved. The government is directed to preserve such information."). The defense specifically requests that such preservation order include all notes and other

evidence taken from witnesses that supplied *Brady/Giglio* information, including those identified in the governments' letters dated October 27, 2023 and March 14, 2024.

## IX.   RESERVATION OF RIGHTS

In light of the fact that the requested particulars and *Brady* material may have a substantial impact on the instant motions, Santos respectfully requests that the Court permit the defense to file supplemental or additional motions if the facts and circumstances warrant.  For example, if the Court grants Santos' application to have the government identify the particulars of Count 9 and 10 (the alleged credit card fraud scheme), such particulars will shed light for Santos, and the Court, on the vagueness argument asserted in Section II.  The defense would then request that the Court reserve its decision pending submission of additional briefing to incorporate and apply those identified particulars to the language of Section 1028A.

Further, if the Court grants Santos' application to disclose the underlying *Brady* material concerning its interviews with ███████████ and those reveal additional facts supporting Santos' argument in Section I that Santos' use of the names was only ancillary to, and not the crux of, the alleged party program scheme, the defense would similarly request that the Court reserve its decision pending submission of additional briefing.

This is not an exhaustive list of additional and/or supplemental motions Santos may bring and the defense specifically reserves the right to file others if the circumstances require.

## **CONCLUSION**

For these reasons, Defendant Santos respectfully requests that the Court grant the aforementioned requested relief, and all further relief the Court deems just and proper.

Dated:  May 3, 2024
      New York, New York

**MANCILLA & FANTONE LLP**

By*: /s/ Andrew Mancilla*
Andrew Mancilla, Esq.
260 Madison Avenue – 22nd Floor
New York, New York 10016
Phone: (646) 225-6686
Fax: (646) 655-0269
andrew@law-mf.com

By*: /s/ Robert Fantone*
Robert Fantone, Esq.
robert@law-mf.com

**JOSEPH W. MURRAY, ESQ.**

By: */s/ Joseph Murray*
Joseph Murray, Esq.
185 Great Neck Road, Ste. 461
Great Neck, New York 11021
(646) 838 – 1702
joe@jmurray-law.com

To:  All parties of record via ECF