RCH/AXB/LAZ
F. #2022R01030

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA


    - against –                                           23 CR 197 (S-2) (JS)


GEORGE ANTHONY DEVOLDER SANTOS,
      also known as "George Santos,"

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL RECIPROCAL DISCOVERY
AND MOTIONS IN LIMINE


BREON PEACE                                COREY R. AMUNDSON
United States Attorney                      Chief, Public Integrity Section
Eastern District of New York               U.S. Department of Justice

Ryan C. Harris                             Jacob R. Steiner
Anthony Bagnuola                           John P. Taddei
Laura Zuckerwise                           Trial Attorneys
Assistant U.S. Attorneys                   (Of Counsel)
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

MOTION TO COMPEL .......................................................................................... 2

   I. Santos Has Not Provided Meaningful Reciprocal Discovery to Date ................... 2

   II. Legal Standards ............................................................................................. 3

   III. Argument ..................................................................................................... 5

   IV. Conclusion ................................................................................................... 7

MOTIONS IN LIMINE ......................................................................................... 8

   I. ██████████████████████████████ ................................. 8

      A. ████████████████ ................................................. 8

            1. ████████████ ........................................... 8

            2. ████████████ ....................................... 10

      B. ████████████ ...................................................... 10

      C. ██████████ ........................................................... 12

      D. █████████ ............................................................. 16

   II. The Court Should Permit the Government to Introduce Evidence of Certain Bad Acts .. 17

      A. Background ......................................................................... 17

      B. Legal Standards .................................................................. 18

      C. Application ......................................................................... 21

            1. Misrepresentations as to Santos's Background and Wealth ................ 21

               a. The Party Program Scheme ....................................... 22

               b. Falsified Financial Disclosure Reports ..................... 24

            2. Theft of RISE NY PAC Funds ................................... 27

            3. Rule 403 Balancing Test ............................................. 28

      D. Conclusion ......................................................................... 29

   III. Santos Should Be Precluded from Arguing Vindictive or Selective Prosecution .......... 30

      A. Background ......................................................................... 30

      B. Legal Standards .................................................................. 32

      C. Application ......................................................................... 34

      D. Conclusion ......................................................................... 35

   IV. Santos's Statements Are Admissible During the Government's Case-in-Chief ............ 36

      A. Background ......................................................................... 36

B.    Legal Standards .................................................................. 36

C.    Application ........................................................................ 38

D.    Conclusion ........................................................................ 38

V.    Statements of Santos's Charged Co-Conspirator and Agent Are Admissible ............ 39

A.    Background ........................................................................ 39

B.    Legal Standards .................................................................. 40

C.    Application ........................................................................ 42

D.    Conclusion ........................................................................ 45

V.    Santos Should Be Precluded from Challenging the Authenticity of Documents He Produced, Arguing that Complying with a Subpoena Demonstrates Innocence, or Admitting Documents He Improperly Suppressed ........................................ 46

A.    Background ........................................................................ 46

B.    Legal Standards .................................................................. 47

C.    Argument ........................................................................... 47

VII.   The Court Should Preclude Improper Use of Agent Reports to Impeach Witnesses . 50

A.    Legal Standards .................................................................. 50

B.    Application ........................................................................ 51

VIII.  The Court Should Admit Evidence Related to the SEC Action Against Investment Firm #1 ............................................................... 53

A.    Background ........................................................................ 53

B.    Legal Standards .................................................................. 55

C.    Application ........................................................................ 56

D.    Conclusion ........................................................................ 58

IX.    The Court Should Preclude Evidence and Argument Related to Punishment ............ 59

CONCLUSION ................................................................................. 62

TABLE OF AUTHORITIES

Bordenkircher v. Hayes,
    434 U.S. 357 (1978).................................................................................................. 33

Bourjaily v. United States,
    483 U.S. 171 (1987).................................................................................................. 41

Bryan v. United States,
    524 U.S. 184 (1998).................................................................................................. 55

Fisher v. United States,
    425 U.S. 391 (1976).................................................................................................. 47

In re Terrorist Bombings of U.S. Embassies in E. Afr.,
    552 F.3d 93 (2d Cir. 2008)....................................................................................... 42

Palermo v. United States,
    360 U.S. 343 (1959).................................................................................................. 51

Palmieri v. Defaria,
    88 F.3d 136 (2d Cir. 1996)......................................................................................... 8

SEC v. Harbor City Capital Corp.,
    No. 21 CV 694, 2021 WL 3111587 (M.D. Fla. May 19, 2021) ............................ 54

Shannon v. United States,
    512 U.S. 573 (1994).................................................................................................. 59

Taylor v. Illinois,
    484 U.S. 400 (1988)................................................................................................... 6

United States v. Aceves-Rosales,
    832 F.2d 1155 (9th Cir. 1987) ................................................................................... 5

United States v. Ahaiwe,
    No. 21-2491, 2023 WL 4196954 (2d Cir. June 27, 2023) ...................................... 19

United States v. Almonte,
    956 F.2d 27 (2d Cir. 1992).................................................................................. 50, 51

United States v. Alvarez,
    541 F. App'x 80 (2d Cir. 2013) ............................................................................... 19

United States v. Aminy,
    15 F.3d 258 (2d Cir. 1994)....................................................................................... 20

United States v. Armstrong,
    517 U.S. 456 (1996)............................................................................................ 32, 33

United States v. Ashburn,
    No. 11 CR 303, 2015 WL 588704 (E.D.N.Y. Feb. 11, 2015) ................................ 55

United States v. Avenatti,
    433 F. Supp. 3d 552 (S.D.N.Y. 2020)..................................................................... 33

United States v. Barrow,
    400 F.3d 109 (2d Cir. 2005)......................................................................... 11, 13, 14

United States v. Beech-Nut Nutrition Corp.,
    871 F.2d 1181 (2d Cir. 1989)................................................................................... 44

United States v. Black,
    No. 13-CR-316 (DLI), 2014 WL 5783067 (E.D.N.Y. Nov. 5, 2014) ..................... 37

United States v. Blume,
    967 F.2d 45 (2d Cir. 1992)....................................................................................... 59

United States v. Bracy,
    No. 20-CR-483 (ARR), 2022 WL 17801133 (E.D.N.Y. Dec. 19, 2022) ............................... 59
United States v. Brawner,
    173 F.3d 966 (6th Cir. 1999) .................................................................................................. 8
United States v. Brown, et al.,
    No. 22 CR 87 (JMA) (E.D.N.Y. Mar. 3, 2022) ..................................................................... 31
United States v. Cadet,
    664 F.3d 27 (2d Cir. 2011) .................................................................................................... 20
United States v. Caputo,
    808 F.2d 963 (2d Cir. 1987) ............................................................................................ 20, 21
United States v. Carboni,
    204 F.3d 39 (2d Cir. 2000) .......................................................................................... 19, 21, 27
United States v. Carlton,
    534 F.3d 97 (2d Cir. 2008) .................................................................................................... 27
United States v. Chem. Found., Inc.,
    272 U.S. 1 (1926) .................................................................................................................. 33
United States v. Cooper,
    No. 19-CR-159 (ARR), 2019 WL 5394622 (E.D.N.Y. Oct. 22, 2019) ................................. 37
United States v. Coplan,
    703 F.3d 46 (2d Cir. 2012) .................................................................................................... 55
United States v. Crinel,
    No. 15 CR 61, 2016 WL 5779778 (E.D. La. Oct. 4, 2016) ..................................................... 4
United States v. Crowder,
    325 F. Supp. 3d 131 (D.D.C. 2018) ......................................................................................... 4
United States v. Curly,
    639 F.3d 50 (2d Cir. 2011) .................................................................................................... 19
United States v. Davidson,
    308 F. Supp. 2d 461 (S.D.N.Y. 2004) .................................................................................... 37
United States v. Delance,
    694 F. App'x 829 (2d Cir. 2017) ........................................................................................... 56
United States v. Douglas,
    415 F. App'x 271 (2d Cir. 2011) ........................................................................................... 20
United States v. Eisen,
    974 F.2d 246 (2d Cir. 1992) .................................................................................................. 44
United States v. Ellison,
    704 F. App'x 616 (9th Cir. 2017) ............................................................................................ 4
United States v. Fakih,
    264 F. App'x 78 (2d Cir. 2008) ............................................................................................. 58
United States v. Fares,
    978 F.2d 52 (2d Cir. 1992) .................................................................................................... 33
United States v. Farhane,
    634 F.3d 127 (2d Cir. 2011) .................................................................................................. 32
United States v. Fawwaz,
    691 F. App'x 676 (2d Cir. 2017) ........................................................................................... 38
United States v. Flom,
    256 F. Supp. 3d 253 (E.D.N.Y. 2017) .................................................................................... 28

United States v. Geaney,
    417 F.2d 1116 (2d Cir. 1969)........................................................................ 44

United States v. Goldstein,
    No. 21 CR 550, 2023 WL 3662971 (E.D.N.Y. May 25, 2023) .................................. 40, 43, 48

United States v. Gomez,
    210 F. Supp. 2d 465 (S.D.N.Y. 2002)................................................................ 11

United States v. Goodwin,
    467 U.S. 368 n.19 (1982)............................................................................ 33

United States v. Greenfield,
    831 F.3d 106 (2d Cir. 2016)......................................................................... 47

United States v. Gupta,
    747 F.3d 111 (2d Cir. 2014)..................................................................... passim

United States v. Heine,
    No. 15 CR 238, 2017 WL 4423408 (D. Or. Oct. 5, 2017)....................................... 5

United States v. Hill,
    658 F. App'x 600 (2d Cir. 2016) .................................................................... 37

United States v. Hiss,
    185 F.2d 822 (2d Cir. 1950)......................................................................... 11

United States v. Howell,
    231 F.3d 615 (9th Cir. 2000) ......................................................................... 3

United States v. Hsia,
    No. 98-57, 2000 WL 195067 (D.D.C. Jan. 21, 2000)............................................. 4, 5

United States v. Ilori,
    No. 21 CR 746 (MKV), 2022 WL 2452258 (S.D.N.Y. July 5, 2022) ........................... 41

United States v. Inniss,
    No. 18-CR-134 (KAM), 2019 WL 6999912 (E.D.N.Y. Dec. 20, 2019) ...................... 60, 61

United States v. James,
    712 F.3d 79 (2d Cir. 2013)........................................................................... 42

United States v. Johnson,
    507 F.3d 793 (2d Cir. 2007)......................................................................... 37

United States v. Koh,
    199 F.3d 632 (2d Cir. 1999)......................................................................... 33

United States v. Kurland,
    No. 20 CR 306 (S-1) (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022) ................. 41

United States v. Leonardi,
    623 F.2d 746 (2d Cir. 1980)....................................................................... 50, 52

United States v. Liberto,
    565 F. Supp. 3d. 739 (D. Md. 2021) ................................................................ 4, 5

United States v. Lighte,
    782 F.2d 367 (2d Cir. 1986)......................................................................... 57

United States v. Loera,
    No. 09 CR 466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) ....................... 45

United States v. Maldonado-Rivera,
    922 F.2d 934 (2d Cir. 1990)......................................................................... 41

United States v. Malka,
    602 F. Supp. 3d 510 (S.D.N.Y. 2022).......................................................... 8, 35, 41, 42

