1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,      :   23 CR 197(JS)
                               :
                               :
-against-                      :   United States Courthouse
                               :   Central Islip, New York
                               :
GEORGE SANTOS,                 :
                               :
          Defendant.           :   August 13, 2024
                               :   10:30 AM
                               :
- - - - - - - - - - - - - - -X

      CRIMINAL CAUSE FOR ARRAIGNMENT AND PRETRIAL CONFERENCE
           BEFORE THE HONORABLE JOANNA SEYBERT
              UNITED STATES DISTRICT JUDGE

                A P P E A R A N C E S :

 For the Government:    U. S. ATTORNEY'S OFFICE
                        EASTERN DISTRICT OF NEW YORK
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                        BY: RYAN HARRIS, ESQ.
                            LAURA ZUCKERWISE, ESQ.
                            ANTHONY BAGNUOLA, ESQ.
                        Assistant United States Attorneys

                        DEPARTMENT OF JUSTICE - CRIMINAL DIVISION
                        1301 New York Avenue NW
                        Washington, DC 20530
                        BY: JOHN TADDEI, ESQ.
                            JACOB STEINER, ESQ.

 For the Defendant:     MANCILLA & FANTONE, LLP
                        260 Madison Avenue, 22nd Floor
                        New York, New York 10016
                        BY: ANDREW MANCILLA, ESQ.
                            ROBERT FANTONE, JR., ESQ.

                        JOSEPH MURRAY, ESQ.
                        185 Great Neck Road, Suite 461
                        Great Neck, New York 11021

          Court Reporter:  Lisa Schmid, CCR, RMR
             Proceedings recorded by computerized stenography.
   Transcript produced by Computer-aided Transcription.

1           COURTROOM DEPUTY:  Calling Criminal Case 23 CR

2    197, United States of America versus George Santos.

3           Counsel, please state your appearances for the

4    record.

5           MR. HARRIS:  Good morning, Your Honor.  Ryan

6    Harris for the United States.  I'm joined by John Taddai,

7    Jacob Steiner, Laura Zuckerwise, and Anthony Bagnuola, all

8    represent the United States.

9           THE COURT:  Good morning to you all.

10          MR. MURRAY:  Good morning, Your Honor.  Joseph

11   Murry for the defendant, former Congressman George Santos,

12   and I'm joined by Andrew Mancilla and Robert Fantone on

13   the defense team.  Good morning.

14          THE COURT:  Good morning to you all also.

15          As a matter of procedure, there's an arraignment

16   that has to occur first, and the defendant has or will

17   enter a not guilty plea to the charges in the indictment.

18          Is that correct?

19          MR. MURRAY:  That is correct, Your Honor.

20          THE COURT:  All right.  And under Rule 5(f), I

21   direct the prosecution to comply with its obligation under

22   *Brady versus Maryland* and its progeny to disclose to the

23   defense all information, whether admissible our not, that

24   is favorable to the defendant, material either to guilt or

25   to punishment and known to the prosecution.

3

1            Possible consequences for noncompliance may

2    include dismissal of individual charges or the entire

3    case, exclusion of evidence and professional discipline or

4    court sanctions on the attorneys responsible.

5            I will enter a written order more fully

6    describing this obligation, and the possible consequences

7    of failing to meet it, and I direct the prosecution to

8    review and comply with that order.

9            Does the prosecution confirm that it understands

10   its obligations and will fulfill them?

11           MR. HARRIS:  Yes, it does, Your Honor.

12           THE COURT:  Thank you.

13           MR. HARRIS:  I would also just like to confirm

14   on the record that the defendant has a copy of the

15   Superseding Indictment, and waives a public reading.

16           THE COURT:  I was just going to do that.

17           MR. HARRIS:  Thank you.

18           THE COURT:  In addition, you're waiving the

19   public reading of the Indictment?  It's rather lengthy.

