

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:AXB/LAZ
F. #2022R01030

*610 Federal Plaza*
*Central Islip, New York 11722*

January 7, 2025

<u>By ECF</u>

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Devolder Santos
      <u>Criminal Docket No. 23-197 (S-2) (JS)</u>

Dear Judge Seybert:

   The government respectfully submits this letter in opposition to defendant George Anthony Devolder Santos's request to adjourn his sentencing in the above-captioned matter. *See* ECF No. 109.

   The current sentencing date of February 7, 2025, was established approximately five months ago, immediately following Santos's guilty plea to wire fraud and aggravated identity theft. *See* ECF No. 102. Santos's plea was entered pursuant to an agreement that his attorneys negotiated with the government, which required him, inter alia, to pay the sum of $578,752.94, comprised of $373,749.97 in restitution and $205,002.97 in forfeiture. By letter dated January 3, 2025, Santos claims that he needs more time (six months, in fact) to come up with this money, and asks the Court to trust that his weekly podcast, "Pants on Fire with George Santos," will eventually generate enough revenue to satisfy his obligations. Santos's claims are facially speculative and, in any event, entirely insufficient to warrant such a lengthy adjournment. His request for delay should be denied, and sentencing should proceed as scheduled.

   *First*, the government, the numerous victims of Santos's criminal schemes, and the community writ large have a strong collective interest in the expeditious resolution of this case. Particularly where, as here, Santos faces a mandatory minimum term of imprisonment but remains at liberty prior to sentencing, the government seeks to ensure that justice is swiftly imposed without undue delay. Santos's victims are also entitled to be reasonably heard at the sentencing proceeding and to have that proceeding be "free from unreasonable delay." 18 U.S.C. § 3771(a)(4), (7). A delay to allow Santos to develop his podcast—the title of which is a tone-deaf and unrepentant reference to the crimes he committed— is presumptively

unreasonable and, as discussed further below, unlikely to meaningfully increase his ability to satisfy his outstanding forfeiture and restitution obligations. Under these circumstances, a six-month adjournment is "unnecessary and contrary to the interests of justice, especially given the public's and the victim's need for and right to finality." *United States v. Rosado*, No. 21 CR 516 (RMB), 2024 WL 4557403, at *1 (S.D.N.Y. Oct. 23, 2024) (denying sentencing adjournment); *see also United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995) ("[T]he public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied'").

*Second*, Santos's claim that his financial circumstances will have improved enough in the next six months to satisfy his forfeiture and restitution obligations is extremely speculative. His letter fails to provide any accounting of his current financial condition; fails to offer any explanation of his dissipation of assets (including personal spending) in the months since his guilty plea; and omits any meaningful description of his extant arrangement with YW Productions. On the latter point, despite premising his request squarely on the prospect of a six-month timetable for revenue realization, Santos does not identify any source, contractual or otherwise, of the predicted financial returns from the podcast, via salary or any other form. Rather, the letter references quarterly distributions of earnings, presumably of advertising revenue. The Pre-Sentence Investigation Report ("PSR") prepared by the Probation Department likewise indicates that Santos's compensation from the podcast will consist of 50% of net profits, to be paid within 90 days of the end of each calendar quarter. *See* PSR ¶ 139. But that arrangement is highly unlikely to net Santos enough money to satisfy his restitution and forfeiture obligations by August; on the contrary, under that arrangement, YW Productions can delay distributing earnings to Santos for the first quarter of 2025 until June 2025 and need not distribute earnings for any additional quarters until after August 2025. Moreover, the letter and attached declaration readily concede that Santos's podcast is not expected to "generate meaningful income" until *after* the first quarter of 2025, further undermining Santos's claim that a six-month adjournment will put him in a position to meet his obligations.

Casting further doubt on Santos's reasoning is the fact that, in the past year, he has already generated substantial revenue streams through other means, including well more than $400,000 from his Cameo appearances and $400,000 from his participation in a documentary. *See* PSR ¶ 140. Despite earning more than $800,000 (and, prior to that, maintaining a $174,000 publicly-funded salary as a Congressman),[1] Santos has claimed to the Probation Department that he has little more than $1,000 in liquid assets. *See* PSR ¶ 149. No explanation is given in Santos's letter for how those funds were spent. The Court should have serious misgivings about postponing Santos's sentencing based on his purported failure to save $578,752.94 after having previously claimed in the media to earn $80,000 *per day* capitalizing

---

[1] Notably, Santos did not pay, or offer to pay, his criminal liabilities from these revenue sources. Nevertheless, if Santos has retained any funds from these or other sources, a delay in sentencing would limit the government's ability to collect such funds and provide additional time for the dissipation of these funds prior to sentencing.

