

**ANDREW MANCILLA**
NY, CA, NJ, SDNY, EDNY, DNJ,
2ND CIRCUIT, US SUPREME COURT

260 MADISON AVE, 22ND FLR
NEW YORK, NY 10016
T 646.225.6686  F 646.655.0269
andrew@law-mf.com

January 8, 2025

**By ECF**

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    **REPLY IN SUPPORT OF MOTION TO CONTINUE SENTENCING**
               **United States v. George Santos, No. 23-cr-197 (S-2) (JS)**

Dear Judge Seybert:

      We respectfully submit this Reply in further support of Mr. George Santos's motion to continue sentencing (ECF No. 109) and in response to the government's opposition, filed on January 7, 2025 (ECF No. 110).

      Far from providing a principled basis to deny Mr. Santos additional time in which to fulfill his substantial financial obligations, the government's opposition reads more like a press release—replete with references to sensational media coverage and personal attacks, yet devoid of any sound legal or factual basis to reject a straightforward scheduling request. The government's sudden need for an "expeditious resolution" stands in stark contradiction to its consent to two prior lengthy adjournments of Santos' codefendant and coconspirator, Nancy Marks. Yet for Santos, the government seeks to rush towards sentencing. Its abrupt pivot is nothing short of disingenuous, politically motivated, and antithetical to actual justice.[1]

---

[1] At the government stated that "if defense counsel comes to us and asks for an adjournment for additional time to gather the forfeiture, we will confer with them. Without knowing the details, and this is hypothetical in the future, I don't think it would be fair for me to take a position right now." 8.19.24 Plea Tr. at 34:24-35:4 (annexed hereto as **Exhibit A**). There seems to have been no conferral at all, the government simply refused counsel's request without any consideration of Mr. Santos's genuine efforts and financial situation. In fact, the government failed to even provide counsel with the "Individual Financial Disclosure Statement" for Santos to complete 60 days prior to sentencing per the plea agreement, until undersigned notified the government of its oversight. It is not Mr. Santos's earning potential that is "speculative," it's the government's basis for refusing a reasonable adjournment.

The government's opposition also ignores the reality that additional time is needed for defense counsel to prepare a comprehensive sentencing submission. There are six guideline points still contested[2], and we are in the midst of compiling detailed materials, including character letters from numerous supporters. The government's opposition gives no explanation as to why a straightforward, six-month continuance—standard practice for complex financial cases—should be denied here.

However, all that being said, the government's opposition is troubling for several reasons. First, as mentioned above, its urgency rings hollow given its repeated consent to adjourn sentencing for Mr. Santos's co-defendant Nancy Marks and in the related case with Sam Miele. In both matters, the government consented to multiple continuances without once invoking the arguments of "unreasonable delay" or "interest of victims" that it suddenly wields here. In fact, in Mr. Miele's case, the government went so far as to *agree to a decrease in his sentencing exposure based on his repayment of certain amounts*, an offer the government *refused* in this case.

This brings me to our second concern: the government's fervent opposition appears purely political. Rather than addressing the core issue—maximizing restitution for the victims—the government's opposition fixates on Mr. Santos's public profile. More than half its filing attacks his media appearances, references to cameo videos, and the irreverent title of his podcast. This glaring non sequitur has no bearing on whether a continuance would facilitate payment of forfeiture and restitution, and it entirely ignores defense counsel's need for additional time. The government's zeal for moralizing Mr. Santos's method of earning a living undermines established principles that encourage lawful employment, especially when it directly furthers restitution efforts.

Third, the government's characterization of Mr. Santos's finances and financial prospects is false and misleading. The government misrepresents to this Court that Santos earned more than $800,000 in the past year and offers no explanation for the "dissipation of assets." ECF No. 110 at 2. This is simply false. Mr. Santos has not earned over $400,000 in relation to any documentary, nor from his Cameo appearances[3], and the income that he did generate was primarily used to pay counsel's fees long before his plea in August 2024.[4] Since his plea he has not been successful in securing meaningful income, but has laid the groundwork to do so through, for example, with this podcast. The government's reckless misrepresentations to this Court (notably without having conferred with defense counsel to verify their accuracy in the PSR) appears to have been intended to capture tabloid headlines rather than advance the interests of justice it purports to champion.