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982)..............................................................36, 37
United States v. Matos,
    No. 22-691, 2024 WL 1003292 (2d Cir. May 8, 2024)..........................20, 21, 24
United States v. Mauro,
    80 F.3d 73 (2d Cir. 1996)..............................................................57, 58
United States v. McDonald,
    756 F. App'x 964 (11th Cir. 2018) ..................................................28
United States v. McPartland,
    81 F.4th 101 (2d Cir. 2023) ..........................................................56
United States v. Mezzanatto,
    513 U.S. 196 (1995)..............................................................10, 11, 12
United States v. Mills,
    895 F.2d 897 (2d Cir. 1990)..........................................................20, 27
United States v. Mohamed,
    No. 18 CR 603, 2020 WL 4932227 (E.D.N.Y. Aug. 24, 2020) ........................55, 57
United States v. Moon,
    718 F.2d 1210 (2d Cir. 1983)..........................................................34
United States v. Moore,
    208 F.3d 577 (7th Cir. 2000) ........................................................6
United States v. Motovich,
    No. 21-CR-497 (WFK), 2024 WL 3303723 (E.D.N.Y. July 2, 2024) ....................40, 43
United States v. Ndubuisi,
    460 F. App'x 436 (5th Cir. 2012) ....................................................28
United States v. Nieves,
    354 F. App'x 547 (2d Cir. 2009) ....................................................36
United States v. Paulino,
    445 F.3d 211 (2d Cir. 2006)..........................................................21, 28
United States v. Pedroza,
    750 F.2d 187 (2d Cir. 1984)..........................................................37
United States v. Pitre,
    960 F.2d 1112 (2d Cir. 1992)..........................................................21
United States v. Rioux,
    97 F.3d 648 (2d Cir. 1996)..........................................................40
United States v. Rivera,
    22 F.3d 430 (2d Cir. 1994)..........................................................41
United States v. Roldan-Zapata,
    916 F.2d 795 (2d Cir. 1990)..........................................................21, 28
United States v. Rosado,
    728 F.2d 89 (2d Cir. 1984)..........................................................32, 35, 59
United States v. Rosemond,
    841 F.3d 95 (2d Cir. 2016)..........................................................11, 14
United States v. Saint Clair,
    No. 22-2100-cr, 2024 WL 413422 (2d Cir. Feb. 5, 2024) ............................20
United States v. Saldarriaga,
    204 F.3d 50 (2d Cir. 2000)..........................................................35

United States v. Sanders,
    211 F.3d 711 (2d Cir. 2000)...................................................................... 32, 33
United States v. Saneaux,
    365 F. Supp. 2d 488 (S.D.N.Y. 2005)............................................................. 44
United States v. Smith,
    No. 22-CR-352, 2023 WL 8611259 (S.D.N.Y. Dec. 13, 2023) ............................ 47
United States v. Snype,
    441 F.3d 119 (2d Cir. 2006)......................................................................... 56
United States v. Spillone,
    879 F.2d 514 (9th Cir. 1989) .......................................................................... 6
United States v. Stewart,
    590 F.3d 93 (2d Cir. 2009).......................................................................... 35
United States v. Tarantino,
    846 F.2d 1384 (D.C. Cir. 1988) .................................................................... 41
United States v. Thai,
    29 F.3d 785 (2d Cir. 1994).......................................................................... 42
United States v. Thomas,
    116 F.3d 606 (2d Cir. 1997)......................................................................... 35
United States v. Tracy,
    12 F.3d 1186 (2d Cir. 1993)......................................................................... 45
United States v. Urena,
    659 F.3d 903 (9th Cir. 2011) .......................................................................... 6
United States v. Vallejos,
    742 F.3d 902 (9th Cir. 2014) ........................................................................ 38
United States v. Velez,
    354 F.3d 190 (2d Cir. 2004)......................................................................... 11
United States v. Watson,
    No. 23-CR-82 (EK), 2024 WL 3443459 (E.D.N.Y. July 17, 2024) ...................... 48
United States v. Young,
    248 F.3d 260 (4th Cir. 2001) ....................................................................... 3-4
United States v. Zackson,
    12 F.3d 1178 (2d Cir. 1993)............................................................... 20, 24, 27


Statutes

18 U.S.C. § 641 ......................................................................................... 14, 53
18 U.S.C. § 1001 ................................................................................... 14, 53, 55
18 U.S.C. § 1343 ............................................................................................. 53
18 U.S.C. § 3500 ....................................................................................... 50, 51

Rules

Federal Rule of Criminal Procedure 11 ........................................................................ 10
Federal Rule of Criminal Procedure 16 .................................................................. passim
Federal Rule of Criminal Procedure 26 ........................................................................ 50
Federal Rule of Evidence 104........................................................................................ 41
Federal Rule of Evidence 401.................................................................................. 55, 60
Federal Rule of Evidence 402........................................................................ 32, 55, 59, 60
Federal Rule of Evidence 403 ................................................................................... passim
Federal Rule of Evidence 404.................................................................................. 17, 19
Federal Rule of Evidence 410.................................................................................. 10, 12
Federal Rule of Evidence 613.................................................................................. 50, 51
Federal Rule of Evidence 801 ................................................................................... passim

Other Authorities

H.R. 878,
    118th Cong., (1st Sess. 2023) .................................................................................. 59

PRELIMINARY STATEMENT

In advance of the trial scheduled for September 9, 2024, in the above-referenced matter, the government respectfully: (a) moves the Court to compel the defendant George Anthony Devolder Santos ("Santos") to produce to the government all undisclosed materials covered by the reciprocal discovery requirements of Federal Rule of Criminal Procedure 16(b)(1); and (b) moves in limine that the Court:

(I)    ████████████████████████████████████████████

(II)   admit certain other-acts evidence against Santos as direct evidence of the charged crimes, evidence of other acts inextricably intertwined with evidence of the charged crimes, or, in the alternative, evidence admissible pursuant to Federal Rule of Evidence 404(b);

(III)  preclude Santos from arguing at trial that he is being subjected to a vindictive or selective prosecution;

(IV)   admit statements by Santos as those of a party-opponent under Federal Rule of Evidence 801(d)(2)(A), and preclude any attempt by Santos to introduce his own prior hearsay statements;

(V)    admit statements made by Nancy Marks—Santos's co-conspirator and agent—pursuant to Federal Rules of Evidence 801(d)(2)(D) and 801(d)(2)(E);

(VI)   preclude Santos from challenging the authenticity of documents he produced, arguing that complying with a subpoena demonstrates innocence, or admitting documents he improperly suppressed;

(VII)  preclude improper use of law enforcement agent reports to impeach witnesses;

(VIII) admit evidence of Santos's awareness of a U.S. Securities and Exchange Commission ("SEC") proceeding against Investment Firm #1; and

(IX)   preclude Santos from introducing evidence or argument about past consequences or potential punishment should he be convicted.

For the reasons that follow, the Court should grant these requests in their entirety.

1

<u>MOTION TO COMPEL</u>

The government respectfully requests that the Court compel Santos to produce to the government all undisclosed materials covered by the reciprocal discovery requirements of Federal Rule of Criminal Procedure 16(b)(1) by August 26, 2024.  That includes materials that Santos anticipates he may use during cross-examination of government witnesses to support his case-in-chief.  The government further requests that Santos be precluded from admitting or otherwise using at trial any materials not produced to the government by August 26, 2024, absent a showing of good cause.

I.    <u>Santos Has Not Provided Meaningful Reciprocal Discovery to Date.</u>

In May 2023, a grand jury returned the original indictment in this case, charging Santos with multiple felony offenses.  <u>See generally</u> ECF No. 1.  In June 2023, the government provided Santos with tens of thousands of pages of documents and other materials in discovery, including materials covered by Federal Rule of Criminal Procedure 16.  In correspondence accompanying the production, the government informed defense counsel that acceptance of the government's production triggered Santos's reciprocal obligations under Federal Rule of Criminal Procedure 16(b).  The government made supplemental discovery productions to Santos in September 2023, October 2023, December 2023, January 2024, March 2024, April 2024, May 2024, June 2024, and July 2024, each time reminding Santos of his reciprocal discovery obligations and renewing the government's request for covered materials.

To date, the government has provided Santos with more than 1.3 million pages of records.  Santos, on the other hand, has only produced five pages of records since this matter was charged.[1]

In a recent production, on June 26, 2024, the government informed Santos that if, by July 5, 2024, he did not provide the requested undisclosed materials, or inform the government that he has no such materials, the government would file a motion to compel their production before this Court.  Santos has neither responded to the government's request nor provided any materials.

## II.    Legal Standards

Federal Rule of Criminal Procedure 16(b) provides:

> If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if: (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A).  The objective of Rule 16 is to "eliminate the idea that a criminal trial is a sporting contest in which a game of cat and mouse is acceptable." United States v. Howell, 231 F.3d 615, 626 (9th Cir. 2000).

A defendant cannot avoid reciprocal discovery obligations by simply claiming that non-disclosed materials are intended to be used in the cross-examination of government witnesses. "If 'case-in-chief' exclusively covered materials introduced after the government rests, then whenever defendants present substantive, non-impeachment evidence during cross-examination to

---

[1] As discussed more fully below, the defendant produced approximately 425 pages of records in response to grand jury subpoenas prior to charges being brought in this matter.

3

prove their case—a 'standard modern trial practice' that can hardly be abandoned—such evidence would not be subject to Rule 16(b) pretrial disclosure." United States v. Crowder, 325 F. Supp. 3d 131, 136 (D.D.C. 2018) (internal citation omitted). Therefore, counsel must turn over all substantive evidence that the defendant intends to introduce if offered to support its case-in-chief, even if offered during cross-examination. See id. ("[T]o permit defendants to evade pretrial disclosure simply by presenting much (or all) of their case-in-chief before the government rests would frustrate the practical intentions behind Rule 16: to avoid unfair surprise and unwarranted delay by providing both the government and the defense with a broad, reciprocal, right to discovery."); United States v. Hsia, No. 98-57, 2000 WL 195067, at *1-2 (D.D.C. Jan. 21, 2000); United States v. Crinel, No. 15 CR 61, 2016 WL 5779778, at *4 (E.D. La. Oct. 4, 2016) (holding that "a defendant's case-in-chief includes any documents a defendant intends to use during cross-examination of a government witness except for the purpose of impeachment"); see also United States v. Ellison, 704 F. App'x 616, 625 (9th Cir. 2017) ("The district court properly refused to limit Appellants' production obligation to those exhibits they planned to introduce with their own witnesses by refusing to cabin their 'case-in-chief' to the period after which they called their first witness at trial, because a defendant may establish his defense by cross-examining the government's witnesses.").

Likewise, a defendant cannot avoid his discovery obligations by claiming that non-disclosed materials will be offered partially for impeachment purposes if those materials are, in truth, primarily offered to support the defendant's case-in-chief. "If defendant seeks to offer an item [at trial] which has not been disclosed, the court will exclude the item if its primary purpose goes to her case-in-chief even if it is purportedly offered for impeachment." United States v. Liberto, 565 F. Supp. 3d 739, 745 (D. Md. 2021) (citations omitted); see United States v. Young,

248 F.3d 260, 269-70 (4th Cir. 2001) (affirming district court's exclusion of audiotapes that the defendant attempted to introduce during cross-examination of a government witness because, in truth, the defendant "<u>intended</u> to offer the tapes not for impeachment purposes, but as 'evidence in chief'"); <u>Hsia</u>, 2000 WL 195067, at *2 (stating that "evidence [introduced] through cross-examination that the Court finds is part of [defendant's] case-in-chief" is subject to Rule 16(b) disclosure); <u>United States v. Heine</u>, No. 15 CR 238, 2017 WL 4423408, at *8 (D. Or. Oct. 5, 2017) ("Evidence that is offered primarily to <u>prove or disprove</u> an element of a claim or defense is not evidence that is offered to impeach the credibility of a witness and thus is not impeachment evidence; it must be disclosed in accordance with Rule 16.").