20   Is that correct, Mr. Santos?

21           THE DEFENDANT:  Yes, Your Honor.

22           MR. MURRAY:  Yes, that is correct, Your Honor.

23           THE COURT:  And you have gotten a copy of it and

24   you also are represented by counsel, and the same bail

25   conditions would occur?

4

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  All right.  No questions, right?

3        THE DEFENDANT:  No.

4        THE COURT:  With regard to this proceeding

5   today, a matter of technical issues that I'd like to rule

6   on, and I don't think there's need for any further

7   argument.  They have all been presented, some of them late

8   last night, but they have all come in.

9        So with regard to this case, as we all know, the

10   defendant was charged in a 23-count indictment with crimes

11   related to five separate criminal schemes:  One,

12   conspiracy to commit offenses against the United States;

13   two, wire fraud; three, false statements; four,

14   falsification of a document; five, access device fraud;

15   six, aggravated identity theft; seven, unlawful money

16   transactions; and theft of public monies.

17        I'm not going to review the statements contained

18   in the indictment, of course.

19        The second thing that I want to get to is

20   essentially, we all know that the Motion to Dismiss was

21   denied as to the three counts it was made upon, and the

22   *Brady, Giglio* material, obviously, the Government was

23   compelled to provide it, as they are again in this

24   Indictment.

25        The motion to strike surplusage from all the

5

1    items from the S-2 Indictment, all those items have been

2    gone into and ruled upon.

3           Now we're talking about pretrial motions, the

4    Government's voluminous Motions in Limine.

5           On August 2nd, 2024, the Government filed

6    Motions in Limine, seeking the admission of

7    proffer-protected statements for the limited purposes

8    outlined in the proffer agreement; second, the admission

9    of evidence of certain bad acts; three, the preclusion of

10   selective prosecution arguments for the admission of the

11   defendant's statements; five, the admissions of the

12   coconspirator statements; six, the preclusion or

13   authenticity challenges to the documents produced by the

14   defendant; seven, the preclusion of impermissible use of

15   agent reports for impeachment; eight, the admission of

16   evidence  related to the SEC action against Investment

17   Firm Number One; and nine, preclusion of evidence related

18   to punishment.  And that was filed under ECF Number 92.

19          Defendant shall respond by August 16th.  That

20   date remains, and hopefully, it will be met.

21          MR. HARRIS:  Your Honor?

22          THE COURT:  Yes.

23          MR. HARRIS:  You may have been just about to --

24          THE COURT:  Explain why there's a later date

25   with the exchange being given to the Court?

6

1        MR. HARRIS:  No, Your Honor.  I was just going

2    to  mention that we also filed a motion to compel

3    discovery as part of that.

4        THE COURT:  Yes, as part of that, and that

5    obviously will require the defendant to get that

6    information in because if you don't, I'm going to stop you

7    from using it at trial.

8        In terms of the general position the Court has

9    with *in limine* motions, voluminous papers do not have to

10   be submitted.  It happens at trial when the Government

11   gets up, and makes their opening statement and the

12   defendant makes his opening statement, that's when the

13   Court can, as the trial proceeds and I get the list of

14   witnesses and their proposed testimony, that's when I can

15   fairly evaluate what evidence should be precluded, what

16   evidence should have come in.

17       If the defendant failed to provide evidence that

18   the Government is entitled to, then he's not getting it in

19   at trial.

20       And in terms of making arguments about selective

21   prosecution, I think counsel on both sides is experienced

22   enough to know that punishment, selective prosecution are

23   not issues for a jury.  They're issues for the Court, and

24   I'll decide them accordingly.  So a little bit of a

25   warning on that.

7

1        But the *in limine* motions at this point in time,

2   they're not ripe for decision, and I don't intend to go

3   through a lengthy analysis of them.

4        So that having been said, we can get on to what

5   seems to be the issue here for both the Government and the

6   defendant, and that is the proposed examination of the

7   jurors.