2

on his notoriety. *See* Bess Levin, *George Santos Says He's Making Over $80,000 a Day on Cameo*, VANITY FAIR (Dec. 11, 2023).[2]

*Third*, even if the Court accepts Santos's representations at face value, which it should not, Santos's inability to satisfy his forfeiture and restitution obligations prior to sentencing does not provide a valid basis to delay sentencing. With respect to forfeiture, the Court already entered an Order of Forfeiture, which becomes final as to the defendant at the time of sentencing. *See* ECF No. 107. Although the Order of Forfeiture provides that Santos shall pay a forfeiture money judgment of $205,002.97 thirty days prior to sentencing, it also provides the means by which that forfeiture money judgment shall be satisfied, if he fails to meet that deadline, including, for example, by forfeiting any property up to the value of the outstanding balance. *See id.* Thus, the government has the ability to pursue satisfaction of Santos's forfeiture obligations after sentencing has concluded, and any purported financial inability to pay the full amount should not delay sentencing.

With respect to restitution, the Court must order "restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f). A person sentenced to pay restitution "shall make payment immediately, unless, *in the interest of justice*, the Court provides for payment . . . in installments." 18 U.S.C. § 3572(d)(1) (emphasis added). In making said determination, the Court must consider: (a) "the financial resources and other assets of the defendant," (b) the "projected earnings and other income of the defendant," and (c) "any financial obligations of the defendant." 18 U.S.C. § 3664(f). Thus, while Santos's criminal penalties should be ordered "due immediately,"[3] and the government will seek to enforce the judgment to the fullest extent possible and in the shortest time possible in accordance with 18 U.S.C. § 3664, *see United States v. Saemisch*, 70 F.4th 1, 7 (1st Cir. 2023) (citing *Dolan v. United States*, 560 U.S. 605, 612 (2010)), the Court may nonetheless impose a payment schedule that identifies the minimum payments the defendant must make, *e.g.*, "a single lump-sum payment partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f). Although Santos claims he would prefer to make full restitution prior to sentencing (a

---

[2] Available at https://www.vanityfair.com/news/george-santos-says-hes-making-over-80000-a-day-on-cameo#:~:text=George%20Santos%20Says%20He's%20Making%20Over%20%2480%2C000%20a%20Day%20on%20Cameo,-Being%20expelled%20from&text=That's%20the%20sort%20of%20prospect,is%20living%20his%20best%20life (last visited Jan. 6, 2025).

[3] Courts have repeatedly emphasized that the "due immediately" language does not require immediate payment in full, but, rather, requires a defendant to discharge his obligation as quickly as possible. *See, e.g., United States v. Buck*, 470 F. App'x 304, 305 (5th Cir. 2012) (noting "immediate payment" does not entail "immediate payment in full"; rather, it requires "payment to the extent that the defendant can make it in good faith, beginning immediately" (citation and internal quotation marks omitted)).

3

questionable proposition given his inability or unwillingness to prioritize his financial obligations over the past five months), the Court's ability to consider Santos's financial circumstances and its flexibility in crafting the schedule by which minimum restitution payments must be made should mitigate any concerns about proceeding to sentencing on schedule.

*Fourth*, the Court should deny Santos's request to adjourn sentencing because doing so would create a perverse incentive structure, rewarding defendants who seek to capitalize on their notoriety and criminality. Put differently, allowing Santos to stave off sentencing *specifically to monetize his infamy* would send a message to the public that crime pays. Throughout the pendency of this criminal case, Santos has made clear his intent to use the media attention accompanying this proceeding to promote himself. In fact, following his initial arraignment in May 2023, Santos held an impromptu press conference on the courthouse steps and said that his arrest and (successful) prosecution "ha[d] been an experience . . . for a book."[4] Since that time, Santos has appeared as a guest on scores of television programs, started a lucrative Cameo business, participated in a documentary, and now launched a podcast that has, as its title, a winking reference to the lies, fraud, and deceit that are at the heart of this case. Delaying sentencing to give him further time to grow his podcast listenership would enable Santos to further use his criminal prosecution for personal benefit.

---

[4] *See* Jennifer McLogan, *"He Need to Go": Constituents, Politicians React to Charges Against George Santos*, CBS NEWS (May 10, 2023), *available at* https://www.cbsnews.com/newyork/news/george-santos-charges-reaction/ (last visited Jan. 6, 2025).

4

The government respectfully requests that the Court hold Santos "accountable like any other American that breaks the law"[5] and move expeditiously to sentencing.

    Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Ryan C. Harris
Anthony Bagnuola
Laura Zuckerwise
Assistant U.S. Attorneys

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

By:    /s/
Jacob R. Steiner
John P. Taddei
Trial Attorneys

cc:    Clerk of the Court (JS) (by ECF)
      Counsel of Record (by ECF)

---

[5] *See* Adam Reiss and Dareh Gregorian, *Former Rep. George Santos Pleads Guilty to Fraud Charges*, NBC NEWS (Aug. 19, 2024), *available at* https://www.nbcnews.com/poli tics/congress/former-rep-george-santos-pleads-guilty-fraud-charges-rcna129255 (last visited Jan. 6, 2025) (quoting Santos, following his guilty plea, as stating to reporters: "This plea is not just an admission of guilt. It's an acknowledgement I need to be held accountable like any other American that breaks the law.").