In addition, the government's assertion that the podcast income is too "speculative" to justify a continuance misapprehends the reality of modern media ventures and ignores

---

[2] We remind the Court that Mr. Santos contests the leadership role adjustment as well as the vulnerable victim adjustment. Removal of those points would also entitle him to an additional reduction under the recent amendments for zero-point offender.
[3] The net income Santos generated from Cameo was approximately $350,000, the vast majority of which was earned over a year ago in 2023, long before the plea, and was spent on legal fees and living expenses for him and his family members.
[4] Defense Counsel will be objecting to these statements in the PSR in accordance with Rule 32.

advertising compensation structure. The quarterly compensation structure of his podcast is an unavoidable fact of that business model and, as detailed in the Declaration of Mr. Sprouse (ECF No. 109-1), YW Productions has invested significant resources to ensure a viable production, including advertising partnerships that are only just now ramping up. As listenership increases, so too will advertising partnership opportunities. Undersigned was advised by Mr. Sprouse that Mr. Santos will also have the opportunity at that time to explore private advertising partnerships that fall outside of the YW compensation model.

Regardless, even if Mr. Santos falls short of making full payment of forfeiture and restitution by sentencing, the law provides the government multiple avenues to collect post-sentencing. *See* ECF No. 107 (Order of Forfeiture). Thus, the government's concern over potential nonpayment despite Mr. Santos's efforts, is belied by robust post-conviction enforcement mechanisms already in place.

Fourth, the government's reliance on the victims' right to a proceeding "free from unreasonable delay" under 18 U.S.C. § 3771(a)(7) actually undermines its position—the statute's focus on "unreasonable" delay implicitly acknowledges that reasonable delays, particularly those aimed at maximizing victim restitution, are not only permissible, but desirable. Importantly however, the statute also provides that victims also have a right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).

No one contests that a lengthy or indefinite delay would be unjustified. But here, the defense asks for a single continuance of approximately six months—hardly extraordinary—predicated on both a legitimate basis for maximizing victim recovery and for defense counsel's sentencing preparation. If anything, proceeding to sentencing immediately risks truncating Mr. Santos's best opportunity to muster a substantial lump-sum payment. The government never explains how forcing an early sentencing, with partial or minimal restitution, serves these victims' interests. Nothing about the requested continuance prejudices victims in any tangible way. The government's self-professed zeal to "swiftly impose justice" is simply their own, and it rings hollow when juxtaposed with not only their position in the related cases, but with the opportunity that a more complete restitution can be achieved on a modestly extended timeline.

Fifth, the government's suggestion that an adjournment would "create a perverse incentive structure" fundamentally misaligns with the purpose of restitution in criminal cases. Mr. Santos is not seeking to *profit* from criminal wrongdoing; he is simply earning a living, like countless defendants who continue to work while on pretrial release. Critically, the money Mr. Santos earns from lawful endeavors—regardless of how the government views their "tone" or "branding"—is money that will go toward restitution and forfeiture. By the government's logic, a defendant should be forced to remain unemployed, presumably stunting his ability to pay back victims, to avoid creating some alleged "perverse incentive." That is bad policy and contrary to the fundamental goals of restitution.

The government expends considerable space in its opposition weaving references to cameo videos, documentary appearances, news articles, and Mr. Santos's purported public statements about the case. None of that addresses the question before this Court: whether a continuance would aid Mr. Santos's ability to pay meaningful restitution and permit the defense

to finalize sentencing submissions (including letters of support). The government's prosecutorial function is not to moralize about how a defendant chooses to earn income to meet his obligations, but to ensure that justice is served. Invoking flamboyant headlines and quoting extraneous media stories might score points with the press, but it offers no legitimate reason to deny this routine scheduling request.

For these reasons, and those stated in our initial application, we respectfully request that the Court grant Mr. Santos's motion to continue his sentencing to one of the proposed August 2025 dates or another date convenient to the Court.

Sincerely,

Andrew Mancilla, Esq.
Robert Fantone, Esq.
Joseph Murray, Esq.

cc: All Parties (by ECF)