Furthermore, a defendant cannot simply reserve the right to present at trial any of the discovery the government has provided.  The reciprocal discovery requirement extends to any materials covered by Rule 16, even if they may already be in the government's possession.  <u>See Liberto</u>, 565 F. Supp. 3d at 745 (stating that "courts have considered and rejected the argument that the fact that the government already possesses certain material means that the defendant has no further obligation under Rule 16(b)"); <u>Hsia</u>, 2000 WL 195067, at *1 ("The fact that the government already is in possession of the documents does not eliminate defendant's duty to disclose them.").  Moreover, there is a continuing duty to "promptly disclose" discoverable information once a party discovers it.  Fed. R. Crim. P. 16(c); <u>see United States v. Aceves-Rosales</u>, 832 F.2d 1155, 1157 (9th Cir. 1987) (affirming exclusion of a report because defense counsel failed to "notify the court or the Government of the existence of the record <u>promptly</u>").

III.   <u>Argument</u>

Despite the government's ongoing compliance with its disclosure obligations under Rule 16(a)(1)(E), and the government's repeated requests for reciprocal discovery, Santos has not

produced meaningful reciprocal discovery and may be withholding evidence that he intends to use in his case-in-chief.  Such a maneuver would result in the disclosure of such evidence for the first time at trial during the cross-examination of government witnesses, such as potential witnesses Santos knows well, including his former staff, his friends, or his family.  Under Rule 16(d), there are several remedies the Court could fashion to avoid such unfair surprise.

Where "a party fails to comply with" Rule 16, a court may enter any "order that is just under the circumstances," including, but not limited to, "order[ing] that party to permit the discovery or inspection," or "prohibit that party from introducing the undisclosed evidence."  Fed. R. Crim. P. 16(d)(2).  In fashioning such an order, a district court "has broad discretion to fashion [appropriate] remedies," United States v. Spillone, 879 F.2d 514, 522 (9th Cir. 1989), including the "unquestioned discretionary power to exclude evidence that should have been produced in reciprocal discovery," United States v. Urena, 659 F.3d 903, 908 (9th Cir. 2011); see also United States v. Moore, 208 F.3d 577, 578 (7th Cir. 2000) ("[C]ourts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases.") (citing Taylor v. Illinois, 484 U.S. 400 (1988)).

The government respectfully requests that the Court compel Santos to produce to the government by August 26, 2024, all undisclosed materials covered by the reciprocal discovery requirements of Federal Rule of Criminal Procedure 16(b)(1).  That includes all materials that the defense anticipates it will use during cross-examination of government witnesses to support its case-in-chief, including materials that may have been included in the government's discovery productions to the defense.  The government further asks the Court to preclude Santos from

admitting or using at trial any evidence that he has not produced to the government by August 26, 2024, absent a showing of good cause.

IV.    <u>Conclusion</u>

Based on the foregoing, the government requests that the Court compel Santos to produce reciprocal discovery pursuant to Federal Rule of Criminal Procedure 16(b)(1) no later than August 26, 2024.

<u>MOTIONS IN LIMINE</u>

Pre-trial adjudication of motions <u>in</u> <u>limine</u> "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." <u>United States v. Malka</u>, 602 F. Supp. 3d 510, 527-28 (S.D.N.Y. 2022) (quoting <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996)). Such motions allow the Court "to narrow the issues remaining for trial and to minimize disruptions at trial." <u>United States v. Brawner</u>, 173 F.3d 966, 970 (6th Cir. 1999). For the reasons set forth below, each of the government's motions <u>in</u> <u>limine</u> should be granted in their entirety.

I.   ██████████████████████████████████
     ██████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████
     ██   ████████████████████
     ██  ██████████████████
     ██████████████████████████████████████████
██████████████████████████████████████████████████







II.   The Court Should Permit the Government to Introduce Evidence of Certain Bad Acts

The government next moves in limine for the Court to permit the government to introduce evidence of certain prior bad acts or uncharged conduct at trial as direct evidence of the charged crimes, evidence of other acts inextricably intertwined with evidence of the charged crimes, or, in the alternative, evidence admissible pursuant to Federal Rule of Evidence 404(b).

A.   Background

On April 11, 2024, the government provided Santos with written notice that, at his upcoming trial, the government would seek to introduce evidence showing certain prior bad acts and/or uncharged conduct as direct evidence of the charged crimes, evidence of other acts inextricably intertwined with evidence of the charged crimes, and, in the alternative, evidence admissible pursuant to Federal Rule of Evidence 404(b) demonstrating Santos's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident in perpetrating the criminal conduct alleged in the Indictment.  See Fed. R. Evid. 404(b)(2) (listing valid non-propensity bases for admitting other-acts evidence) & (b)(3) (requiring the government to provide reasonable notice of any such evidence in writing before trial).  The government "articulated in the notice the permitted purpose[s] for which [it] intends to offer the evidence and the reasoning that supports it."  Fed. R. Evid. 404(b)(3)(B).[3]  Specifically, the government advised Santos that it intended to offer evidence that on numerous occasions, including during the course of the charged conduct, he: (a) falsely claimed to have graduated from Baruch College; (b) falsely claimed to have graduated from New York University; (c) falsely claimed to have previously been employed at Citigroup; (d) falsely claimed to have been employed at Goldman Sachs; (d) falsely

_____

[3] A copy of the government's April 11, 2024, disclosure is attached for the Court's reference as Exhibit C.

claimed that Santos's company, the Devolder Organization LLC, was a family-run firm with approximately $80 million assets under management; (e) falsely claimed that he owned or was renovating homes or other real property in the Eastern District of New York; (f) falsely claimed to have earned approximately $400,000 in 2019; (g) falsely claimed that he and/or unspecified members of his family owned multiple rental properties in New York State; (h) made false representations regarding the financial profile of the Devolder Organization LLC in a business deposit account application submitted to Citibank; and (i) improperly spent funds belonging to RISE NY PAC on personal expenses.[4] See Ex. C.

The other bad acts and/or uncharged conduct that the government addressed in its letter dated April 11, 2024, largely relates to Santos's falsification of his background and financial profile, much of which is well documented in the public domain. As explained below, evidence of these prior, uncharged acts is admissible at trial as direct evidence of the crimes charged, evidence inextricably intertwined with evidence of the charged crimes, or, in the alternative, evidence admissible pursuant to Federal Rule of Evidence 404(b).

B.    Legal Standards

In general, Federal Rule of Evidence 404(b) bars the introduction of evidence of prior bad acts for the purpose of proving a defendant's propensity to commit crimes—that is, "to prove a person's character in order to show that on a particular occasion the person acted in

---

[4] The government also advised Santos that it intended to introduce evidence that he failed to file federal or state tax returns for the tax years 2020, 2021, and 2022. The government has elected not to present such evidence in its case in chief at trial, and accordingly does not address this issue here. See Ex. C. In addition, in a subsequent letter dated May 31, 2024, the government similarly advised Santos that it intended to introduce evidence of Santos's misuse of the credit cards of other individuals outside the time period alleged in the Indictment. The government has also elected not present such evidence at trial, and accordingly does not address this issue here.

accordance with the character." Fed. R. Evid. 404(b)(1). However, Rule 404(b) does not preclude evidence of a defendant's prior acts that "arose out of the same transaction or series of transactions as the charged offense," so long as those acts are "inextricably intertwined with the evidence regarding the charged offense," or are "necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (internal citation and quotation marks omitted). In those circumstances, such evidence is intrinsic to the charged crimes.

Rule 404(b) also explicitly allows for the introduction of such evidence for "another purpose" and includes a list of valid, non-propensity purposes for which evidence of a defendant's prior bad acts may be admitted. See Fed. R. Evid. 404(b)(2). Those include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" in connection with the conduct charged. Id. This list "is not exhaustive," United States v. Curly, 639 F.3d 50, 57 (2d Cir. 2011), and the Second Circuit "has adopted an 'inclusionary' approach" that "allows such evidence to be admitted for *any* purpose other than to demonstrate criminal propensity," United States v. Alvarez, 541 F. App'x 80, 86 (2d Cir. 2013) (summary order) (emphasis added, internal citation and quotation marks omitted); see also United States v. Ahaiwe, No. 21-2491, 2023 WL 4196954, at *3 (2d Cir. June 27, 2023) (summary order) (this Circuit "admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character") (emphasis added, internal citation and quotation marks omitted).

It is thus well-settled that other-act evidence is admissible under Rule 404(b) to establish the defendant's state of mind in connection with the charged crimes. See Curly, 639 F.3d at 57; Ahaiwe, 2023 WL 4196954, at *3 (in a prosecution for aggravated identity theft and conspiracy to commit bank fraud and money laundering, district court properly admitted evidence that defendant stole the identities of multiple victims beyond those charged in the indictment as

"relevant to [his] intent to engage in and knowledge of the [charged] money laundering and bank fraud conspiracies").  That is particularly true when the defendant "claims that his conduct has an innocent explanation," in which case "prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."  United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993); see United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987) ("Where intent to commit the crime charged is clearly at issue, evidence of prior similar acts may be introduced to prove that intent."); accord United States v. Mills, 895 F.2d 897, 907 (2d Cir. 1990) (affirming district court's admission of other-acts evidence because evidence of other bad acts "may be admitted at trial to show that a defendant who claims that his conduct had an innocent explanation had the intent to commit the offense"); United States v. Matos, No. 22-691, 2024 WL 1003292, at *2 (2d Cir. May 8, 2024) (summary order) (holding that evidence of defendant's past bad acts admissible to rebut defense theory that defendant deferred to older, more experienced coconspirators).

For purposes of Rule 404(b), the "government is required to establish only a similarity or some connection to establish that a prior act is relevant."  United States v. Douglas, 415 F. App'x 271, 273 (2d Cir. 2011) (summary order) (quotation marks omitted).  In that regard, "similarity" does not require "synonymity," United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) (quotation marks omitted), and other-acts evidence "need not be identical to the charged conduct" so long as it "provides a reasonable basis for inferring knowledge or intent,'" United States v. Saint Clair, 2024 WL 413422, at *5 (2d Cir. Feb. 5, 2024) (quoting United States v. Cadet, 664 F.3d 27, 32-33 (2d Cir. 2011)).  And such "evidence of prior or similar acts may be introduced during the government's case-in-chief, 'rather than waiting until the conclusion of the

defendant's case,'" United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting Caputo, 808 F.2d at 968).

While the Court must be mindful to exclude unfairly prejudicial evidence under Rule 403 when necessary, evidence that is otherwise admissible under Rule 404(b) should not be excluded unless it "involve[s] conduct more inflammatory than the charged crime." United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (exclusion inappropriate where prior conduct is not "any more sensational or disturbing than the crimes with which" the defendant is currently charged). The Court "has 'wide discretion' in determining what falls within the scope of (and is inadmissible under) Rule 404(b)." Matos, 2024 WL 1003292, at *1 (quoting Carboni, 204 F.3d at 44).