8        You have a joint request on proposed *voir dire*

9   questions, and that was submitted at the beginning of

10  August.  There are several of the questions that the

11  Government objects to.

12       And the motion for an anonymous jury and jury

13  questionnaire, the Government opposes the motion for a

14  jury questionnaire -- and I agree with the Government.

15       One of the worse things I've come across in the

16  thirty-plus years I have been a judge is a written

17  questionnaire.  It offends people.  We want people to come

18  in and give up up to six weeks of their life to sit on

19  this case, and it's important that we treat them with

20  respect.

21       Not that questionnaires aren't necessary in

22  certain cases.  I have used them before.  They're very

23  inefficient.  You drag in two hundred people on the first

24  day of trial.  You give them the questionnaires.  They

25  have to fill them out in court.  And then you go over it,

1   back and forth with the parties as to who can stay, who

2   should come back.  Very inefficient.

3           I think individual *voir dire*, which I have used

4   for many years, is the way to go.  You ask general

5   questions.  It's not like you're going into a doctor's

6   office or you have a business appointment and someone

7   hands you a questionnaire.  You're asking jurors to

8   donate, to come to be devoted to this case, so the

9   defendant gets a fair trial, and the Government is able to

10  present the evidence it believes is worthy of a

11  conviction.

12          So from that point, I think everybody should

13  recognize that I will do individual questioning of jurors.

14  They will come up.  They'll first be given a case

15  description *en masse*.  They'll be given what the

16  requirements are to be a juror, a fair and impartial

17  juror.

18          Out of the 800 people that were summoned several

19  weeks ago in jury summonses, 700 remain.  The first

20  hundred or so -- 702 -- the first hundred or so had

21  excuses.  They were assigned to different dates.  They

22  were given time to go on vacation, plans that they had

23  made far in advance.  So we're left with 702 people.

24          Out of the 702 people, we have had responses

25  most recently from 300 -- there are 348 jurors that are

9

1   available as of today, and that number will go up because

2   some people will check out their schedules and they'll

3   respond.

4           So at this point, it's estimated that 348 people

5   will be available.  We figure those that come in,

6   somewhere around two hundred, but eventually, they'll be

7   300 jurors available.  So from around 800, we're now down

8   to 348 that are definitely available, and that number will

9   probably go up.

10          So the first day -- this is what I

11  contemplate -- we'll have them come in in groups,

12  ceremonial courtroom.  I'll do the case description,

13  describe what the jurors are required to do, how they're

14  going to be treated, what the schedule is.

15          I always make them a promise I'm not going to

16  waste their time, and the lawyers and the parties and the

17  witnesses, aren't going to waste their time.

18          So we start promptly at 9:30.  We have a

19  mid-morning break, and then we have a break for lunch.  We

20  go to the afternoon.

21          If we have jurors taking public transportation,

22  means will be taken for them to get to train stations, et

23  cetera.  But they must know that we generally don't sit on

24  Friday, and what their requirements will be to serve as

25  jurors.

1          After you give them that, they'll go outside,

2     and then we'll individually call jurors -- and yes, it is

3     somewhat tedious, but using a written questionnaire as

4     compared to an individual one-on-one *voir dire* with the

5     judge and the parties present makes a lot more sense.

6          You get spontaneous responses.  You can ask more

7     probing questions.  You're able to hear about the jurors,

8     not just directly ask them what their political

9     affiliation is.  You can ask -- I can ask them a whole

10    variety of questions that will obviously help you decide

11    what jurors are for cause, which ones you want to use your

12    peremptory challenges on, and it's, to me, a lot more

13    efficient.

14         Sending out a questionnaire to them on the first

15    day there and then having them come back, not know if

16    they're coming back, jamming up their schedules for weeks

17    at a time.

18         So that's why I do it individually.  I get

19    spontaneous.  I get what I consider truthful responses,

20    and I also get to see how the juror interacts with

21    questions and  discussions.  I want 12 people in there

22    that get along with each other, not that I'm going to have

23    issues.