C.    Application

Applying these standards, the Court should preliminarily rule that evidence of the other bad acts and/or uncharged crimes outlined above as to Santos's background and as to his misuse of RISE NY PAC's funds is admissible for valid, non-propensity purposes under Rule 404(b), or, alternatively, because it is direct evidence of the charged crimes, evidence of other acts inextricably intertwined with evidence of the charged crimes, or, in the alternative, evidence admissible pursuant to Federal Rule of Evidence 404(b).

1.    Misrepresentations as to Santos's Background and Wealth

Santos's curated (and false) public persona was central to his congressional campaign and related political activities—he portrayed himself as a well-educated and independently wealthy financial professional, while simultaneously claiming that his family boasted an expansive real estate portfolio and operated a family office with $80 million in assets under management. At Santos's trial, the government intends to establish that these projections

of wealth were fabricated and that Santos deliberately leveraged them to perpetrate the criminal schemes outlined in the Indictment. At a minimum, this is heartland 404(b) evidence.

      a.     <u>The Party Program Scheme</u>

For example, Santos is charged with participating in a conspiracy with his campaign treasurer, Nancy Marks, to falsify reports submitted to the Federal Election Commission ("FEC") on behalf of his principal campaign committee's (the "Committee"), Devolder-Santos for Congress. <u>See</u> S-2 at ¶ 16. Those reports fraudulently inflated the Committee's fundraising numbers to allow Santos to qualify for financial and logistical support from National Party Committee #1. <u>See id.</u> As alleged in the Indictment, one way that Santos inflated his fundraising numbers in these FEC reports was by falsely reporting that Santos had personally loaned $500,000 to his Committee. <u>See id.</u> ¶ 38.

Santos's purported ability to self-fund his campaign was a material factor in National Party Committee #1's decision to support his candidacy. <u>See id.</u> Thus, in presentations and communications with National Party Committee #1 and in a quarterly submission to the FEC, the Committee reported that Santos had loaned the committee $500,000, when, in fact, he had not (and, in truth, did not have the ability to do so). <u>See id.</u> ¶ 32. In this regard, as alleged in the Indictment, on or about March 21, 2022, Santos caused agents of his Committee to deliver a "Path to Victory" presentation to National Party Committee #1, which falsely represented to National Party Committee #1 staff members that Santos was loaning the Committee $500,000 during the first quarter of 2022. <u>See id.</u> The presentation listed as a "Key Factor" Santos's "[p]ersonal and political capital that will allow for a fully-funded operation." <u>See id.</u> ¶ 35. Thereafter, on or about

April 15, 2022, the Committee submitted the April 2022 Quarterly Report to the FEC, falsely reporting that Santos had loaned his Committee $500,000 on March 31, 2022.  See id. ¶ 38.

Against that backdrop, evidence that Santos on other occasions inflated his own financial condition and that of Devolder Organization, ascribing his purported financial success, in part, to a fabricated educational and professional background, is relevant to establish his motive, intent, plan, knowledge, absence of mistake, and lack of accident in perpetrating the Party Program Scheme.  Such evidence goes to the heart of Santos's criminal intent insofar as he is alleged to have leveraged his public projections of wealth to lend legitimacy to the notion that he was capable of self-funding his campaign and, relatedly, that he had wealthy family members who could reliably contribute to the campaign.  Indeed, as alleged in the Indictment, another way that Santos manipulated his Committee's fundraising numbers was by falsely reporting to the FEC that family members of Santos and Marks had made significant financial contributions to the Committee, when in fact they had not.  See id. ¶¶ 16, 23.

The relevance of other-acts evidence to establish the Party Program Scheme is especially apparent since Santos is not expected to seriously contest that the data contained in the challenged FEC reports is false.  Rather, Santos has already begun to place blame for the Party Program Scheme at Marks's feet alone, to minimize his involvement and to profess that he himself had an innocent intent.  In a February 16, 2023 media interview, for example, Santos distanced himself from the preparation and filing of his campaign's FEC reports, stating that he "[c]an't speak for what the fiduciary [i.e., Marks] and the campaign did or didn't do."  Fox 5 New York, George Santos talk about 'enormous inquisition' into his finances at 2:45-3:03, YOUTUBE (February 16, 2023), https://www.youtube.com/watch?v=1NTfPsQUemU, last visited August 1, 2024.  Similarly, in a September 12, 2023, media interview, Santos stated that "the burden of that

entire [FEC] report is not on me, I hire a fiduciary like every single politician and every mistake made there . . . it's not me, I'm a first time Member of Congress, you know I ran twice only in my entire life, I did not know what was going on."  CNN, GOP Rep George Sants' Contentious Interview On CNN's Outfront w/ Erin Burnett at 10:56-11:20, YOUTUBE (September 12, 2023), https://www.youtube.com/watch?v=nDYn_vthyQ8, last visited August 1, 2024.  Santos continued, "[T]he reality is this is all the doing of a former fiduciary who had a dereliction of her duty and service and a rupture of her contract with my campaign by just being absolutely sloppy and inexperienced on everything and anything that she did when it came down to my campaign finances."  Id. at 11:26-11:45.

Under these circumstances, where Santos has disputed his involvement in the material misrepresentations at issue in the Party Program Scheme and "claim[ed] that his conduct has an innocent explanation," other-act evidence is "admissible to prove that [Santos] acted with the state of mind necessary to commit the offense charged."  Zackson, 12 F.3d at 1182; see also Matos, 2024 WL 1003292, at *2 (holding that evidence of defendant's past bad acts admissible to rebut defense theory that defendant deferred to older, more experienced coconspirators).  The government should be entitled to address this mischaracterization of Santos's involvement and intent by demonstrating that he repeatedly propped up the misrepresentations being made as part of the Party Program Scheme through other lies regarding his education, professional background, and personal wealth that made the ultimate misrepresentations to the FEC and National Party Committee #1 plausible at first glance.

b.   Falsified Financial Disclosure Reports

Santos is also charged with filing a materially false and fraudulent Financial Disclosure Report with the U.S. House of Representatives in 2022.  Specifically, as alleged in the

Indictment, on or about September 6, 2022, in connection with his 2022 House campaign, Santos filed a report in which he vastly inflated his assets and income, falsely certifying that, during the reporting period: (a) his earned income consisted of $750,000 in salary from Devolder Organization; (b) his unearned income included dividends from Devolder Organization valued at between $1,000,001 and $5,000,000; (c) he had no compensation exceeding $5,000 from a single source in which he had an ownership interest; (d) he owned a checking account with deposits totaling between $100,001 and $250,000; and (e) he owned a savings account with deposits totaling between $1,000,001 and $5,000,000.  See S-2 at ¶ 64.  As Santos knew, however, those assertions were false, as he had not received from Devolder Organization the reported amounts of salary or dividends and, during the reporting period, he did not maintain checking or savings accounts with deposits in the reported amounts.  See id. ¶ 65.  In addition to grossly overstating his wealth, moreover, Santos's Financial Disclosure Report concealed $28,107 he had earned from Investment Firm #1—an entity that was under federal investigation for securities fraud—and approximately $20,304 in unemployment insurance benefits from the New York State Department of Labor.  See id.

Santos's vast inflation of his wealth and his relatedly fabricated educational and professional background is relevant to this conduct because it was used to hide and make believable his lies to the House.  As noted above, Santos's false public persona was central to his congressional campaign and related political activities, memorialized on his campaign website and espoused repeatedly by him in media interviews during the campaign.  Maintaining the false projections of wealth and professional accomplishments that had defined his candidacy provided a motive to falsify his 2022 Financial Disclosure Report.  And evidence that Santos had, on other occasions, fabricated his educational and employment history in a manner that was consistent with

the falsehoods contained in his 2022 Financial Disclosure Report is admissible to establish Santos's intent, plan, knowledge, absence of mistake, and lack of accident in perpetrating that scheme.

Most significantly, the government anticipates that Santos's primary defense regarding his 2022 Financial Disclosure Report will not be to argue that the representations made in that filing were accurate. Rather, the government anticipates that Santos's primary defense will be that any inaccuracies in the 2022 Financial Disclosure Report were innocent mistakes made by Santos when he attempted in good faith to accurately complete the submission. Indeed, Santos has made it quite clear that his intent is to argue innocent mistake. For example, in an interview with CNN on November 5, 2023, when asked about his 2022 Financial Disclosure Report, Santos stated the following: "Were there mistakes made on those forms? Now, I know there were. Was I, were they malicious? No. And I'm a new candidate. And I'm sorry that, like, mistakes were made. But it's another—Here's another thing: Every time somebody suspects there's a mistake on your Ethics Report, you know what happens? The Ethics Committee reaches out and says, 'Hey, this looks funky.' Guess what happened? That never happened." CNN, <u>CNN reporter confronts George Santos about his lies</u>, at 7:38-8:02,, YOUTUBE (Nov. 5, 2023), https://www.youtube.com/watch?v=sdfaG6QY9pM, last visited August 1, 2024. When the interviewer at CNN followed up to ask whether Santos acknowledged that mistakes were made, Santos responded: "I've acknowledged that. Not my income, on the forms. I've acknowledged that. . . . I didn't understand the forms. That's just plain and simple." <u>Id.</u> at 8:04-15. Here, where Santos has made clear in his public statements that his position is his conduct has an innocent explanation, the government's evidence of other bad acts and/or uncharged conduct should be admitted "to prove that [Santos] acted with the state of mind necessary to commit the offense

26

charged." Zackson, 12 F.3d at 1182; Mills, 895 F.2d at 907 (affirming district court's admission of other-acts evidence where defendant claimed that "his conduct had an innocent explanation" because he lacked the "intent" to commit the offense).

2.    Theft of RISE NY PAC Funds

Evidence demonstrating that Santos used Company #1's bank accounts to funnel funds from RISE NY PAC contributors into his own pockets is inextricably intertwined with the conduct charged in the Indictment, because it shares the same modus operandi as charged conduct, specifically that related to the Company #1 Fraud Scheme and the Credit Card Fraud Scheme charged in the Indictment. See Carboni, 204 F.3d at 44; United States v. Carlton, 534 F.3d 97, 101-02 (2d Cir. 2008) (evidence of prior bad acts may be admitted where there is a common modus operandi and facts "taken together . . . establish the existence of a pattern").   For example, Santos caused RISE NY PAC to pay $4,000 to a Company #1 bank account on or about March 5, 2022 and, again, on March 31, 2022.  The government also intends to introduce at trial evidence that on or about April 1, 2022, Santos directed the transfer of $6,000 from RISE NY PAC's bank account to a Company #1 bank account.  Santos was an owner of Company #1 and an authorized signer on its bank accounts.  Santos's use of Company #1's bank accounts to funnel fraudulently obtained funds from RISE NY PAC occurred simultaneously with his use of those same Company #1 bank accounts to receive funds fraudulently obtained through the Credit Card Fraud Scheme charged in the Indictment and mere months before his use of those same Company #1 bank accounts to receive fraudulently obtained funds through the Company #1 Fraud Scheme charged in the Indictment.