24         So individual *voir dire* questions of a more

25    sensitive nature I think is a fairer way to go and much

1  more efficient, even though at first, it seems rather

2  tedious.  So that's one portion of it.

3          I know we'll be done in a week.  So the jury's

4  going to be instructed that they have to come back on the

5  16th, and we should be done with jury selection the week

6  before.

7          In addition, when they come back, we'll set them

8  up, and I have previously explained that they're going to

9  be an anonymous -- partially anonymous jury.  Only the

10  Government and defense counsel and the defendant will know

11  the identity of the jurors.

12          The press will be present during *voir dire*.  I'm

13  not looking to exclude the press.  They have a right to be

14  here.

15          However, I implore everybody in this case, don't

16  start doing any independent research or investigation.  I

17  can't preclude you from doing it, but if I find -- because

18  I always tell jurors, let me know if someone has reached

19  out to you in any fashion, and don't discuss that endeavor

20  with the other jurors.  So it's pretty clear that I want

21  the jury protected from any outside influence.

22          With regard to publicity, I don't control the

23  press.  I don't tell them what to put in the papers.  I

24  expect that everyone here, the parties involved, will

25  respect my direction.  Obviously, the Government can't

12

1    contact jurors, and the defendant can't contact jurors.

2    You're the only ones that know their identity, and you

3    can't share them with other people.  Straightforward

4    enough?

5            Let me just double-check to see if there's

6    anything else on the questionnaire or the produced

7    questions.

8            I'll ask question general questions that will

9    lead me down to find out whether or not the ultimate

10   question is, can the juror be fair and impartial?  Do they

11   have any preconceived notions?  Will they respect the

12   right of the defendant not to testify if he choses not to

13   testify?  Do they hold the Government to proof beyond a

14   reasonable doubt?  Can they be fair and impartial?

15           That's all we're looking for, twelve fair and

16   impartial people that understand English, that can pay

17   attention, that don't have any pressing requirements that

18   would cause them not to be available for their service as

19   jurors.

20           In the words of Arthur Spatt, jury service is

21   just as important as military service, and I hope to

22   endeavor to convince the jurors that that is the type of

23   trial we're going to be having.

24           So additional things with respect to my rulings

25   in terms of question 60, whether or not the political

1    background -- I think I've described how I will make

2    inquiry, general inquiry, and then ask them if they are --

3    if there is any view that they have, whether it be

4    politics or anything related to a person's identity,

5    gender or otherwise that would cause them not to be fair

6    and impartial here.

7              Has there been any additional 16(b) reciprocal

8    discovery that's been conducted?

9              Mr. Murray?

10             MR. MURRAY:  Your Honor, I just want to point

11   out that I have had a working relationship with Mr. Ryan

12   predating the indictment.  There were grand jury subpoenas

13   that we've complied with.  There was discovery turned

14   over.

15             In addition --

16             THE COURT:  There was a proffer.

17             MR. MURRAY:  Yes.  So I don't want the Court to

18   be of the opinion that we are stonewalling them and not

19   sharing information.  We have been.  So I just want to

20   make that clear, Judge.

21             THE COURT:  Okay.

22             What are you looking for, Mr. Ryan, that you

23   haven't gotten?

24             MR. HARRIS:  Your Honor, the Government wrote to

25   defense counsel I think more than a month ago asking

14

1    confirmation that it either produce all reciprocal

2    discovery or would do by a date certain.  I think we said

3    the end of July.

4              THE COURT:  Yes.

5              MR. HARRIS:  We didn't receive a reply from

6    defense counsel, so we have had no representation that

7    they have completed their reciprocal discovery obligations

8    or that they intend to by a date before trial.

9              What we are simply seeking to avoid is, you

10   know, finding out if there are documents they intend to

11   introduce in evidence or cross-examine the witnesses with

12   that have never been turned over in discovery, and we have

13   not received that assurance to date.