Moreover, even if it were not direct evidence of the crimes charged or inextricably intertwined with such evidence, such evidence of his theft of RISE NY PAC funds through the Company #1 bank accounts would also be admissible to prove Santos's intent, plan, absence of

mistake, and lack of accident when he used the same accounts in the same manner to commit the Credit Card Fraud Scheme and the Company #1 Fraud Scheme.  See, e.g., United States v. Flom, 256 F. Supp. 3d 253, 267-69 (E.D.N.Y. 2017) (denying post-trial motions challenging admission under Rule 404(b) of evidence of prior money laundering scheme where the defendant used the same bank account in both the charged and the uncharged schemes), aff'd 763 F. App'x 27 (2d Cir. 2019); see also United States v. McDonald, 756 F. App'x 964, 968 (11th Cir. 2018) (evidence related to uncharged crime was admissible where, inter alia, the challenged evidence involved the same bank account as the charged crime, in the same time period, with the same methods); United States v. Ndubuisi, 460 F. App'x 436, 438 (5th Cir. 2012) (evidence of uncharged fraud committed using same bank account as charged fraud is admissible to demonstrate intent).

### 3. Rule 403 Balancing Test

As discussed above, the government's evidence of other bad acts and/or uncharged criminal conduct outlined above is highly probative here, directly related to several of the schemes charged in the Indictment, inextricably intertwined with such charged conduct, and directly relevant to, what is anticipated to be, one of the central disputed issues in this trial: Santos's state of mind and intent.

On the other hand, any danger of unfair prejudice to Santos here is minimal, as the other act evidence does not involve conduct any more inflammatory than the conduct with which he is to be tried.   See Paulino, 445 F.3d at 223; Roldan-Zapata, 916 F.2d at 804.  Indeed, the conduct forming the basis of the government's case-in-chief relates to, inter alia, Santos's brazen misrepresentations to the U.S. House of Representatives' Committee on Ethics regarding his financial profile; Santos's flagrant lies to contributors of his campaign regarding the nature of Company #1 and the anticipated uses of monies donated to Company #1; his laundering of those

fraud proceeds through various bank accounts to conceal their true source and fraudulent nature before ultimately squandering them on personal expenses; his misuse of credit card information belonging to unwitting contributors to his campaign, primarily to falsely inflate the fundraising prowess of his congressional campaign and to enrich himself; his lies to a state government agency regarding his eligibility for unemployment insurance benefits during a period that he was, in fact, working at an investment firm; and his falsification of official reports submitted to the FEC (to mislead National Party Committee #1).  Against that backdrop, it cannot seriously be argued that evidence of Santos's prior falsification of his personal background and financial condition, or uncharged misuse of campaign dollars, poses any appreciable risk of unfair prejudice under Rule 403.

      **D.**   <u>Conclusion</u>

For the reasons set forth above, the government respectfully submits that the Court permit the government to introduce evidence of certain prior bad acts and/or uncharged conduct at trial as direct evidence of the charged crimes, evidence of other acts inextricably intertwined with evidence of the charged crimes, or, in the alternative, evidence admissible pursuant to Federal Rule of Evidence 404(b).

III.   Santos Should Be Precluded from Arguing Vindictive or Selective Prosecution

The government next moves in limine to preclude Santos from arguing at trial that he is the subject of a vindictive or selective prosecution.

A.   Background

Santos has made several public statements alleging that the investigation of, and charges against, him are the result of government bias.  For example, in May 2023, following his arraignment on the original indictment in this matter, Santos said of the charges, "The reality is, it's a witch hunt."  ABC7, Full speech: Rep. George Santos speaks during chaotic press conference at 05:12, YOUTUBE (May 10, 2023), https://youtu.be/1UeEQKuYxWM?si=EztGrlrpr3RN7kfp, last visited August 1, 2024.  He then contrasted the government's treatment of him with that of the family of another elected official, accused the government of selective prosecution, and then restated, "I'm going to fight the witch hunt."  Id. at 05:17.  Furthermore, in September 2023, Santos posted the following on a social media platform: "If the DOJ wants to prove they are not biased, they should investigate" another elected official, again suggesting that he is the victim of selective prosecution.   George   Santos   (@MrSantosNY),   X   (Sep.   27,   2023,   8:27   PM), https://x.com/MrSantosNY/status/1707190213003424106, last visited August 1, 2024.

In an interview with CNN on November 5, 2023, Santos repeatedly emphasized this theme as well.  See CNN, CNN Reporter Confronts George Santos About His Lies, YOUTUBE (Nov. 5, 2023), https://www.youtube.com/watch?v=sdfaG6QY9pM, last visited August 1, 2024. With regard to the allegations in the Indictment that he had falsely certified his eligibility for unemployment insurance benefits, Santos stated, among other things:

> Now, let's make this very clear.  In any other circumstances, a person that goes and takes a, a unemployment check and then God, God willing, like, 'Oh no, you actually didn't qualify, 'cause you

30

quit. You were not terminated, so you didn't qualify for benefits.'[5] You don't indict that person. You know what every single time happens? They go ahead and deduct it from your taxes.[6] They, they put a lien on you. 'Oh, you can't take unemployment benefits, oh. Every a year they'll just chip away at it slowly. I got indicted. So, just, just put that on the scale. . . . I'm just saying, there's people out there who have gone through this process of overtaking a check or two or whatever the case is and then just having to pay it back. But nobody gets criminally indicted. It's crazy.

Id. at 5:51-7:21. With respect to the allegations in the Indictment that Santos filed materially false Financial Disclosure Reports with the U.S. House of Representatives' Committee on Ethics, Santos stated the following to CNN during that same interview: "Here's another thing. Every time somebody suspects there's a mistake on your Ethics Report, do you know what happens? The Ethics Committee reaches out and said, 'Hey, this looks funky.' Guess what happened? That never happened." Id. at 7:20-8:19.

Santos's claims are baseless, entirely irrelevant to the question of his guilt of the crimes charged in the Indictment, and would inject distracting and prejudicial assertions of improper government motive into the trial. Accordingly, the Court should preclude Santos from

---

[5] To be clear, Santos has not been charged with fraudulently obtaining unemployment benefits because he quit his employment, rather than being terminated from his employment, at Investment Firm #1. He has been charged because he was in fact employed at Investment Firm #1 at the same time that he was certifying on a weekly basis that he was unemployed.

[6] Santos's claim is, of course, entirely false. In fact, just two months before Santos was charged, a grand jury sitting in the Eastern District of New York charged eleven defendants with operating an unemployment insurance benefits fraud scheme. See United States v. Brown, et al., No. 22 CR 87 (JMA) (E.D.N.Y. Mar. 3, 2022), ECF No. 63.

raising any argument or introducing any evidence on the issue of selective or vindictive prosecution.

B.    Legal Standards

The issue of selective prosecution is a question for a court rather than a jury because it "alleges a defect in the institution of the prosecution."  United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks and citation omitted).  Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible," and Rule 403 further provides that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Evidence that does not bear on a defendant's guilt or innocence of the charges in the indictment, or is likely to distract the jury from the issue of guilt or innocence, should be excluded.  See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").

Additionally, when deciding to bring charges, "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws."  United States v. Armstrong, 517 U.S. 456, 464 (1996) (internal quotation marks omitted); see also United States v. Sanders, 211 F.3d 711, 716 (2d Cir. 2000) ("[A] prosecutor's pretrial charging decision is presumed legitimate").  Because a "presumption of regularity" attaches to prosecutorial decisions, courts must presume "in the absence of clear evidence to the contrary" that prosecutors "have properly discharged their official duties."  Armstrong, 517 U.S. at 464 (quoting United States v.

Chem. Found., Inc. 272 U.S. 1, 14-15 (1926)).  More specifically, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."  Id. (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)).

To establish that there was a vindictive motive in the prosecution, "a defendant must prove objectively that the prosecutor's charging decision was a 'direct and unjustifiable penalty' . . . that resulted 'solely from the defendant's exercise of a protected legal right.'"  Sanders, 211 F.3d at 716-17 (quoting United States v. Goodwin, 467 U.S. 368, 380 n.11, 384 n.19 (1982)). In other words, "the defendant must show that '(1) the prosecutor harbored genuine animus toward the defendant . . . and (2) [the defendant] would not have been prosecuted except for the animus.'" Id. at 717 (quoting United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999)) (alteration in original). Additionally, "[t]o establish a presumption of prosecutorial vindictiveness, the defendant must show that 'the circumstances of a case pose a realistic likelihood' of such vindictiveness." United States v. Avenatti, 433 F. Supp. 3d 552, 563 (S.D.N.Y. 2020) (quoting Sanders, 211 F.3d at 717).

Similarly, "the standard [for proving a selective prosecution claim] is a demanding one." Armstrong, 517 U.S. at 463.  The defendant must demonstrate that a "federal prosecutorial policy [1] 'had a discriminatory effect and [2] that it was motivated by a discriminatory purpose.'" Avenatti, 433 F. Supp 3d at 563 (quoting Armstrong, 517 U.S. at 465).  To establish a discriminatory effect, "a defendant must show that 'others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant, and that the defendant] has been singled out for prosecution.'" Id. (quoting United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992)) (alterations in original).  To establish a

discriminatory purpose, the defendant must demonstrate that "the government's discriminatory selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.'" Id. (quoting United States v. Moon, 718 F.2d 1210, 1229 (2d Cir. 1983)) (alteration in original).

C.   Application

Applying these standards, Santos should be precluded from arguing that his prosecution is vindictive or selective.  As noted above, Santos has repeatedly suggested to the public that he has been the victim of selective and unfair treatment by the Department of Justice.  However, there is no evidence of discrimination or genuine animus in the decision to prosecute him.  More fundamentally, this is a claim properly presented to the Court, not the jury, and Santos has failed to present such a claim, to date.

Setting aside his rote appropriation of the "witch hunt" trope, Santos's claims of his prosecution being vindictive are apparently based solely on subjective comparisons of his own conduct to that of others whom Santos self-servingly claims engaged in varied misconduct but were not charged.  Regardless of the truth or falsity of these unsupported allegations, Santos has made no effort to establish that any other individual to whom he seeks to be compared was similarly situated, so as to suggest a discriminatory effect or purpose.  For example, he alleged— baselessly—that the government failed to investigate other public officials for receiving donations from foreign nationals and stealing campaign funds.  See ABC7, supra; Santos, supra.  But again, even setting aside the fact that Santos's anecdotal claims are wholly without evidentiary support— let alone support sufficient to overcome the presumption of legitimacy attached to the instant charges—he has yet to explain, credibly or otherwise, that he is being treated differently than

34

another identifiable and similarly situated person.  That is, in effect, the end of the inquiry.  See United States v. Stewart, 590 F.3d 93, 121 (2d Cir. 2009) (denying selective prosecution claim of defendant on the grounds that her conduct was substantially different from those who were not prosecuted); Malka, 602 F. Supp. 3d at 543-44 (denying defendants' selective prosecution claim because they "failed to adduce any evidence of either discriminatory intent or discriminatory effect" beyond mere "unsubstantiated accusations against the Government").  As such, Santos should be precluded from making such baseless and inflammatory arguments to a jury.

In fact, given the as-yet unsubstantiated nature of Santos's claims, this Court has a duty to prevent them from reaching the jury as they would invite jury nullification.  See, e.g., Rosado, 728 F.2d at 93 (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").  The jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000), not on the government's investigative decisions or motives in the prosecution.  Accordingly, Santos should be precluded from raising any argument or introducing any evidence on these issues.

D.    Conclusion

Based on the foregoing, this Court should preclude Santos from arguing at trial, eliciting testimony, or introducing evidence that he is being subjected to a vindictive or selective prosecution.