14             MR. MURRAY:  Judge, I just want to say that I do

15   not subscribe to the tactic of trial by ambush.  I would

16   never knowingly delay disclosure versus not disclose

17   something and try to introduce it later.  That's not how I

18   operate.  That's not how any of us operate.

19             In the abundance of caution, we are checking

20   with all possible resources for any other material that

21   might be suitable to turn over.  As of right now, we

22   haven't found any, but that goes on.  We're going to

23   continue until we have exhausted all efforts.

24             THE COURT:  That sounds like almost?

25             MR. MURRAY:  Yes.

1           THE COURT:  Mr. Murray, they'll be an

2    examination if documents come in as to why you didn't find

3    them earlier, and I'll make that determination at trial.

4           MR. MURRAY:  Understandable.

5           THE COURT:  At this point -- at this point,

6    you're saying there's nothing that you have that you need

7    to turn over under Rule 16?

8           MR. MURRAY:  Yes.  Nothing in our possession

9    that we have that we need to turn over.

10          THE COURT:  Or nothing that you know about out

11   there?

12          MR. MURRAY:  Yes, or that we know about.

13          But again, this involved a campaign.  There's

14   complications with the campaign in the way they stored

15   their material.  So we are leaving no stone unturned to

16   look for certain material.

17          MR. HARRIS:  Your Honor, I'll take Mr. Murray at

18   his word at this stage; however, if documents come to

19   light during trial, we will ask the Court to preclude

20   them, and we want defense counsel to be on notice of that.

21          THE COURT:  Obviously, he's on notice, and the

22   Court is aware.

23          MR. HARRIS:  Thank you, Your Honor.

24          THE COURT:  Thank you both.

25          Okay.  I think we've straightened out the dates

16

1    that defendant has to comply -- let me get this

2    straight -- with respect to the parties getting together.

3          Let me say one thing that I think is very

4    important for both sides to consider, and that is, the

5    Government claims they need three weeks for trial.

6    Oftentimes, if the Government and defense can sit down and

7    do things we call stipulations -- you don't need ten

8    witnesses to come in and say the same thing over and over

9    and over and over again.

10          MR. HARRIS:  (Nods head affirmatively.)

11          THE COURT:  Preliminary items, defense can

12    stipulate to them.  Certain documents are coming in.

13    There's no need to have *in limine* motions over and over

14    and over again, repeated objections over and over and over

15    again.  This can be streamlined.

16          How many witnesses do you expect to call,

17    Mr. Harris?

18          MR. HARRIS:  Your Honor, we're making every

19    effort to streamline the trial, and we are going to try to

20    stipulate as much as we can.

21          There are a lot of live witnesses in this case

22    because there are a lot of fact witnesses who are victims

23    in this case.  There are 23 counts.

24          THE COURT:  Yes.

25          MR. HARRIS:  I think at this stage, we are

1    anticipating at least three dozen witnesses, and these are

2    not witnesses that can easily be stipulated away to

3    because they are victims or fact witnesses.

4              THE COURT:  Okay.  You know, I have had cases

5    that have hundreds of victims.  And you know what happens?

6    You limit it to about ten or so.  So go into it carefully.

7              And defendant is advised that you should be

8    reasonable.

9              MR. MURRAY:  Judge, if I may, I just want to say

10   that Mr. Ryan and I and the prosecutor's team, we have had

11   a wonderful working relationship.  There are very few

12   issues that we were not able to resolve between us.

13             I will tell you that we have had good faith

14   conversations about stipulations, one, in fact, issue

15   being venue.  We don't want the Government to have to call

16   witnesses for redundancy and authenticity.  That's

17   unnecessary.  We don't want to put the jury to sleep

18   anymore than they do.  We are discussing stipulations that

19   I think can streamline this.

20             THE COURT:  Three dozen victim witnesses?  Is

21   that accurate?  Is that --

22             MR. HARRIS:  No, Your Honor.

23             THE COURT:  -- no, three dozen witnesses total?

24             MR. HARRIS:  Approximately, Your Honor.

25             MR. MURRAY:  But we're willing to work with

1  stipulations, too.