IV.    Santos's Statements Are Admissible During the Government's Case-in-Chief

        The government next moves in limine to introduce at trial relevant statements Santos has made in publicly reported interviews and in emails and text messages in which he participated.  Such evidence is admissible as statements made by a party opponent under Federal Rule of Evidence 801(d)(2)(A).  At the same time, however, Santos is barred from introducing his own prior statements because they are hearsay and there is no applicable exception that would permit the defense to admit them.

        A.    Background

        Since December 19, 2022, when a New York Times article was published detailing apparent misrepresentations in Santos's biography, Santos has effectively gone on a speaking tour.  He has made countless public statements related to matters disclosed through news articles, an investigation and report of the United States House of Representatives Committee on Ethics, and this pending criminal proceeding.   The government has also obtained thousands of Santos's statements that precede December 2022, including sworn deposition testimony, text messages and emails.  Some of the statements Santos has made are relevant to the charges against him, and the government intends to introduce portions of these statements at trial.  Other statements made by Santos are irrelevant, distracting, or merely false exculpatory statements.

        B.    Legal Standards

        The government is permitted to introduce a defendant's out-of-court statements pursuant to: (i) Federal Rule of Evidence 801(c) where the statements are not being introduced for their truth (e.g., Santos's many false statements); or (ii) Federal Rule of Evidence 801(d)(2)(A) as statements of the opposing party.  See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982); see also United States v. Nieves, 354 F. App'x 547, 551 (2d Cir. 2009) (affirming district court ruling

to admit recorded call between defendant and gang associate, holding the statements in the call "were not hearsay because they were either not admitted for the truth of the matter asserted or were non-hearsay admissions under Federal Rule of Evidence 801(d)(2)"); United States v. Pedroza, 750 F.2d 187, 203 (2d Cir. 1984) (explaining that false testimony was "not hearsay since it plainly was not offered to prove the truth of the matter asserted" but rather was "offered for its patent falsity").

Conversely, "[w]hen the defendant seeks to introduce [his] own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." Marin, 669 F.2d at 84; see Fed. R. Evid. 801. In general, a defendant may not "attempt to get [his] side of the [] story in front of the jury without [his] testifying and opening him[self] up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004); see United States v. Cooper, No. 19-CR-159 (ARR), 2019 WL 5394622, at *6 (E.D.N.Y. Oct. 22, 2019) ("[T]he rule against hearsay would bar [the defendant] from introducing his own out-of-court statements offered to prove the truth of the matter asserted.").

These rules preclude the defendant from offering his own prior statements even where the government offers parts of those statements. See United States v. Hill, 658 F. App'x 600, 604-05 (2d Cir. 2016) (affirming district court's parsing of a defendant's recorded statement to admit the discrete inculpatory statements and exclude the other self-serving statements that he was "innocent"); United States v. Johnson, 507 F.3d 793, 796-97 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the defendant's post-arrest statement); United States v. Black,

No. 13-CR-316 (DLI), 2014 WL 5783067, at *2 (E.D.N.Y. Nov. 5, 2014) ("[T]he defendant's self-serving, exculpatory statements are inadmissible hearsay . . . .").

As a result, courts often parse a defendant's statements to admit the inculpatory statements offered by the government and exclude the self-serving statements offered by the defendant.  See United States v. Fawwaz, 691 F. App'x 676, 678 (2d Cir. 2017) (summary order) (affirming district court's refusal to admit certain statements noting that "admitted statements [were] independent of the omitted statements"); United States v. Gupta, 747 F.3d 111, 139 (2d Cir. 2014); see also United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) ("[I]t is often perfectly proper to admit segments of prior testimony without including everything . . . .") (citation omitted)).

C.    Application

The Court should permit the government to introduce statements made by Santos in various publicly available interviews with journalists, as well as in emails, text message communications and in-person conversations.  To the extent the statements are adjudged to be relevant and authentic, they are admissible, as they are statements made by an opposing party under Rule 801(d)(2)(A).   At the same time, the Court should preliminarily rule that Santos is barred by the rule against hearsay from admitting his own prior, out-of-court statements for their truth.

D.    Conclusion

Based on the foregoing, the Court should admit prior statements Santos made as those of a party opponent, and the defendant should be precluded from introducing his own prior hearsay statements.

V.      Statements of Santos's Charged Co-Conspirator and Agent Are Admissible

        Next, the government moves in limine to admit at trial certain statements made by Nancy Marks, Santos's charged co-conspirator and agent, pursuant to Federal Rules of Evidence 801(d)(2)(D) and 801(d)(2)(E).

        A.      Background

        Among other things, Santos is charged with conspiring with Nancy Marks, the treasurer of his Committee and other related political committees, to submit materially false reports to the FEC on behalf of the Committee.  As alleged, Santos and Marks fraudulently inflated the Committee's fundraising numbers for the purpose of securing financial and logistical support from National Party Committee #1.  See S-2 at 6, 7-15.  As part of that conspiracy, Santos and Marks agreed to falsely report to the FEC that their family members had made significant financial contributions to the Committee and to falsely report to the FEC that Santos had personally loaned the Committee significant sums of money.  See id.  Charges arising out of this conspiracy are contained in Counts One through Eight.  See id. at 24-32.

        At trial, the government anticipates eliciting testimony from several witnesses who assisted Marks in preparing filings for the Committee.  Among other subjects, these witnesses will testify about conversations they had with Marks regarding these false FEC filings.  The government anticipates that the witnesses will testify that Marks: (a) acknowledged that the information contained in the FEC filings was false; (b) relayed that Santos and Marks had agreed to make false filings with the FEC for the purpose of garnering support from National Party Committee #1; (c) stated that Santos claimed he would fund the financial contributions falsely attributed to his and Marks's family members at a later date, and (d) reported that Santos claimed he would provide the fraudulent loans being reported to the FEC at a later date.  These witnesses

39

will testify that Marks made these statements either to convince them to enter the false information into the Committee's FEC reports or to set aside their misgivings regarding the false filings and continue their assistance to the Committee.

B.   Legal Standards

The Federal Rules of Evidence address the admissibility of statements made by agents of a defendant and a defendant's co-conspirators in separate provisions.  Federal Rule of Evidence 801(d)(2)(D) provides, in relevant part, that a statement is not hearsay if it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."   To show that the statement is not hearsay, the government must show: (1) the existence of the agency relationship; (2) that the statement was made during the course of the relationship; and (3) that it relates to a matter within the scope of the agency.  United States v. Motovich, No. 21-CR-497 (WFK), 2024 WL 3303723, at *11 (E.D.N.Y. July 2, 2024) (internal quotation marks omitted).

"The Second Circuit has explained that an agency relationship exists where a declarant is answerable to a defendant."  Id. (citing United States v. Rioux, 97 F.3d 648, 660 (2d Cir. 1996)).  However, "a direct reporting relationship is sufficient, but not necessary" to establish agency; it "may also be satisfied by facts demonstrating the declarant depended on the defendant for her position and job instructions."   United States v. Goldstein, No. 21 CR 550, 2023 WL 3662971, at *7 (E.D.N.Y. May 25, 2023).

Separately, Federal Rule of Evidence 801(d)(2)(E) provides, in relevant part, that a statement is not hearsay if it "is offered against an opposing party" and "was made by the party's co-conspirator during and in furtherance of the conspiracy."  To admit such statements, a court must find by a preponderance of the evidence that (i) "there was a conspiracy"; (ii) "its members

40

included the declarant and the party against whom the statement is offered"; and (iii) "the statement was made during the course of and in furtherance of the conspiracy."  Gupta, 747 F.3d at 123 (citation omitted).

With respect to the first requirement, "[i]n determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."  Id.  Through this evidence, the government must establish the existence of a conspiracy in which the declarant and the defendant participated.  See United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990).  In making this determination, a court may consider hearsay and other evidence not admissible at trial, including the proffered statements themselves.  See Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily v. United States, 483 U.S. 171, 177-81 (1987).

"The requirement that the challenged statement be 'in furtherance of' the conspiracy is satisfied if the statement's objective is 'designed to promote or facilitate achievement of the goals of the conspiracy.'"  United States v. Malka, No. 19 CR 497 (NSR), 2022 WL 1488568, at *13 (S.D.N.Y. May 11, 2022) (quoting United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994)).  Courts in this district have repeatedly held that this standard is "is not very restrictive." United States v. Kurland, No. 20 CR 306 (S-1) (NGG), 2022 WL 2669897, at *3 (E.D.N.Y. July 11, 2022) (citing Malka, 2022 WL 1488568, at *13; see also United States v. Ilori, No. 21 CR 746 (MKV), 2022 WL 2452258, at *2 (S.D.N.Y. July 5, 2022).  "It permits, for example, introduction of any co-conspirator statement that 'reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy.'"  Malka, 2022 WL 1488568, at *13 (citing United States v. Tarantino, 846 F.2d 1384, 1412 (D.C. Cir. 1988)).  Even "statements relating past events

41

meet the in-furtherance test if they serve some current purpose in the conspiracy."  United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994); see also United States v. James, 712 F.3d 79, 106 (2d Cir. 2013).  "[S]o long as a coconspirator statement was in furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular coconspirator."  Gupta, 747 F.3d at 124.

In addition, "[a] statement need not be made by one co-conspirator to another co-conspirator in order to be in furtherance of a conspiracy."  Malka, 2022 WL 1488568, at *12; see also Gupta, 747 F.3d at 125 (a statement need not be made to a member of the conspiracy to be admissible because "[s]tatements designed to induce the listener's assistance with respect to the conspiracy's goals satisfy the Rule's in-furtherance requirement").

"Because what constitutes a statement that is in furtherance of a conspiracy is essentially a question of fact, [an appellate court] will reverse a decision to admit co-conspirator statements only if it is clearly erroneous."  In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 139 (2d Cir. 2008) (internal quotation marks omitted).

C.    Application

Marks was both an agent of Santos and his co-conspirator.  As such, the statements that she made to others, as described above, are admissible at trial under both Federal Rules of Evidence 801(d)(2)(D) and 801(d)(2)(E).

With respect to Federal Rule of Evidence 801(d)(2)(D), the government anticipates that the evidence at trial will establish that Marks was Santos's campaign treasurer, employed by Santos and answerable directly to him, the candidate.  This agency relationship continued throughout the entire 2022 election cycle, including the time period during which Marks made the proffered statements.    Furthermore, Marks' duties as campaign treasurer for Santos's

42

congressional campaign principally included the filing of reports with the FEC, making the proffered statements directly related to the scope of the agency relationship.  Under those circumstances, the proffered statements are admissible against Santos under Federal Rule of Evidence 801(d)(2)(D).  See Goldstein, 2023 WL 3662971, at *7 (concluding that the statements of a subordinate who reported directly to the defendant was "an agent within the meaning of the exception and his out-of-court statements [were] admissible to the extent they were made about matters within the scope of that relationship and while it existed"); Motovich, 2024 WL 3303723, at *11 (same).

The Court should also permit the government to elicit such testimony under Federal Rule of Evidence 801(d)(2)(E) because Marks is Santos's charged (and convicted) co-conspirator and she made the statements to anticipated witnesses in furtherance of the conspiracy charged in the Indictment, namely, a conspiracy to file false reports with the FEC that artificially inflated the Committee's fundraising numbers for the purpose of garnering support from National Party Committee #1.  Witnesses will testify that they understood Marks to be making these statements to convince them to assist in the preparation of false filings or to disregard their concerns about the existence of the false filings and to continue to assist the Committee.