2          We have told them, the one issue that we

3  discussed, previously was the venue issue.  It's not

4  necessary for you to prove venue.  We'll stipulate to it.

5          THE COURT:  Okay.

6          MR. MURRAY:  So we're talking about other issues

7  where we can find common ground.  We want to streamline

8  this as well, Judge.

9          MR. HARRIS:  Your Honor, I can assure you that

10 both parties will make every effort to streamline this

11 trial as much as we can.

12         THE COURT:  Make me hopeful.

13         Seriously, I mean, this is not a case -- you

14 have the -- I guess I could say quasi-advantage of having

15 a somewhat anonymous jury, somewhat in the sense that

16 defense and Government and people in the clerk's office

17 know the jurors' identity.

18         So it's important that you sit down and discuss

19 what's absolutely necessary, and I don't know what the

20 defendant intends to offer, if anything, on the defense

21 case.

22         But four weeks for a trial, that's a long time

23 for a jury, and that's excluding jury selection.  So until

24 I hear to the contrary that there's something else, that's

25 what I'm going to advise the jury of.

19

1          You have a statement of the case that I think

2     you all agree on that will be told to the jury.  And 3500

3     material, the dates on that are clear.  And you should be

4     good to go with your stipulations, certainly the week of

5     jury selection to have them by then.

6          Anything else from defense or the Government?

7          MR. HARRIS:  Just a few minor issues to clarify,

8     Your Honor.

9          How many alternates does the Court anticipate

10    seating?

11         THE COURT:  We were discussing that this

12    morning.  I was thinking six, which is what I usually

13    pick, but if this is going to go six weeks --

14         MR. HARRIS:  Your Honor, I would be very

15    surprised if this trial ends up going six weeks.  We're

16    going to make every effort to streamline.

17         Knowing that jury selection in this case may be

18    an onerous process, we respectfully suggest six alternates

19    so that we don't run out, and are able to complete this

20    trial once.

21         The second matter --

22         THE COURT:  Okay.  Well, let me hear from the

23    defendant.

24         Do you have any issue with that?  I mean, I've

25    had trials last over six months -- and by the way, that

1  was one where I had a jury questionnaire.

2          In any event, I think that if we're dealing with

3  the length of the trial that the Government has indicated,

4  another week or so for defendant if he intends to put on

5  any defense case, that six should do it.

6          My trial that lasted over six months, I had six

7  alternates.

8          MR. MURRAY:  We're not requesting any further

9  additional alternates, Judge.  We think that's sufficient.

10         THE COURT:  All right.  I happen to agree, so

11 we'll go with the six.

12         MR. HARRIS:  Thank you, Your Honor.

13         And then just another one or two ministerial

14 matters.

15         What time does the Court anticipate starting the

16 trial day and ending the trial day?

17         THE COURT:  The trial time?

18         MR. HARRIS:  Yes.

19         THE COURT:  Nine o'clock, but you won't get jury

20 selection until -- you won't get started on that until

21 10:30, 11:00, because they all have to be reviewed,

22 checked in with the jury clerks.

23         And we no longer have a cafeteria, just telling

24 you about convenience.  They have a mini-mart downstairs,

25 and we'll see what people can do to get lunch while

21

1    they're here.

2              The problem sometime is just getting in a car,

3    going out, getting lunch and so forth, so we'll see what

4    we can do.

5              But of course, the same rules apply:  No contact

6    by the Government or defense with jurors.  So on the day

7    of jury selection, come in around like 10:30.

8              Eric, you think we have a lot coming in?

9              COURTROOM DEPUTY:  Yeah, 10:30 should be good.

10             THE COURT:  10:30, we'll set you up in the

11   ceremonial courtroom.

12             COURTROOM DEPUTY:  Judge, they'll meet here.

13             THE COURT:  Oh, we'll start out here.  That's my

14   usual practice, to start out here the day of jury

15   selection.