With respect to the first purpose, Marks' solicitation of a witness's assistance in preparing a false filing with the FEC is a statement "designed to induce the listener's assistance with respect to the conspiracy's goals" and thus satisfies "the Rule's in-furtherance requirement." Gupta, 747 F.3d at 125.  With respect to the second purpose, Marks' efforts to convince these witnesses to set aside their misgivings about these false filings with the FEC can be understood to conceal further exposure of the conspiracy and ensure the witnesses complied with the goals of the conspiracy, including, for example, by not correcting the false FEC reports.  As the Second

Circuit has held, "statements designed to conceal an ongoing conspiracy are in furtherance of that conspiracy." United States v. Eisen, 974 F.2d 246, 269 n.8 (2d Cir. 1992); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1198-99 (2d Cir. 1989) (finding coconspirator statements admissible because they were designed to "cover up" the conspiracy and encourage the listener "to not [] reveal incriminating information").  These listeners need not be members of the conspiracy.  See Gupta, 747 F.3d at 125.  By encouraging her employees to ignore the existence of these false FEC filings and continue assisting the Committee, Marks was seeking to conceal further exposure of the charged conduct and ensure that these witnesses continued to comply with the goals of the conspiracy.  Accordingly, the Court should permit the witnesses to testify as to these statements.

At a minimum, the Court should conditionally admit these statements pursuant to United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969).  Where a defendant disputes the existence of the charged conspiracy, courts in the Second Circuit have administered a procedure articulated in Geaney, as summarized here:

> When the existence of the underlying illicit conspiracy is disputed, as it is here, courts in the Second Circuit follow the Geaney protocol. See United States v. Saneaux, 365 F. Supp. 2d 488, 491-93 (S.D.N.Y. 2005) (collecting cases).  Under that protocol, 'statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence' establishing 'that a conspiracy existed, that the defendant and the declarant were members, and that the statements were made during the course of and in furtherance of the

conspiracy.'  <u>United States v. Tracy</u>, 12 F.3d 1186, 1199 (2d Cir. 1993).

<u>United States v. Loera</u>, No. 09 CR 466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018). The government respectfully submits that there is "no reason to deviate from that procedure here" and requests that the Court apply that procedure at trial.  <u>Id.</u>

      D.    <u>Conclusion</u>

      Based on the foregoing, the government respectfully requests that the Court admit the described statements made by Nancy Marks because she was Santos's co-conspirator and agent.

VI.   Santos Should Be Precluded from Challenging the Authenticity of Documents He Produced, Arguing that Complying with a Subpoena Demonstrates Innocence, or Admitting Documents He Improperly Suppressed

   The government next moves in limine to preclude Santos from making improper use of, and arguments concerning, documents he produced pursuant to compulsory process issued by the grand jury.  At trial, the government intends to introduce certain materials obtained from Santos in response to grand jury subpoenas and asks the Court: (1) to preclude the defense from challenging the authenticity of documents produced to the government by Santos; (2) to preclude the defense from asserting that compliance with subpoenas somehow evidences Santos's innocence or otherwise negates his criminal intent; and (3) to preclude the defense from seeking to admit any evidence that should have been produced in response to the grand jury subpoenas but was not.

   A. Background

   On or about March 13, 2023, grand jury subpoenas were served on Santos in his individual capacity and as custodian of records for his wholly owned limited liability company, the Devolder Organization LLC.  These subpoenas were reissued and served again on or about March 31, 2023.  Santos produced documents in response to the subpoenas through several rolling productions beginning in April 2023 and concluding in October 2023.  The government will seek to admit certain documents produced by Santos in response to the subpoenas.

   The government will rely on the completeness of Santos's productions to prove certain negatives.  For example, among other things, the subpoena to the Devolder Organization sought "all financial records of the Devolder Organization, including without limitation all records associated with any bank account of the Devolder Organization from which dividends or salaries were paid."  The government intends to argue, inter alia, that the Devolder Organization maintains

no bank accounts other than those reflected in Santos's productions.  The defense should be precluded from introducing any financial records of the Devolder Organization that were not produced in response to the above-described subpoenas or arguing that the government has failed to establish that no other such accounts exist.

B.     Legal Standards

Documents produced by a defendant pursuant to a subpoena are implicitly authentic.  See Fisher v. United States, 425 U.S. 391, 410 (1976) ("Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer.  It also would indicate the taxpayer's belief that the papers are those described in the subpoena."); United States v. Smith, 22-CR-352, 2023 WL 8611259, *2 (S.D.N.Y. Dec. 13, 2023) (citing Fisher for the proposition that a defendant who responds to a subpoena tacitly concedes the authenticity of the produced documents); United States v. Greenfield, 831 F.3d 106, 118 (2d Cir. 2016) ("[W]e have recognized that implicit authentication occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents.") (internal alterations accepted and citation omitted).

C.     Argument

First, Santos has implicitly conceded through the act of production that all documents and records produced by him or the Devolder Organization in response to grand jury subpoenas are authentic.  He has waived any objection that such documents are records are not authentic.  See Fisher, 425 U.S. at 410.

Second, the Court should preclude the defense from arguing that the fact that Santos and his wholly owned entity produced documents in response to compulsory process issued by the

47

grand jury subpoenas somehow shows that he has nothing to hide, is innocent, or lacked the requisite intent to commit the crimes charged in the Indictment.  Such an argument would be inaccurate and highly misleading to the jury, considering the compulsory nature of responding to a grand jury subpoena.  See Fed. R. Evid. 403 (evidence should be excluded if its probative value is substantially outweighed by a danger of misleading the jury or confusing the issues).  It is also irrelevant.  See United States v. Goldstein, No. 21 CR 550 (DC), Tr. at 41-42 (E.D.N.Y. May 22, 2023) (attached as Ex. D) (granting government's motion to limit defense from arguing that compliance with subpoena demonstrated innocence, holding that "in general, prior good acts is not relevant unless, just like prior bad acts, unless there's some reason for it to come in, but . . . complying with the subpoena I don't see as relevant").

Third, as described in the government's motion to compel Santos to produce reciprocal discovery, to date Santos has altogether failed to satisfy his reciprocal disclosure obligations.  He and his wholly owned entity have, however, produced documents and records to the government in response to the grand jury subpoenas described above.  Compliance with a subpoena is compulsory, and Santos did not object to the subpoenas when they were issued.  Accordingly, the government should be permitted to rely on the completeness of Santos's productions.  To the extent that Santos refrained from producing to the government any documents that were responsive to the subpoenas and were, at the time the subpoenas were served, in his possession, custody or control, Santos should be precluded from admitting such documents as exhibits at trial.  See, e.g., United States v. Watson, No. 23-CR-82 (EK), 2024 WL 3443459 (E.D.N.Y. July 17, 2024) (granting government's motion to preclude defense from calling a

witness, in part because certain of the witness's statements should have been produced in response to a subpoena previously issued to the defendants).

VII.    The Court Should Preclude Improper Use of Agent Reports to Impeach Witnesses

        The government next moves in limine to preclude Santos from imputing to witnesses the summaries of their prior statements composed by law enforcement officers.  In accordance with its obligations under Federal Rule of Criminal Procedure 26 and 18 U.S.C. § 3500 (the "Jencks Act"), the government will produce summaries of witness interviews prepared by various law enforcement agents.  The government respectfully requests that the Court preclude the defense from introducing the contents of those reports to impeach such witnesses during cross-examination, publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them.

        A.    Legal Standards

        A party may impeach a witness with a prior inconsistent statement of that witness.  However, the statement must be the witness's own statement that he or she either made or adopted.  See Fed. R. Evid. 613; United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]," it was "properly rejected as a prior inconsistent statement").  The problem with using a third party's summary or characterization of the witness's statement to impeach is "one of relevancy": "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior

statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." Almonte, 956 F.2d at 29.

The Jencks Act governs the discoverability of a witness's prior statements, and its definition of "statement" accords with Federal Rule of Evidence 613(a) and applicable case law on proper impeachment using prior inconsistent statements. Under the Jencks Act, a statement is "a written statement made by said witness and signed or otherwise adopted or approved by him," a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously," or a statement "made by said witness to a grand jury." 18 U.S.C. § 3500(e). Because the Jencks Act is meant to restrict the defendant's use of discoverable statements for impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." Palermo v. United States, 360 U.S. 343, 352 (1959). An "agent's interpretations or impressions" of a witness do not fall within the purview of the Jencks Act. Id. at 352-53.

B.    Application

In this case, the government has provided the defense with broad discovery, which the government will supplement when it provides material pursuant to 18 U.S.C. § 3500, including reports summarizing investigators' interviews with government witnesses. These reports were not reviewed or adopted by any of the prospective government witnesses. Moreover, they were finished after interviews were completed and reflect the thought processes and interpretations of the agents and officers; they do not constitute verbatim recitals or transcripts of any of the witnesses' statements. As a result, the statements in these reports are not statements of any of the government's witnesses (other than the reports' authors, if called to testify at trial), cannot be used for impeachment, and should not be read aloud or shown to the jury. See Almonte, 956 F.2d at

29-30; <u>Leonardi</u>, 623 F.2d at 757.  The Court should therefore preclude any suggestion by defense counsel that a statement in a law enforcement report is a statement of the witness.[7]

---

[7] The government agrees that the defense may ask a witness whether he or she made a statement that is reflected in a law enforcement report.  However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the report's contents as a prior inconsistent statement.  Additionally, if a witness says that he or she does not remember a fact, the defense may attempt to refresh a witness's recollection by showing the witness the report, but only if the defense does so in a manner that does not imply that the report is the witness's own statement or publish its contents to the jury.

VIII.   The Court Should Admit Evidence Related to the SEC Action Against Investment Firm #1

       The government next moves in limine to admit evidence of Santos's awareness of an SEC proceeding against Investment Firm #1 for the purpose of establishing Santos's motive in concealing his employment at Investment Firm #1 in his Financial Disclosure Report filed with the House on September 6, 2022 – a crime with which he is charged in the Indictment.

A.   Background

       In the Indictment, Santos is charged with various crimes related to his tenure at Investment Firm #1.  In Counts 22 and 23, for example, Santos is charged with making materially false statements, in violation of 18 U.S.C. § 1001(a)(2), for lying in Financial Disclosure Reports submitted to the U.S. House of Representatives' Committee on Ethics, with such lies including his willful failure to disclose his employment and income at Investment Firm #1 in either Financial Disclosure Report.[8]  Specifically, the Indictment alleges that "from approximately January 2021 through September 2021, [the defendant] received approximately $28,107 in income from Investment Firm #1 . . . which he failed to truthfully report as required" in his Financial Disclosure Report filed on September 6, 2022.

       At trial, the government anticipates introducing evidence, including witness testimony and records, establishing that Santos's motive for concealing his employment with, and income from, Investment Firm #1 in his Financial Disclosure Report filed on September 6, 2022, was to avoid negative publicity associated with Investment Firm #1.  Specifically, the evidence at trial will establish that Santos was aware that, in April 2021, the SEC filed a complaint against

---

[8] In addition, in Counts 19 through 21, Santos is charged with theft of public funds, in violation of 18 U.S.C. § 641, and wire fraud, in violation of 18 U.S.C. § 1343, for fraudulently certifying his eligibility for, and then receiving, unemployment insurance benefits between approximately June 2020 and April 2021, a time period in which he was, in fact, employed at Investment Firm #1.