16             Stay out of the elevators with anyone you don't

17   know, same for the Government.  And there shouldn't be

18   much traffic between the tenth floor and the second floor

19   where the ceremonial courtroom is.  But just pay

20   attention.  Don't talk about the case when you're in the

21   elevator or in close proximity to other people.

22             MR. MURRAY:  Of course the Court will let them

23   know.  Obviously, if someone says good morning to us,

24   we're going to ignore them, but I want them to interpret

25   us as being --

22

1          THE COURT:  They're not that sensitive, I'm

2     sure, but we will tell them that the attorneys aren't

3     allowed to talk to them.

4          MR. MURRAY:  Thank you.

5          MR. HARRIS:  Thank you, Your Honor.

6          And then just a couple of deadlines I wanted to

7     confirm and clarify.

8          With respect to the exhibits and witness lists,

9     the Court had entered two orders.  The way I read the

10    Court's orders is that the parties should change exhibits

11    and witness lists amongst each other on August 19th and

12    submit them to the Court on August 26th.

13         THE COURT:  Absolutely.  That way, you can get

14    rid of all the annoying issues about one page missing or

15    you didn't get this and this wasn't legible.  Okay?

16         MR. HARRIS:  Thank you.

17         THE COURT:  You can give me the good stuff.

18         MR. HARRIS:  Thank you, Your Honor.  Will do.

19         And then with respect to 404(b), I just wanted

20    to clarified, given the Court's order, we have provided

21    notice to defense counsel.  We've produced underlying

22    materials as part of Rule 16.  I believe there's nothing

23    further for us to do on that matter, but I just wanted to

24    confirm with the Court.

25         THE COURT:  I have them.  I've reviewed a

23

1   variety of items you have, and in terms of the proffer,

2   you have that recorded.  You have it basically all printed

3   out, 150 pages or more, And you have provided it, and the

4   defense agrees that they have gotten copies.  Okay?

5               MR. HARRIS:  Lastly, Your Honor, the last item

6   noted in our letter was the Jewish holidays that are going

7   to be occurring.

8               THE COURT:  Oh, yes.  Okay.

9               So general practice is, if the lawyers, the

10  parties, the defendant, any witnesses are unavailable,

11  then obviously -- I think it's the third and the fourth we

12  won't sit for religious reasons.

13              So I'm available, but I generally find that when

14  you're selecting a jury, you have to make accommodations

15  for religious observances.  So it's not that big of a

16  deal.  I think we said the third and the fourth.

17              MR. HARRIS:  I believe that's right, Your Honor.

18  I assume not just the parties and the witnesses, but if

19  there are jurors who are --

20              THE COURT:  Of course.

21              MR. HARRIS:  Yes.

22              THE COURT:  We can't go on without them.

23              MR. HARRIS:  Just didn't want to lose one of our

24  jurors for the day.

25              THE COURT:  No worries.

24

1        MR. HARRIS:  I don't think the Government has

2    any other issues to raise.

3        THE COURT:  How about you, Mr. Murray?

4        MR. MURRAY:  Judge, with all due respect, I do

5    have one issue.  I previously raised this issue, and it

6    has to do with witnesses, and I've tried to discuss this

7    with Mr. Harris.

8        There's one particular witness that is essential

9    to our case, and that is the campaign treasure, Nancy

10   Marks.

11       THE COURT:  Sure.

12       MR. MURRAY:  Nancy Marks has pled guilty, but

13   has not been sentenced.

14       As far as we know, there's been no cooperation

15   agreement, and it's potentially the Government's position

16   that they may not call her, so where we would be required

17   to call her, and if I call her and she still has jeopardy,

18   she can then assert the Fifth Amendment and not answer

19   questions, which would be devastating to our defense.

20       I was trying to resolve this with the

21   Government, as I did try, you know, months ago, when we

22   first raised this.