Investment Firm #1, alleging that Investment Firm #1 operated a Ponzi scheme and seeking injunctive relief, disgorgement, civil penalties and an asset freeze (the "SEC Proceeding").  See SEC v. Harbor City Capital Corp., No. 21 CV 694, 2021 WL 3111587 (M.D. Fla. May 19, 2021). As a result, Santos, who had by then ceased his employment at Investment Firm #1, sought to avoid public association with Investment Firm #1, which he believed would be detrimental to his congressional campaign.  For example, the government has obtained text messages between Santos and a campaign staffer in December 2022 concerning his efforts to conceal his involvement with Investment Firm #1, in which Santos stated, in part: "[W]e did not list [Investment Firm #1] for the obvious reasons.  I strongly think they will try to make it about us not listing [Investment Firm #1] on the bio which is also my most recent employer.  And are going to try to hit me on the fucking Ponzi scheme nonsense.  That's my opinion."  The government also intends to introduce evidence demonstrating Santos's awareness of the SEC Proceeding, including text messages where he transmits Internet links to articles discussing the proceeding and excerpted portions of his sworn deposition taken in the SEC Proceeding.[9]

The Court should permit the government to introduce evidence establishing Santos's awareness of the SEC Proceeding for the purpose of establishing his motive in concealing his employment at Investment Firm #1 in his Financial Disclosure Report filed on September 6, 2022.  To mitigate any possible prejudice to Santos from such evidence, the government intends to elicit at trial that Santos was not alleged by the SEC to have committed wrongdoing in the SEC

---

[9] The excerpted portions of Santos's sworn deposition in the SEC Proceeding are also highly relevant to other criminal charges at issue in the Indictment.  For example, Santos is charged with fraudulently certifying his eligibility for, and then receiving, unemployment insurance benefits during the same time period when he was employed at Investment Firm #1.  In his sworn deposition, Santos testified to, among other things, the approximate dates of employment at Investment Firm #1, dates that significantly overlap with the dates during which he was fraudulently certifying his eligibility for unemployment insurance benefits.

Proceeding and proposes that the Court provide a limiting instruction that this evidence may only be considered for the limited purpose of assessing Santos's motive in failing to disclose his employment and income with Investment Firm #1 in his Financial Disclosure Report filed on September 6, 2022.

  B. <u>Legal Standards</u>

   "[I]n order to secure a conviction under [18 U.S.C.] § 1001(a)(2), the Government must prove that a defendant (1) knowingly and willfully, (2) made a materially false, fictitious, or fraudulent statement, (3) in relation to a matter within the jurisdiction of a department or agency of the United States, (4) with knowledge that it was false or fictitious or fraudulent." <u>United States v. Coplan</u>, 703 F.3d 46, 78 (2d Cir. 2012).  "A person acts 'knowingly' if he acts deliberately and not because of mistake, accident, mere negligence, or other innocent reason." <u>United States v. Mohamed</u>, 18 CR 603, 2020 WL 4932227, at *22 (E.D.N.Y. Aug. 24, 2020).  As the Supreme Court has held, "when used in the criminal context, a willful act is one undertaken with a bad purpose.  In other words, in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." <u>Bryan v. United States</u>, 524 U.S. 184, 191-92 (1998) (internal quotation marks and citation omitted).

   Relevant evidence is generally admissible at trial.  <u>See</u> Fed. R. Evid. 402.  Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." <u>United States v. Ashburn</u>, 11 CR 303, 2015 WL 588704, at *11 (E.D.N.Y. Feb. 11, 2015) (internal quotation marks and citation omitted).  However, "[t]he court may exclude relevant evidence if its

probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Where evidence is of a "highly probative nature," but potentially prejudicial, a limiting instruction can be "sufficient to prevent improper use of" that evidence.  United States v. McPartland, 81 F.4th 101, 116 (2d Cir. 2023).  Because the Second Circuit "recognize[s] a 'strong presumption' that juries follow [a district court's] limiting instructions,' the district court's use of a limiting instruction should . . . mitigate [any] concern about any unduly prejudicial effect" of such evidence.  United States v. Delance, 694 F. App'x 829, 835 (2d Cir. 2017) (quoting United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006)).

C.    Application

The Court should permit the government to introduce evidence of Santos's awareness of the SEC Proceeding for the purpose of establishing his motive in concealing his employment at Investment Firm #1 in his Financial Disclosure Report filed on September 6, 2022. The government has obtained overwhelming evidence that Santos was employed at Investment Firm #1 during the relevant period and, accordingly, any income derived by Santos from Investment Firm #1 should have been reported in his Financial Disclosure Report.   The government anticipates that the primary, and perhaps only, seriously contested issue with respect to this particular false statement in Santos's 2022 Financial Disclosure Report will be whether he knowingly and willfully omitted this information, or whether such an omission was due to

"mistake, accident, mere negligence, or other innocent reason." Mohamed, 2020 WL 4932227, at *22.

Under those circumstances, evidence of Santos's motive to lie and omit this information from his Financial Disclosure Report is probative of the primary disputed issue: Santos's intent. Evidence that Santos had a strong motive to conceal his employment at Investment Firm #1 would tend to prove that this omission was knowing and willful and not a mistake, accident or product of mere negligence. See United States v. Lighte, 782 F.2d 367, 373 (2d Cir. 1986) (observing in the perjury context that "circumstantial evidence, including proof of a motive to falsify, often may serve to convince a reasonable juror beyond a reasonable doubt of a [defendant's] criminal intent").

Because the government will elicit evidence at trial establishing that Santos himself was not accused of any wrongdoing in the SEC Proceeding, any unfair prejudice to Santos from such evidence is minimal and easily remedied with a limiting instruction that this evidence may only be considered for the limited purpose of assessing Santos's motive in failing to disclose his employment and income with Investment Firm #1 in his Financial Disclosure Report filed on September 6, 2022.

Courts have permitted the introduction of evidence with a far greater risk of unfair prejudice in other cases, provided such a limiting instruction is given. For example, in United States v. Mauro, 80 F.3d 73, 76 (2d Cir. 1996), the Second Circuit held that a district court had not abused its discretion under Rule 403 by admitting evidence of a defendant's incarceration as evidence of motive, at least where the government did not introduce the reason for that incarceration, and the jury was warned that the defendant's incarceration was not to be considered as proof of criminal propensity, but only as background information and as proof of motive.

Similarly, in <u>United States v. Fakih</u>, 264 F. App'x 78, 79-80 (2d Cir. 2008), the Second Circuit upheld the district court's decision to admit evidence of the defendant's participation in a credit card fraud scheme where the defendant was charged with witness tampering, stating: "Given the government's theory that [the defendant's] participation in the credit card fraud scheme motivated him to tamper with a witness and interfere with a grand jury's investigation of that same credit card fraud, as well as the district court's appropriate limiting instruction, the evidence is admissible . . . as proof of motive."

Here, the danger of unfair prejudice from the introduction of evidence of Santos's awareness of the SEC Proceeding is far less substantial than that at issue in <u>Mauro</u> or <u>Fakih</u>.  On the other hand, evidence of Santos's motive to lie in the Financial Disclosure Report is part of the government's theory of the case and to the likely central disputed issue on this particular false statement.  Accordingly, the government respectfully submits that the Court should permit the government to elicit such evidence, provided the government mitigates any potential prejudice to Santos by eliciting at trial that he was not alleged by the SEC to have committed wrongdoing in the SEC Proceeding and provided that the Court administer a limiting instruction to the jury that this evidence may only be considered for the limited purpose of assessing Santos's motive in failing to disclose his employment and income with Investment Firm #1 in his Financial Disclosure Report filed on September 6, 2022.

D.    <u>Conclusion</u>

Based on the foregoing, the Court should admit evidence of the Santos's awareness of the SEC Proceeding against Investment Firm #1.

IX.     The Court Should Preclude Evidence and Argument Related to Punishment

The government next moves in limine to preclude the defense from introducing evidence or argument at trial about potential punishment should Santos be convicted or about consequences he has already faced for his conduct, such as his expulsion from the U.S. House of Representatives on December 1, 2023, following his indictment and an investigation conducted by an Investigative Subcommittee of the House Committee on Ethics.  See H.R. 878, 118th Cong. (1st Sess. 2023).

As explained above, irrelevant evidence is not admissible, see Fed. R. Evid. P. 402, and evidence that does not bear on a defendant's guilt or innocence of the charges in the indictment, or is likely to distract the jury from the issue of guilt or innocence, should be excluded, see, e.g., Rosado, 728 F.2d at 93.  As such, Santos should be precluded from introducing evidence or arguing about the potential punishment of a conviction, or other consequences he has faced or may face, including his expulsion from the House.

To begin, the Supreme Court has recognized that "[i]is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed."  Shannon v. United States, 512 U.S. 573, 579 (1994) (internal quotation marks omitted).  "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  Id.

Given this principle, "courts usually instruct juries not to consider a verdict's consequences."  United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992); see, e.g., United States v. Bracy, No. 20-CR-483 (ARR), 2022 WL 17801133, at *7 (E.D.N.Y. Dec. 19, 2022) (granting motion to "preclude evidence or argument as to possible punishment or collateral consequences");

<u>United States v. Inniss</u>, No. 18-CR-134 (KAM), 2019 WL 6999912, at *9-10 (E.D.N.Y. Dec. 20, 2019) (same).  Because the potential consequences of a guilty verdict are irrelevant to the jury's decision, the Court should preclude any evidence or argument relating to them.  <u>See</u> Fed. R. Evid. 401, 402.[10]

        Likewise, the fact that Santos has already faced non-criminal consequences for some of the allegations in the Indictment is irrelevant and therefore inadmissible.  The jury's task is to determine whether the government has proven beyond a reasonable doubt that Santos committed the charged offenses.  Allowing him to introduce evidence that he was expelled from the U.S. House of Representatives would enable him to inappropriately attempt to engender sympathy from the jury by suggesting, for example, that he has already been sufficiently punished

---

[10] At a minimum, the Court should give the standard jury instruction on jurors' consideration of punishment, to wit:

> The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

1 Modern Federal Jury Instructions—Criminal ¶ 9.01, Instr. 9-1.

for his actions.  Because "the jury must not reach a verdict out of sympathy," such evidence is irrelevant and inadmissible.  See Inniss, 2019 WL 6999912, at *9.[11]

Accordingly, Santos should be precluded from raising any argument or introducing any evidence regarding the potential punishment if the jury convicts him or any consequences he has already faced.

---

[11] See id. at Instr. 2-12 (Sympathy) (directing jurors, in part, that "if you should find that the government has met its burden of proving a defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty").

## **CONCLUSION**

For the reasons set forth above, the government respectfully submits that its motions in limine should be granted in all respects.

Dated: Central Islip, New York
      August 2, 2024

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

    /s/
_____
Ryan C. Harris
Anthony Bagnuola
Laura Zuckerwise
Assistant U.S. Attorneys


COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

    /s/
_____
Jacob R. Steiner
John P. Taddei
Trial Attorneys

cc:    Clerk of the Court (JS) (By E-mail and ECF)
        All Counsel of Record (By E-mail and ECF)