23       If we could somehow reach an understanding as to

24   are they going to call her, is there a cooperation

25   agreement or do we need to move to compel that she be

25

1   granted immunity, so she can testify?

2           It's so pivotal to our defense to have our

3   campaign treasurer take the stand under oath that I don't

4   think we can do without, and I just have no answers at

5   this point -- and it might end up -- because that's a

6   cumbersome process -- it might delay the process if we

7   wait for the exchange of the witness.

8           THE COURT:  Mr. Harris or --

9           MR. HARRIS:  My colleague, Mr. Taddei, is going

10  to address this issue.

11          THE COURT:  All right.

12          MR. TADDEI:  Thank you, Your Honor.

13          So they haven't filed any paper on this,

14  obviously, but we are prepared to address it orally at

15  Your Honor's convenience.  As Your Honor is aware, there

16  is a --

17          THE COURT:  I'm ready.

18          MR. TADDEI:  -- a three-factor test for this.

19  They have to allege first that the Government engaged in

20  discriminatory use of immunity to gain a tactical

21  advantage.  They have to show that the witness's testimony

22  would be material, exculpatory, and not cumulative.  And

23  they need to show that the testimony must be unobtainable

24  from any other  source.

25          And that's from *Turkish*, 623 F. 2d at 777.  The

26

1    general rule is that the Government should not be

2    compelled to confer immunity on a defense witness in order

3    to benefit the defense.

4            Now, of course, they are going to get our

5    witness list, Your Honor, on the 19th.  At that point --

6            THE COURT:  Right.

7            MR. TADDEI:  -- they will know whether or not

8    the Government plans to call this particular witness at

9    trial.

10           At this point, they have made no allegation that

11   they have met any of those three factors from *Turkish* that

12   require immunization of any particular witness.  So the

13   issue hasn't even really been raised formally to this

14   point.  There have been references to it over time.

15           But our position would be, one, it's unclear

16   whether or not we're even going to call this particular

17   witness; and two, they haven't met the legal standard that

18   they're required to meet in order to compel immunity at

19   this time.

20           MR. MURRAY:  Judge, Mr. Taddei is correct.  We

21   have not filed a formal motion.  As I indicated, there are

22   very few things that we have not been able to work out on

23   our own.  We were hoping to resolve that together.  This

24   is the first time I'm hearing now from the Government that

25   they may not call her.

27

1      So I would like the opportunity to then file a

2  motion to compel.

3      THE COURT:  Well, you can file the motion, but I

4  don't necessarily think I'm going to have the facts that I

5  need to determine it.  We'll see how it goes.  I'm not

6  going to stop you from filing a motion.  We've got lots of

7  motions in this case.

8      MR. MURRAY:  I just think to preserve the issue,

9  I need to file it, Judge.

10     THE COURT:  Sure.

11     MR. MURRAY:  And even if the Court makes the

12  determination later after certain evidence comes out that

13  we can renew that.

14     THE COURT:  And the Government has to make up

15  their mind whether or not they're going to call Ms. Marks

16  as a witness.

17     MR. TADDEI:  Yes, Your Honor.

18     THE COURT:  And we'll find out on the 16th, is

19  it?

20     MR. TADDEI:  The 19th, Your Honor.

21     THE COURT:  Okay.

22     MR. MURRAY:  Judge, I raise this just in the

23  abundance of caution because this is a campaign finance

24  case.  She is the campaign treasure.  She's an essential

25  witness.  I wouldn't do this if it wasn't absolutely

28

1   necessary, Judge.

2           THE COURT:  Sure.

3           Anything else?

4           MR. HARRIS:  Not from the Government.

5           MR. MURRAY:  Not from the defense.  Thank you,

6   Judge.

7           THE COURT:  All right.  So I will see you folks

8   on September 9th, absent any emergencies or motions that

9   need to be decided.

10          That completes the proceeding.  Have a good day.

11          MR. HARRIS:  Thank you, Your Honor.

12          THE COURT:  You're welcome.

13          (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25